UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.:   ED CV 16-01128-AB (SPx) | Date:   February 28, 2018 |
| --- | --- |

| Title: | *Dominic Archibald,et al. v. County of San Bernardino, et al.* |
| --- | --- |

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
| --- | --- |

| Carla Badirian | N/A |
| --- | --- |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| --- | --- |
| None Appearing | None Appearing |

**Proceedings:**       **[In Chambers] ORDER RE: MOTIONS IN LIMINE**

On February 16, 2018, the Court heard oral argument on the parties Motions in Liming ("MIL").   The Court rules as follows.

### A. Plaintiffs' MIL 3, Defendants' MIL 7

These motions concern admissibility (1) of evidence that Nathanael had alcohol and cannabinoids "in his system" during the incident, and (2) Nathanael's drug/alcohol history. Plaintiffs want to exclude this evidence, and Defendants want to admit it.

Evidence that Nathanael had alcohol and cannabinoids in his system is **EXCLUDED**.   Nathanael's toxicology report stated that he had a small amount of ethyl alcohol in his urine, but none in his blood, and that there were some cannabinoid metabolites in his system.   *See* Scott McCormick Depo. (Dkt. No. 97-2) (medical examiner testifying as to results of toxicology report).   Defendants want to admit this evidence for two reasons.   First, to show why Nathanael was acting "violent and

irrational": the "trier-of-fact has the right to weight and balance" this evidence and to decide "whether the cannabinoids and alcohol contributed to his conduct and behavior on the night of the incident."  *See* Dkt. No. 97 5:17-21.   Second, to support Woods's claimed reasonable suspicion that Nathanael was on methamphetamines.   This evidence is excluded as irrelevant and more prejudicial than probative.   Defendants' intended uses of this evidence amount to suggesting that Nathanael was under the influence of a substance, but Defendants have proffered no evidence whatsoever—such as an expert report—that the amounts of alcohol and cannabinoids in his system could have affected his behavior or caused him to be under the influence.   As Dr. McCormick himself testified as to the cannabinoids, what their effect might have been on Nathanael's behavior would be purely speculative.  *See* McCormick Depo. 51:12-23 (there were marijuana metabolites in his system, but "I couldn't really tell you what – necessarily what the effect that might have on him," Q: "That would be pure speculation, right?" A: "In this case, yes.")   The Court cannot permit Defendants to invite the jury to engage in such speculation.   Similarly, in the absence of evidence that the amounts in Nathanael's system affected his behavior, the toxicology report does not lend any credibility to Woods's claim that he believed Nathanael was on methamphetamines (or some other substance).   Simply stated, that Nathanael had alcohol and cannabinoids *in his system* does not make it more or less probable that he was *under the influence* or that Woods's claimed reasonable suspicion was adequately supported.

At oral argument, defense counsel pointed to expert testimony to the effect that Nathanael was diagnosed with schizophrenia, and that persons with that condition are especially susceptible to the effects of drugs and alcohol, but this evidence fails for the same reason: absent testimony that the amount in Nathanael's system was enough to affect his behavior—regardless of whether he was schizophrenic—the naked fact that he had these substances in his system is not probative.

To the extent there is some marginal relevance to this evidence, it is plainly outweighed by the risk of undue prejudice, as it could be used to unfairly suggest Nathanael abused drugs and/or alcohol.

The Court reserves ruling on the admissibility of Nathanael's drug and alcohol history until the damages phase.

### B. <u>Plaintiff's Motions 1-4:</u>

**<u>MIL No. 1</u>** to exclude decedent's criminal history and prior contacts with law enforcement.   This motion is **<u>GRANTED</u>**.   Defendants do not specify what Nathanael's criminal history is, but they argue that it "demonstrate[s] that Pickett had a habit of obstruction and resisting an executive officer."  *See* Dkt. No. 113, 4:18-20.   The Court

rejects this argument.   Defendants have even attempted to show that Nathanael's criminal history reflects his "regular response to a repeated specific situation," and the Court has grave skepticism that they could.   *See* Fed. R. Evid. 406 Advisory Committee Note (describing conduct that qualifies as habit as "semi-automatic").   Defendants present no other basis for admitting this evidence, and the Court discerns none; furthermore, any marginal probative value would be outweighed by risk of undue prejudice

**MIL No. 2** to exclude evidence or references to any personal issues between plaintiffs Archibald and Nathanael Pickett, I.   This motion is **GRANTED** as to personal issues between Nathanael's parents, as such matters are not relevant either to whether Deputy Woods's conduct was justified, or to damages.   For example, Pickett's statements that Archibald took money from Pickett, that "my son was the only way that she could cause me hell," and that Archibald "carried on" with other men are excluded.   Evidence regarding each Plaintiffs' relationship with Nathanael (such as Archibald's statements about taking Nathanael to the motel and Pickett not wanting Nathanael to live in one of his properties) is not barred by this ruling, but may be admissible in the damages phase only. The Court reserves further ruling until the damages phase.

**MIL No. 4** to exclude any evidence of County's finding that Deputy's use of force was not criminal, was reasonable, justified and/or within policy.   This motion is **GRANTED**.   Defendants want to admit the San Bernardino District Attorney's Office's finding that Woods's actions were "legally justified."   Opp'n 5:1-2**.**   After-the-fact opinion of the D.A.'s office is opinion evidence not admissible under either FRE 701 (lay opinion) or FRE 702 (expert opinion).   Furthermore, such evidence plainly risks usurping the role of the jury and inviting them to give deference to County's findings rather than reach their own conclusions about the reasonableness of Woods's conduct.

## C. <u>DEFENDANTS' MILS 1-6, 8:</u>

<u>**MIL's 1, 2, 4: are GRANTED AS UNOPPOSED**</u>.   They are:
- **MIL No. 1** to preclude evidence of unrelated citizens' complaints, lawsuits, internal affairs investigations and prior or subsequent incidents of use of force
- **MIL No. 2** to preclude specific instances of conduct, and to preclude opinions and conclusions contained in any personnel complaint investigations
- **MIL No. 4** to bifurcate punitive damages from liability.

**MIL No. 3** to limit testimony of Plaintiffs' expert witnesses to those admissible opinions and conclusions testified to at their depositions and exclude opinions beyond expert's expertise.   This motion is **DENIED without prejudice**.   This is a general MIL not directed at any particular evidence.   It is premature.

**MIL No. 5** to preclude the use of photographs of decedent's body at the scene of incident, autopsy, and funeral and family photos.   At oral argument, it appeared that further meet and confer efforts could resolve whether causation is an issue, which would make the crime scene and autopsy photos relevant to the liability phase.   The Court defers ruling on this aspect of the motion until trial.   The motion is generally **DENIED** as to the damages phase, because the categories of photos are relevant to that issue.   Defendants may further object a trial.

**MIL No. 6** to exclude any testimony, witnesses, documents or evidence not disclosed or identified in discovery.   Defense counsel confirmed at oral argument that this is a general prophylactic request not aimed at particular evidence. This motion is therefore **DENIED** on that basis.

**MIL No. 8** to exclude James Kennedy as a witness and/or to exclude the reading of his deposition testimony.   Defendants argue that Kennedy's testimony is irrelevant because he was too far away to see or hear anything (FRE 401, 402, 403).   Defendants confuse relevance and credibility.   Kennedy will testify as to his own perception of the incident; such testimony is plainly relevant.   If Kennedy couldn't adequately see or hear the incident, that goes to his credibility.   Kennedy's credibility is for the jury to decide and is not a basis to bar his testimony wholesale.   This motion is therefore **DENIED.** Defendants also say Kennedy cannot be located and has not read or signed his deposition, so it cannot be read into evidence.   If this remains an issue at trial, the Court will deal with it then.

**IT IS SO ORDERED.**