1        UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3    HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4

5   DOMINIC ARCHIBALD AND            )
    NATHANAEL PICKETT,I, AS          )
6   INDIVIDUALS AND AS SUCCESSOR     )
    IN INTEREST TO NATHANAEL H.      )
7   PICKETT, II, DECEASED,           )
                                     )
8                    PLAINTIFFS,     )
                                     )
9            vs.                     ) No. CV 16-1128-AB
                                     )
10  COUNTY OF SAN BERNARDINO, ET     )
    AL.,                             )
11                                   )
                     DEFENDANTS.     )
12   _____)

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16          FRIDAY, SEPTEMBER 14, 2018

17                11:36 A.M.

18          LOS ANGELES, CALIFORNIA

19

20

21

22  _____

23        **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
          FEDERAL OFFICIAL COURT REPORTER
24        350 WEST FIRST STREET, ROOM 4311
          LOS ANGELES, CALIFORNIA 90012
25             cmjui.csr@gmail.com

1   APPEARANCES OF COUNSEL:

2   FOR THE PLAINTIFF DOMINIC ARCHIBALD:

3           LAW OFFICES OF DALE K. GALIPO
            BY:  DALE K. GALIPO, ATTORNEY AT LAW
4                HANG DIEU LE, ATTORNEY AT LAW
            21800 BURBANK BOULEVARD, SUITE 310
5           WOODLAND HILLS, CALIFORNIA 91367
            (818) 347-3333

6

7   FOR THE PLAINTIFF NATHANAEL PICKETT, I:
            LAW OFFICES OF ROBERT D. CONAWAY
8           BY:  ROBERT D. CONAWAY, ATTORNEY AT LAW
            P.O. BOX 2655
9           APPLE VALLEY, CALIFORNIA 92307
            (760) 503-9010

10

11  FOR THE DEFENDANTS:

12          ALVAREZ-GLASMAN & COLVIN
            BY:  STEPHEN T. OWENS, ATTORNEY AT LAW
13               CHRISTY M. GARCIA, ATTORNEY AT LAW
            13181 CROSSROADS PARKWAY NORTH, SUITE 400
14          CITY OF INDUSTRY, CALIFORNIA 91746
            (562) 699-5500

15

16

17

18

19

20

21

22

23

24

25

LOS ANGELES, CALIFORNIA; FRIDAY, SEPTEMBER 14, 2018

11:36 A.M.

- - -

THE CLERK:  Calling ED CV 16-1128-AB, Dominic Archibald versus County of San Bernardino, et al.

MR. GALIPO:  Good morning, Your Honor. Dale Galipo on behalf of plaintiff, Dominic Archibald, who is present today.

MS. LE:  Hang Le on behalf of plaintiff, Dominic Archibald.

MR. CONAWAY:  Bob Conaway on behalf of Mr. Pickett.

MR. OWENS:  Stephen T. Owens on behalf of the defendants, County of San Bernardino and Kyle Hayden Woods.

MS. GARCIA:  Good morning, Your Honor. Christy Garcia on behalf of the defendants.

THE COURT:  All right.  So correct me if I am wrong.  Mr. Owens and Miss Garcia, this is your first appearance in this matter; correct?

MR. OWENS:  That's true, Your Honor.

THE COURT:  Welcome.  And before I let the -- greetings to Miss Archibald and Mr. Pickett.  I see you in the audience as well.

I have issued a tentative on the defendants' motion for a new trial or remittitur or altering the

1  judgment.  So have the parties had a chance to review the

2  tentative?  I will start with the plaintiffs.

3          MR. GALIPO:  Yes, we have.

4          THE COURT:  From the defense?

5          MR. OWENS:  Yes.  Briefly, Your Honor.

6          THE COURT:  Do you need more time to review it?

7  We can take a recess if you need more time.

8          MR. OWENS:  No, I don't need more time.

9          THE COURT:  With that, I have got some questions.

10  And I, obviously, will allow both sides to be heard as it

11  relates to any other issues either side wishes to present.

12  So I don't know if -- who has drawn the short straw from the

13  defense?  Is it Mr. Owens or Miss Garcia?  Who is going to

14  take questions from the Court?

15          MR. OWENS:  It will be me with assistance from

16  Miss Garcia.

17          THE COURT:  If you could step to the lectern,

18  please.  I have a few questions for you.

19          MR. OWENS:  Yes, Your Honor.  Thank you.

20          THE COURT:  So I guess this is somewhat of a

21  procedural question in the sense that you are challenging

22  the adequacy of the evidence.  Okay?  And I thought the

23  standards under Rule 50 and 59(a) required to consider the

24  evidence that supported the verdict.

25          But in your papers, at least, my sense was there

1    was somewhat of a selective citation to the evidence that

2    weighed in the defense favor.

3          So I guess I would like to just hear your thoughts

4    as to what was the thought process in doing that because

5    certainly the evidence that you cite came in at trial, but

6    there was a lot of other evidence that also came into the

7    trial.  And so, I guess, ultimately are you suggesting that

8    I ignore that evidence or not?

9          MR. OWENS:  No, I'm not suggesting -- we're not

10   suggesting that the Court ignore any evidence that was

11   properly admitted at trial.  But, on the other hand, given

12   the fact that, at least, as far as Ms. Garcia and I were

13   concerned, that time was pressing and the page limits and so

14   forth were in issue, and I had every confidence that

15   plaintiffs' able counsel would bring forth the evidence that

16   they did bring forth.  But I'm not suggesting that the Court

17   ignore the contrary evidence -- that is, the evidence

18   contrary to our position.

19         THE COURT:  All right.  So I appreciate that.

20         Walk me through, if you could -- one of the issues

21   I talk about in the tentative, did you raise this clearly

22   established prong element of qualified immunity?  Did you

23   preserve that to raise that in this motion?

24         MR. OWENS:  Yes, Your Honor.

25         THE COURT:  Tell me how.

1          MR. OWENS:  Yes.  I am glad you started there

2     because that's where I wanted to start.

3          THE COURT:  I'm glad I am able to accommodate you.

4          MR. OWENS:  No.  I am just glad I am able to, kind

5     of, focus on where the Court's going or has issues.

6          Yes, Your Honor, under the Rule 50(a) motion that

7     we filed, I think it's important the timing here.

8          This Rule 50(a) motion for JMOL was filed on

9     March 12th, 2018.  The Kisela case, Kisela versus Hughes,

10    was decided by the Supreme Court the following month in

11    April 2018; and we did raise the issue in the 50(a) motion.

12         The Court quotes in its tentative, which I read

13    and, obviously, a lot of time and thought went into it, and

14    I appreciate that, but the tentative quotes only one

15    sentence of the paragraph.

16         The paragraph is on page 14 of the Rule 50(a)

17    motion, and it does cite Harlow versus Fitzgerald.  It also

18    cites Wilkins versus City of Oakland.

19         It certainly could be said correctly that we

20    didn't belabor the issue, but, on the other hand, it is a

21    well-established proposition.  I mean, the Harlow versus

22    Fitzgerald case was decided in 1982.

23         So it's hardly new law that law enforcement

24    officers are shielded from suit unless clearly established

25    statutory or constitutional rights of which a reasonable

1  person would have known indicate otherwise.

2          And as I mentioned a moment ago, a month after

3  this motion was made on behalf of the defendants, the U.S.

4  Supreme Court came down with the Kisela case which really

5  added some clarity to the scope of the qualified immunity

6  defense.  And so naturally we hit that much harder in the

7  Rule 50(b) motion because we felt that was new law,

8  obviously, and we thought it very important to emphasize

9  that to the Court.

10          But I don't think it's correct to say that the

11  reasonable -- reasonably established, clearly established

12  statutory or constitutional rights issue was not raised in

13  the Rule 50(a) motion.  That would be my response to that.

14          THE COURT:  All right.

15          MR. OWENS:  Now, with regard to -- and I know time

16  is short --

17          THE COURT:  Look.  This is an important case.  I

18  am here.  So I will let you know if we -- when there is no

19  more time.

20          MR. OWENS:  All right.  I appreciate that.

21          With regard -- my point is regardless of how much

22  time the Court is kind enough to allow or not.  It's not my

23  proposal to repeat what's already set forth in the papers.

24  And so I am going to refrain from doing that.

25          But I did want to emphasize or at least respond to

1    the waiver argument on the -- with respect to the 50(a)

2    motion and the fact that the Kisela case came down a month

3    later.

4          Now, the -- and that is relevant because the

5    tentative on page 8 does assert or state that the defendants

6    had waived that issue as to whether the relevant law had

7    been clearly established.

8          Now, that same case, the Kisela versus Hughes

9    case, is also -- and I know I am going to jump now to the

10    Rule 59(e) motion because we're talking about Kisela.  And

11    as the Court correctly states, of course, correctly in its

12    tentative, says there are four grounds upon which a

13    Rule 59(e) motion may be granted, and the fourth ground

14    cited is there is an intervening change in controlling law.

15         I think that's very important because we do assert

16    that Kisela versus Hughes constitutes an intervening change

17    in controlling law.

18         THE COURT:  Tell me why you believe -- is it

19    really new law?

20         MR. OWENS:  I think that the -- I think that they

21    make very clear -- the Court made very clear that immunity

22    of law enforcement officers is to be construed very, very

23    carefully and very broadly in the sense that, unless there

24    is existing precedent on the existing facts of a particular

25    case that indicate to the officer acting in the heat of the

1   moment and making a split second decision that his or her

2   conduct is patently unreasonable, that that officer is, in

3   fact, entitled to qualified immunity.

4           THE COURT:  It seems to me that -- doesn't that

5   ignore the totality of the facts in this case?  This case

6   was not only about the ultimate unfortunate killing of

7   Mr. Archibald but what about the stop, the detention, and

8   the Fourth Amendment rights?

9           MR. OWENS:  The stop was not, as the plaintiffs

10  have asserted, was not a detention and it certainly not a

11  seizure.

12          THE COURT:  That's what you think.  Is it fair to

13  say that the jury agreed in that?  My memory is a little

14  fuzzy on this.  Did the parties agree to that point?

15          MR. OWENS:  I don't think -- I wasn't at the

16  trial, but I don't think the parties agreed on much of

17  anything other than there was a death.  And, obviously, I

18  agree with the Court that that's unfortunate, to say the

19  least.

20          But my point is that the original stop was a

21  consensual encounter.  Deputy Woods did not throw him up

22  against the squad car and say, "Put your hands behind your

23  back," and put the cuffs on him.  He pulled the cruiser

24  over, and he got out, and he engaged Mr. Pickett in

25  conversation.

```
1        And he asked, "Is it okay if I pat you down?"

2        Mr. Picked said, "No," and so Deputy Woods did not

3   pat him down, and so on and so forth.

4        But getting back to the point that I really want

5   to emphasize, in Kisela versus Hughes, as the Court said,

6   "In other words, immunity protects all but the plainly

7   incompetent or those who knowingly violate the law."

8        And then it goes on.  It says, "Thus police

9   officers are entitled to qualified immunity unless existing

10  precedent squarely governs the specific facts at issue."

11       And I don't think that either of those two

12  propositions that I read apply here.  I don't think that the

13  evidence established that Deputy Woods was, quote, "plainly

14  incompetent," and I don't believe that there was any

15  evidence that he knowingly violated the law.

16       In fact, the video -- and I watched the video a

17  number of times myself -- the video showed that, when

18  Mr. Pickett fell to the ground, he rolled over on his back,

19  Mr. -- Deputy Woods pulled out the Taser.

20       Did he tase him?  No, he didn't tase him.  He

21  could have, but he knew from regulations and from his

22  training that to tase somebody in a frontal position could

23  injure the eyes, the heart, and other -- so he didn't.  He

24  put the Taser away.

25       That does not indicate to me, based on the
```

1   evidence that every one at the trial saw, that this was an

2   officer that was acting in knowing violation of the law or

3   acting incompetently.

4           THE COURT:  What's your response that I assume

5   Mr. Galipo or someone from the plaintiffs' side will

6   reference?  If my memory serves me correctly, I think

7   Officer Woods stated during the trial that he had been

8   punched numerous times by Mr. Pickett but the photographic

9   evidence suggested or at least put that into large question

10  and then the video didn't show any, sort of, evidence of

11  Mr. Pickett using -- punching him as frequently as

12  Mr. Woods -- in fact, there is no evidence in the video of

13  Mr. Pickett punching Deputy Woods.

14          I recognize there was a skip in the video, but

15  even if you take that skip into account, which was maybe a

16  second, I thought Deputy Woods said he was hit in excess of

17  10 times or I thought it was -- it might have even been as

18  high as 20 times.

19          How does that factor into the analysis?  I mean,

20  it raises some credibility questions that ultimately get

21  into arguably the deputy's competence and ultimately his use

22  of force, doesn't it?

23          MR. OWENS:  Well, there was controverted evidence,

24  yes.  Deputy Woods testified one way, and this -- not

25  terribly clear.  In fact, I didn't find it very clear at

1    all, and as the Court just acknowledged, there was a skip in

2    the video.  You know, it -- that video is not a full -- it's

3    not complete, and it's not a fully reliable record of what

4    actually occurred.  I will leave it at that.

5            But I think that it's important to recognize that

6    the Kisela case sets a very, very, very high burden before

7    the Court can deny a law enforcement defendant the qualified

8    immunity defense.  And I believe that, in this case, that

9    Deputy Woods is definitely clearly entitled to invoke the

10   qualified immunity defense and that he properly did so.

11           With regard to some of the other issues here in

12   the tentative, I want to take exception to -- if I might,

13   excuse me, Your Honor.

14           THE COURT:  Take your time.

15           MR. OWENS:  Thank you.  You are very indulgent.

16           -- I want to take exception to the fundamental

17   point that we raised in the new trial motion, the Rule 59

18   motion.  And that has to do with this -- what I have

19   attempted to call a free floating $7 million.

20           THE COURT:  All right.

21           MR. OWENS:  I think that really goes to the heart

22   of this.  The plaintiffs wanted a Bane Act jury instruction.

23   They got a Bane Act jury instruction.

24           They put forth in the special verdict a claim for

25   Mr. Pickett's damages, quote, "for his loss of enjoyment of

1  life and for his predeath pain and suffering."  That was

2  Question 1 in the special verdict form for damages, clearly

3  applicable to Mr. Pickett, the decedent, and clearly

4  applicable under the Bane Act.

5         And as we pointed out in the papers back in April,

6  on April 4th, 2018, the plaintiffs were urging the Court to

7  treble those Bane Act damages awarded to Mr. Pickett.

8         The Court was spot on when it said, "No, I can't

9  do that because this is in gross.  It's a $7 million award

10  rendered in gross against," not the Court's words, those are

11  my words, but "against both Deputy Woods and the County.

12  And since these are arguably punitive in nature, that is the

13  trebling aspect.  I can't impose those against the County so

14  that -- properly so under Government Code 818."  So the

15  Court refrained from doing that, properly so.

16         Now here we are months later, and the plaintiffs

17  say, and they say it quite clearly in their papers, they

18  say, "No, no, no.  Those aren't Bane Act damages.  Those are

19  1983 damages, those -- that $7 million."

20         Well, there is a problem with that because, first

21  of all, that's not the position they took at trial.  The

22  Bane Act was presented to the jury as a civil rights

23  violation that -- violation of the decedent's civil rights.

24  That's what was presented to the jury.

25         Also presented to the jury was Ms. Dominic

1   Archibald's claims for the wrongful death and also

2   Mr. Pickett, Sr.'s claims.

3           THE COURT:  As relates to that, aren't the Bane

4   Act and the 1983 Act, aren't they the same?

5           MR. OWENS:  The standard is the same, but the

6   party entitled to raise them is fundamentally different.

7           THE COURT:  Okay.  Let's play this out for a

8   second.  If I did what you are suggesting, we parsed out the

9   question, wouldn't that be inviting error in the sense that

10  there could be multiple recoveries?  I mean, if we put a

11  question for the Bane Act, for 1983, and they came out with

12  five and eight, couldn't there be a question as to what the

13  jury was thinking about in awarding those?  Or are you

14  suggesting that that's what the Court should have done, done

15  a separate line item on the verdict form for both the Bane

16  Act and the 1983?

17          MR. OWENS:  Well, no, that's not exactly what I'm

18  suggesting.  What I am suggesting is -- and this is a

19  disputed issue of law in this case.  What I'm suggesting,

20  what I'm stating flatly is that the Bane Act, as courts have

21  said, is not a wrongful death statute.  It is not.

22          And the courts that have addressed it, both state

23  and federal, have consistently stated that family members

24  are not entitled to sue for the death of their loved one

25  under the Bane Act, and that's what we have here.

        Now, they cite Chaudhry.  Let's talk about
Chaudhry.  The Ninth Circuit was very, very clear in
Chaudhry to differentiate between who were the plaintiffs in
that case.  There were Mr. Chaudhry's parents,
Mr. Chaudhry's siblings, Mr. Chaudhry's estate, and then a
number of nonfamily plaintiffs, organizational plaintiffs.

        The Court never said -- first of all, Chaudhry has
nothing to do with standing.  The word is not even used in
the decision.  So it's no support for the proposition that
decedent's parents can sue under the Bane Act for damages.
That's not an issue in Chaudhry.

        But what is interesting in Chaudhry is the
plaintiff parents did not sue under the Bane Act.  It was
the estate.  The estate is a different legal entity than the
parents.  That's quite obvious.

        If I die at this lectern, my parents are not --
they're not co-extensive with my estate.  My wife and my
three children probably are going to inherit my estate.
It's a separate entity with its own creditors and its own
beneficiaries.  So it's just fundamentally wrong to say that
Chaudhry says the parents are -- the successors-in-interest
can sue under the Bane Act.  That's not what it says.

        And I think it's fundamentally an error to simply
say, "Oh, well" -- I'm not suggesting this was the Court's
thought process.  I am speaking colloquially.  I have too

1    much respect for the Court as is reflected in this tentative

2    ruling and its other rulings.

3              But one could characterize it as I think the

4    plaintiffs do more or less.  They say, "Well, what the heck.

5    If it's not Bane Act damages" -- which they concede they're

6    not entitled to recover.  They conceded that.  They said,

7    "What the heck.  It's wrongful death damages under 1983.  So

8    let's just split it fifty-fifty and call it a day."  No.

9    No.

10             The standard, the standard for 1983 damages and

11   Bane Act may well be co-extensive.  But the parties entitled

12   to raise the issues of Bane Act or 1983 are not the same.

13   That's my point.

14             THE COURT:  Okay.  Thank you.

15             MR. OWENS:  All right.

16             THE COURT:  Anything further?

17             MR. OWENS:  Well, yes, Your Honor.  Give me a

18   moment because I don't want to be redundant --

19             THE COURT:  Take your time.

20             MR. OWENS:  Thank you.  I don't want to skip

21   things either.

22        (Brief pause in the proceedings.)

23             MR. OWENS:  It's just following up on that point,

24   and then I think I am going to let it rest.  But I do want

25   to state that, if I don't address it here at the lectern, I

don't mean to waive any other points that we've raised in

our papers.  I think that's clear.

         But the net effect of what the plaintiffs' amended

judgment would do is to say jury made an award of

6.5 million wrongful death damages to Dominic Archibald,

$2 million wrongful death damages to the father,

Mr. Pickett, Sr.

         And by taking this -- that's what the jury

decided.  The jury decided that -- made that award.  We

think it's excessive.  We've argued that the 6.5 million is

excessive, but I'm not going to belabor that point.  That's

something for the Court to consider, and I am sure the Court

has.

         But by taking the Bane Act damages of 7 million

and just divvying them up fifty-fifty and then treating them

as though they're additional wrongful death damages has the

effect then of raising what the jury awarded, 6.5 -- now we

are up to 10 million for Ms. Archibald, and we're up to

5.5 million for Mr. Pickett.

         Well, that's not what the jury decided.  That

wasn't presented to the jury that way.  And as I just

mentioned at some length, they don't have the right, they

don't have the standing under the law to seek those damages

that -- in that fashion.

         So that's one thing that I think is just -- cries

1  out for the Court to consider because that's not what --

2  that's not consonant with what the jury actually considered

3  and what it awarded, and I think we can all agree that what

4  it awarded was quite -- well, it was certainly adequate and

5  sufficient.  It doesn't need to be enhanced by 3 million

6  here3.5 million on this side and 3.5 million on that side.

7          One last thing I would ask the Court please, just

8  as an accommodation, if you will -- we refrained from -- we

9  had submitted a proposed amended judgment together with our

10 moving papers.

11         We refrained from filing objections to the

12 proposed amended judgment lodged by the plaintiffs because I

13 wanted to await the outcome of this hearing today.

14         And what I would ask the Court, just as a

15 professional accommodation, if you will, is I would like to

16 have the opportunity this afternoon now that I have got the

17 tentative ruling to file formal objections to the proposed

18 amended judgment before the Court enters whatever judgment

19 it decides to enter.

20         So if the Court would take the matter under

21 submission for the rest of the afternoon, I would be very

22 grateful.

23         THE COURT:  Look.  I will do that.  That's not an

24 issue although -- well, that's not an issue.

25         MR. OWENS:  Well, it's going to pass from my hands

1    to the hands of an appellate specialist if the case proceeds

2    as I assume it will.  But I would just like, for want of a

3    better word, I would like my skirts to be as clean as I

4    could make them before the judgment is finally entered.

5              THE COURT:  Fair enough.

6              MR. OWENS:  I appreciate it, Your Honor.

7              THE COURT:  Thank you, Mr. Owens.

8              Mr. Galipo, are you going to address the Court at

9    this time?

10             MR. GALIPO:  Yes.

11             THE COURT:  I assume you have much to say.  I

12   guess one area just, to start it off, I seem to recall we

13   went back and forth at length on this issue with the

14   Probate Code and that -- the parents being

15   successors-in-interest.  Is my memory off on that?

16             MR. GALIPO:  Let me address that because I think

17   counsel may be a little bit confused about the law that

18   relates to that.  Maybe having done this so many times, it's

19   a little more clear to me.

20             The $7 million are the survival damages, not

21   wrongful death damages.  Those are recoverable under the

22   federal claims without question.  And they found in favor of

23   the plaintiff on all four federal claims.

24             And I think counsel is confusing survival damages

25   with wrongful death damages.  And it's very clear under the

1  law that the successors-in-interest, in this case the

2  parents because he was not married or had no children or the

3  estate, has standing to bring claims for survival damages

4  under federal law and also has standing to bring the

5  Bane Act which is technically a survival claim under state

6  law.

7      So there is no question they have standing.  There

8  is no question those damages were appropriately awarded.

9  There is no question they're supported by the finding on the

10 liability of all four federal claims.

11     They also found on the Bane Act, but it clearly --

12 the predeath pain and suffering and the loss of enjoyment of

13 life are clearly recoverable under the federal law.  And

14 it's surprising because, as I read their initial motions, I

15 don't even know if there was an attack on the $7 million at

16 all.  The only thing I read was that somehow the wrongful

17 death damages should be remitted to 3.5, and it appeared

18 that they never even read Miss Archibald's trial testimony

19 in the second phase.

20     So does that answer the Court's question on that?

21     THE COURT:  It does.

22     MR. GALIPO:  It's very clear, and with respect to

23 the Court's tentative, it's obviously very well reasoned and

24 thought out.

25     THE COURT:  Even a broken clock is right twice a

1    day.

2         MR. GALIPO:  Right.  And I just want to make a few

3    comments.

4         THE COURT:  Yes.

5         MR. GALIPO:  First of all, as the Court pointed

6    out, not only was there substantial evidence to support all

7    the claims in the damage awards, but the evidence was

8    extremely compelling in this case, having handled many

9    cases.

10        And I think as you recall, Your Honor, we filed a

11   motion for summary judgment.  The evidence was so

12   compelling, and I think this honorable Court encouraged the

13   parties at various stages to try to settle this case.

14        That's number one.

15        Number two is the credibility of Deputy Woods was

16   so questioned on so many material points that the jury may

17   have disbelieved his entire testimony.  So for the defense

18   to argue, well, qualified immunity should somehow apply,

19   first of all, I think they waived it -- we agree with the

20   Court -- in their Rule 50(a) motion.  I think it's waived,

21   and I think that's very important, and we're hoping it's

22   part of your final ruling.  It's part of your tentative

23   ruling.

24        Secondly, I mean, from everything from "He looked

25   at me five or ten times" to "he kind of glanced at me, I saw

1   him running and hop the fence" to "Okay.  I never saw that,"

2   to being punched 10 or 20 times full force in the face --

3   and there wasn't one frame on the video -- their own video

4   expert looked at every frame, not one punch and not one sign

5   of visible injury.

6          And then the touching the gun was so weak they

7   literally abandoned that when they got him back up on

8   redirect and closing argument.  And the only two possible

9   explanations were being knocked out or him grabbing the gun,

10  and I think it was clear that neither one of those happened.

11         THE COURT:  I think in addition -- I am just

12  looking through some of my notes in the file -- there was a

13  lot of testimony about the thought that Mr. Pickett was

14  under the influence.  There was very, at least to me, very

15  little evidence to support that and no follow-up questions

16  about narcotics evidence.  And, again, I am just trying to

17  look at --

18         MR. GALIPO:  Right.

19         THE COURT:  -- pull up some of this -- there was a

20  lot of issues clearly with Deputy Woods's testimony.

21         MR. GALIPO:  It started as a consensual encounter

22  because there was no reasonable suspicion, but it elevated

23  into a detention where Nate wanted to go and the deputy

24  didn't let him go.

25         There was clearly no reasonable suspicion.  There

was abundant evidence on that on every single issue from the name to the intoxication. He claims he didn't see dilated pupils for five or seven minutes, never asked him a question about it.

I mean, every single point was so strongly opposed and the credibility -- and we would ask perhaps for part of your finding that the credibility of Deputy Woods was very much in question based on the evidence presented.

The verdict form, this is something submitted by both sides and agreed upon. I mean, any claim --

THE COURT: We spent a lot of time. There was a lot of fighting back and forth, if my memory serves me right, about this verdict form.

MR. GALIPO: The jury instructions, the verdict form, if anything, we would submit would be waived with respect to that as well.

Dividing damages, it makes no sense at all. I think the way it was done was entirely appropriate.

They haven't hit on the Batson challenge issue, but I would say two things. This Court correctly used its discretion. And it should be noted that this Court was here and able to judge body language, credibility -- everything going on.

It was also particularly noted that defense counsel asked that juror no questions on voir dire and the

1   Court granted that opportunity.  But more importantly, as

2   the Court pointed out, and we would ask that this be part of

3   your final decision in this case, any error -- and there

4   wasn't any -- would clearly be harmless.

5          In this case, you had the unanimous verdict on

6   every single claim; the punitive damage entitlement question

7   and no contributory negligence at all, zero, on Nate's

8   part -- that's how compelling --

9          THE COURT:  With a -- original decision that was

10  quite large.

11         MR. GALIPO:  Right.

12         THE COURT:  I think, at least from this Court's

13  opinion, I think the jury was sending a message that this

14  conduct was just not acceptable.

15         MR. GALIPO:  Right.  And so, I mean, to even

16  discuss qualified immunity under the context of this case is

17  somewhat offensive because if you are going to apply it to

18  this case, then we might as well not even have 1983

19  litigation.  Because the facts of this case, if you assume

20  and take all reasonable inferences in the plaintiffs' favor

21  and in support of the verdict, the conduct was so far below

22  what we would want or expect of a reasonable police officer.

23         I also don't think this Kisela case is any new law

24  at all.  It's not a new law.  We cited in our case the law

25  that's been around and even similar-type cases than this --

1   even Deputy Woods himself admitted, "If he wasn't grabbing

2   my gun and I wasn't passing out," based on his training it

3   would be inappropriate to shoot him, and I think it was

4   pretty clear from the evidence that neither one happened.

5           Regarding the proposed amended judgment, we are in

6   agreement with the Court that that one amendment should be

7   made.

8           I am quite frankly a little wary about counsel now

9   wanting to contact appellate counsel to lodge some type of

10  written objection that we then may need to respond to and so

11  on and so forth.

12          I think any objections, any filings, now was the

13  time or before today.  And if he has a particular objection,

14  he could state it on the record.

15          I quite frankly am not comfortable with the

16  thought of getting appellate counsel involved.  I don't know

17  the scope of what their objections are going to be.

18          It might be an attempt to raise issues that

19  haven't been properly raised before, and I think that's

20  inappropriate, and then we're in a spot to have to address

21  it.

22          So at least, from our position, I don't think that

23  should be permitted.  If counsel has a specific thought or

24  objection, I think he should voice it now.

25          So in short, we agree with the tentative.  We

think the evidence, quite frankly, is overwhelming to support the verdict on liability and damages; and we also would suggest there has been a lot of waver on the other side with respect to verdict form, with respect to qualified immunity, and with respect to several of the other arguments. So unless the Court has any questions of me, that would be my comment.

THE COURT: I don't think I have any additional questions.

Mr. Owens, I will allow you one final opportunity to be heard, if you like.

MR. OWENS: Thank you, Your Honor. I will be brief.

Starting with the -- the argument that I was confused -- and I don't take offense at that. I have been confused before in life. That's for sure. But I'm not confused because the case that we cited -- one of the cases we cited for the proposition that I tried to articulate was Bresaz versus County of Santa Clara 136 F.Supp.3d 1125. It's a Northern District of California case, 2015.

In that case, there was a death by -- at the hands of police officers. The wife who was identified in the opinion as the successor-in-interest to the decedent was ruled not to have standing, not to have the right to recover under the Bane Act.

1    So the idea that, well, because Mr. Pickett

2  wasn't -- the decedent wasn't married, that his parents --

3  had no offspring, that his parents would, therefore, be the

4  successors-in-interest and, therefore, entitled to recover

5  under the Bane Act is -- it's contrary to established law.

6    THE COURT:  Let me ask you this, if you will

7  indulge me.

8    MR. OWENS:  Yes, of course.

9    THE COURT:  If the Court finds that the parents

10 have no standing under the Bane Act -- okay? -- how would

11 that change the judgment?

12    MR. OWENS:  Good question.  That goes to the heart

13 of my argument here.  The jury was presented with a Bane Act

14 violation.

15    THE COURT:  And a 1983 violation.  Or not?

16    MR. OWENS:  Yes.  But when you look at how the

17 Number 1 in the special verdict form is worded here, it's

18 worded as "for his loss of enjoyment of life and for his

19 predeath pain and suffering."

20    Now, that is -- that is not 1983 language.  That's

21 presented as though his civil rights were violated under the

22 Bane Act.

23    And do you know what's interesting is that

24 immediately following the Bane Act instruction in the jury

25 instructions, we go straight to the deputy's conduct and so

1   forth.  So there was clearly a linkage in the mind of the

2   jury that, oh, okay.  When we talk about, you know,

3   Nathanael Pickett in his loss of enjoyment of life and

4   predeath pain and suffering, we're talking about Bane Act

5   damages.

6          I think it's fundamentally wrong to, first of all,

7   redesignate the damages than redesignate or redefine the

8   source of those damages and, then, to reassign or reallocate

9   to whom those damages go.  It's just one error after

10  another.

11         There is no estate here that can bring -- that --

12  they could have actually.  I don't know why they didn't.  In

13  Chaudhry, they had an estate that brought a Bane Act claim,

14  and the Ninth Circuit said "okay."  But that's not what we

15  have here.

16         THE COURT:  Let me ask, if I could, Mr. Owens.

17  What should that question have read?  How should it have

18  been rephrased?

19         MR. OWENS:  I'm not quarreling so much with the

20  question as with the judgment and the way that the -- you

21  got -- when you think about it, you would say, okay.  They

22  come in, they say, in April.  "Bane Act damages, treble

23  them.  We get 21 million on this 7 million.  It's

24  21 million."

25         We come back, we say, "No, no, no, no.  You don't

have standing to seek these damages under the Bane Act."
Now they come in on their opposition, they say, "Oh, those
aren't Bane Act damages.  Those are 1983 damages and they're
not particular to Mr. Pickett or his estate, they can be --
as survival damages they can go to the mother and the
father."

And it's all -- it's all this free floating
7 million is kind of like funny money, and I don't think
it's correct, and I don't think it's supported by the case
law.

I refer the Court again to the Bresaz case where
they dealt with the wife as designated as
successor-in-interest, said, "No."  You don't get to bring
that kind of derivative liability under the Bane Act.  It's
personal to the individual.

THE COURT:  All right.

MR. OWENS:  All right.  Anyway, waiver, Mr. Galipo
mentioned waiver.  Waiver is -- and I won't belabor the
point, but the Court well knows waiver is a concept that's
predicated on prejudice to the other side.  Mere delay does
not constitute waiver.  It has to be delay coupled with
prejudice or some reliance.

And here what we have is we have them saying the
judgment that was entered in May can't stand, it's got to be
corrected, it's got to be amended.  They asked for it.  We

1 asked for it.

2 I say this now throws the door open, not my

3 request but their request as well, throws the door open for

4 discretion by the Court.

5 And the case they cite which we repeat in our

6 reply papers, they even cite a case for that proposition --

7 that is, that at this point it's in the hands of the Court

8 to refashion a judgment that is supported by the evidence

9 and can withstand scrutiny on appeal.

10 I don't think there is any basis for saying, "Oh,

11 well, there is waiver," and blah, blah, blah. We're both

12 here seeking -- that is, both sides here are seeking an

13 amendment, a modified judgment.

14 Of course, we have different views about how it

15 should be modified, but there is no waiver. I am not here

16 begging three months later for a change and they're saying,

17 "no, no, no, stand fast on the judgment entered." It's not

18 that situation. Okay. I made that point.

19 THE COURT: Before you move to your last point, I

20 guess your comments suggest to me -- both sides cited the

21 case. I read the case -- that the Court can fashion the

22 judgment that it believes appropriate based on the evidence

23 that would withstand scrutiny, which is what I did.

24 MR. OWENS: I --

25 THE COURT: You don't like it, and that's fine,

```
 1    but I guess the only reason why I raise it is that the case

 2    law seems to suggest that I can alter or amend the judgment

 3    consistent with the evidence to make it withstand this, you

 4    say, scrutiny.  So what's wrong with that?

 5              MR. OWENS:  I agree with that.

 6              THE COURT:  Okay.

 7              MR. OWENS:  I am just very respectfully suggesting

 8    that the additur really -- we're thinking about

 9    remittitur -- but it's really to take the $7 million and say

10    3.5 here and 3.5 there is wrong.

11              I am not going to belabor the 6.5 million wrongful

12    death.  That's in the papers.  It's in the evidence.  The

13    Court will make its decision on that.

14              I am emphasizing, though, that I don't think the

15    reallocation and the redesignation, the recharacterization

16    of what the $7 million was awarded for by the jury, I don't

17    think that's correct.  I don't think that will withstand

18    scrutiny.

19              Now, the last point I want to make -- I don't want

20    to be misunderstood.  I'm not asking -- I'm not going to

21    contact appellate counsel.  Appellate counsel has already

22    been retained months ago by the County.  I tell this Court

23    right now and opposing counsel I have no intention of

24    contacting appellate counsel.

25              All I am saying is I would like the afternoon to
```

scurry back to my office and formalize the objections rather than stand here at the microphone, as Mr. Galipo has invited me to do, and recite them into the record. I can do that, but it would be a lot more convenient --

THE COURT: I have a heavy calendar this afternoon. It's unlikely I will get an order out before the close of business. I will let you file your objections that you feel are appropriate.

MR. OWENS: Thank you.

THE COURT: This case raises a lot of issues on both sides. I want to make sure the record is clear. The Ninth Circuit may ultimately disagree with one or more things that we have done in this case, and I will leave that up to them, but I want them to have as full a record as possible.

Having said that, I will encourage again -- and maybe I am speaking to the wrong messenger here -- this case should settle. I've said it repeatedly. This case should settle.

You weren't at the trial. I know you read the transcript, but being here and seeing the witnesses and, you know, sort of, arguably poster child looking deputy just did not go over well, and I think this jury spoke loudly and clearly.

I recognize, whether it's my reputation or my own

anecdotal, sort of, information in dealing with these police

shootings in and around the city of Los Angeles, that there

may be hesitancy to settle these cases. But this case, I am

of the belief that this case should be resolved in a manner

that both sides -- I would think this case should be

resolved in a manner that would be agreeable to both sides.

The facts of the case just warrant that.

MR. OWENS: I couldn't agree with you more

fulsomely. Unfortunately, the people that I believe should

hear that message are not here. Those are county officials.

THE COURT: I hope you can convey that message to

some of those people. Because I see the plaintiffs here. I

am not criticizing you for not having the defendants here.

So I know they're hearing this. I have not seen any city

managers or representatives from the county, and, again, I

am not criticizing the defense for not having them here, but

I would hope you would convey my message.

And you may want to add, for whatever it's worth,

I have reviewed hundreds, if not thousands, of

officer-involved shooting cases in my prior life. I have

been to shooting scene after shooting scene after shooting

scene. I have reviewed transcripts, forensic evidence.

I think I have got a good handle on these types of

cases. I have seen them all. And with that said, I

strongly urge the County of San Bernardino to really

1    consider trying to resolve this case.

2            MR. OWENS:  I really appreciate your saying that.

3    I am going to immediately order a copy of the transcript on

4    an expedited basis and furnish it to the powers that be with

5    my own cover inviting them to read those pages that the

6    court reporter has just transcribed, and I welcome that, and

7    I thank you very much.

8            THE COURT:  Thank you, Counsel.

9            This matter --

10            Mr. Galipo, anything further?

11            MR. GALIPO:  The last two comments.

12            I think amending the judgment and the issue of

13    waiver with respect to qualified immunity, the clearly

14    established part of it, is apples and oranges.  And the law

15    is very, very clear that survival damages are recoverable in

16    this type of case under the constitutional violations that

17    were found by the jury.

18            THE COURT:  All right.  Thank you all.  It's good

19    to see you.  Nice to meet you all from the County this time

20    around.

21            The matter will remain under submission until the

22    Court issues its final ruling.  Like I said, it's unlikely

23    that that will occur until at least early next week.  So

24    have a wonderful weekend, everyone.

25            MR. GALIPO:  Thank you, Your Honor.

1          THE CLERK:  All rise.  This Court is in recess.

2      (Proceedings concluded at 12:24 p.m.)

3                      --oOo--

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        CERTIFICATE

2

3        I hereby certify that pursuant to Section 753,

4   Title 28, United States Code, the foregoing is a true and

5   correct transcript of the stenographically reported

6   proceedings held in the above-entitled matter and that the

7   transcript page format is in conformance with the

8   regulations of the Judicial Conference of the United States.

9

10  Date:  September 26, 2018.

11

12

13

14              ___/S/ CHIA MEI JUI _____

15              Chia Mei Jui, CSR No. 3287

16

17

18

19

20

21

22

23

24

25

37

MR. CONAWAY: [1] 3/10
MR. GALIPO: [14] 3/5 4/2 19/9 19/15 20/21 21/1 21/4 22/17 22/20 23/13 24/10 24/14 34/10 34/24
MR. OWENS: [38]
MS. GARCIA: [1] 3/14
MS. LE: [1] 3/8
THE CLERK: [2] 3/3 34/25
THE COURT: [49]

$

$2 [1] 17/6
$2 million [1] 17/6
$7 [7] 12/19 13/9 13/19 19/20 20/15 31/9 31/16
$7 million [7] 12/19 13/9 13/19 19/20 20/15 31/9 31/16

-

--oOo [1] 35/3

1

10 [2] 11/17 22/2
10 million [1] 17/18
1125 [1] 26/19
11:36 [2] 1/17 3/2
12:24 [1] 35/2
12th [1] 6/9
13181 [1] 2/13
136 [1] 26/19
14 [3] 1/16 3/1 6/16
16-1128-AB [2] 1/9 3/4
1982 [1] 6/22
1983 [11] 13/19 14/4 14/11 14/16 16/7 16/10 16/12 24/18 27/15 27/20 29/3

2

20 [2] 11/18 22/2
2015 [1] 26/20
2018 [6] 1/16 3/1 6/9 6/11 13/6 36/10
21 million [2] 28/23 28/24
21800 [1] 2/4
26 [1] 36/10
2655 [1] 2/8
28 [1] 36/4

3

3 million [1] 18/5
3.5 [3] 20/17 31/10 31/10
3.5 million [1] 18/6
310 [1] 2/4
3287 [2] 1/23 36/15
3333 [1] 2/5
347-3333 [1] 2/5

350 [1] 1/24

4

400 [1] 2/13
4311 [1] 1/24
4th [1] 13/6

5

5.5 million [1] 17/19
50 [9] 4/23 6/6 6/8 6/11 6/16 7/7 7/13 8/1 21/20
503-9010 [1] 2/9
5500 [1] 2/14
562 [1] 2/14
59 [4] 4/23 8/10 8/13 12/17

6

6.5 [2] 17/17 31/11
6.5 million [2] 17/5 17/10
699-5500 [1] 2/14

7

7 million [3] 17/14 28/23 29/8
753 [1] 36/3
760 [1] 2/9

8

818 [2] 2/5 13/14

9

90012 [1] 1/24
9010 [1] 2/9
91367 [1] 2/5
91746 [1] 2/14
92307 [1] 2/9

A

AB [2] 1/9 3/4
abandoned [1] 22/7
able [5] 5/15 6/3 6/4 23/22
abundant [1] 23/1
acceptable [1] 24/14
accommodate [1] 6/3
accommodation [2] 18/8 18/15
account [1] 11/15
acknowledged [1] 12/1
Act [33] 12/22 12/23 13/4 13/7 13/18 13/22 14/4 14/4 14/11 14/16 14/20 14/25 15/10 15/13 15/22 16/5 16/11 16/12 17/14 20/5 20/11 26/25 27/5 27/10 27/13 27/22 27/24 28/4 28/13 28/22 29/1 29/3 29/14 acting [3] 8/25 11/2 11/3
add [1] 33/18
added [1] 7/5
addition [1] 22/11
additional [2] 17/16

26/8
additur [1] 31/8
address [4] 16/25 19/8 19/16 25/20
addressed [1] 14/22
adequacy [1] 4/22
adequate [1] 18/4
admitted [2] 5/11 25/1
after [4] 7/2 28/9 33/21 33/21
afternoon [4] 18/16 18/21 31/25 32/6
again [4] 22/16 29/11 32/16 33/15
against [1] 9/22 13/10 13/11 13/13
ago [1] 4/21
agree [7] 9/14 9/18 18/3 21/19 25/25 31/5 33/8
agreeable [1] 33/6
agreed [3] 9/13 9/16 23/10
agreement [1] 25/6
al [2] 1/10 3/5
allow [3] 4/10 7/22 26/10
already [2] 7/23 31/21
alter [1] 31/2
altering [1] 3/25
although [1] 18/24
ALVAREZ [1] 2/12
ALVAREZ-GLASMAN [1] 2/12
amend [1] 31/2
amended [6] 17/3 18/9 18/12 18/18 25/5 29/25
amending [1] 34/12
amendment [3] 9/8 25/6 30/13
analysis [1] 11/19
ANDRÉ [1] 1/3
anecdotal [1] 33/1
ANGELES [4] 1/18 1/24 3/1 33/2
another [1] 28/10
answer [1] 20/20
Anyway [1] 29/17
appeal [1] 30/9
appearance [1] 3/19
APPEARANCES [1] 2/1
appeared [1] 20/17
appellate [6] 19/1 25/9 25/16 31/21 31/21 31/24
APPLE [1] 2/9
apples [1] 34/14
applicable [2] 13/3 13/4
apply [3] 10/12 21/18 24/17
appreciate [5] 5/19 6/14 7/20 19/6 34/2
appropriate [3] 23/18 30/22 32/8
appropriately [1] 20/8

April [4] 6/11 13/5 13/6 28/22
April 2018 [1] 6/11
April 4th [1] 13/6
ARCHIBALD [1] 1/5 2/2 3/5 3/7 3/10 3/22 9/7 17/15 17/18
Archibald's [2] 14/1 20/18
area [1] 19/12
aren't [4] 13/18 14/3 14/4 29/3
arguably [3] 11/21 13/12 32/22
argue [1] 21/18
argued [1] 17/10
argument [4] 8/1 22/8 26/14 27/13
arguments [1] 26/6
around [3] 24/25 33/2 34/20
articulate [1] 24/1
asked [5] 10/1 23/3 23/25 29/25 30/1
asking [1] 31/20
aspect [1] 13/13
assert [2] 8/5 8/15
asserted [1] 9/10
assistance [1] 4/15
assume [4] 11/4 19/2 19/11 24/19
attack [1] 20/15
attempt [1] 25/18
attempted [1] 12/19
audience [1] 3/23
await [1] 18/13
award [3] 13/9 17/4 17/9
awarded [6] 13/7 17/17 18/3 18/4 20/8 31/16
awarding [1] 14/13
awards [1] 21/7
away [1] 10/24

B

back [9] 9/23 10/4 10/18 13/5 19/13 22/7 23/12 28/25 32/1
Bane [32] 12/22 12/23 13/4 13/7 13/18 13/22 14/3 14/11 14/15 14/20 14/25 15/10 15/13 15/22 16/5 16/11 16/12 17/14 20/5 20/11 26/25 27/5 27/10 27/13 27/22 27/24 28/4 28/13 28/22 29/1 29/3 29/14
Bane Act [14] 20/5 20/11 26/25 27/5 27/10 27/13 27/22 27/24 28/4 28/13 28/22 29/1 29/3 29/14
based [4] 10/25 23/8 25/2 30/22
basis [2] 30/10 34/4
Batson [1] 23/19

April [4] 6/11 13/5
before [9] 3/21 12/6 18/18 19/4 25/13 25/19 26/16 30/19 32/6
begging [1] 30/16
behalf [6] 3/7 3/9 3/11 3/13 3/16 7/3
behind [1] 9/22
belabor [4] 6/20 17/11 29/18 31/11
belief [1] 33/4
believe [6] 8/18 10/14 12/8 33/9
believes [1] 30/22
below [1] 24/21
beneficiaries [1] 15/20
BERNARDINO [4] 1/10 3/5 3/14 33/25
better [1] 19/3
between [1] 15/3
BIROTTE [1] 1/3
bit [1] 19/17
blah [3] 30/11 30/11 30/11
Bob [1] 3/11
body [1] 23/22
both [11] 4/10 13/11 14/15 14/22 23/10 30/11 30/12 30/20 32/11 33/5 33/6
BOULEVARD [1] 2/4
BOX [1] 2/8
Bresaz [2] 26/19 29/11
brief [2] 16/22 26/13
Briefly [1] 4/5
bring [6] 5/15 5/16 20/3 20/4 28/11 29/13
broadly [1] 8/23
broken [1] 20/25
brought [1] 28/13
BURBANK [1] 2/4
burden [1] 12/6
business [1] 32/7

C

calendar [1] 32/5
CALIFORNIA [1/2 1/18 1/24 2/5 2/9 2/14 3/1 26/20
call [2] 12/19 16/8
Calling [1] 3/4
came [5] 5/5 5/6 7/4 8/2 14/11
car [1] 9/22
carefully [1] 8/23
cases [6] 21/9 24/25 26/17 33/3 33/20 33/24
CCRR [1] 1/23
CENTRAL [1] 1/2
certainly [4] 5/5 6/19 9/10 18/4
CERTIFICATE [1] 36/1
certify [1] 36/3
challenge [1] 23/19

**C**

challenging [1]  4/21
chance [1]  4/1
change [4]  8/14 8/16 27/11 30/16
characterize [1]  16/3
Chaudhry [8]  15/1 15/2 15/3 15/7 15/11 15/12 15/21 28/13
Chaudhry's [3]  15/4 15/5 15/5
CHIA [3]  1/23 36/14 36/15
child [1]  32/22
children [2]  15/18 20/2
CHRISTY [2]  2/13 3/16
Christy Garcia [1]  3/16
Circuit [3]  15/2 28/14 32/12
citation [1]  5/1
cite [5]  5/5 6/17 15/1 30/5 30/6
cited [5]  8/14 24/24 26/17 26/18 30/20
cites [1]  6/18
city [4]  2/14 6/18 33/2 33/14
civil [3]  13/22 13/23 27/21
claim [5]  12/24 20/5 23/10 24/6 28/13
claims [8]  14/1 14/2 19/22 19/23 20/3 20/10 21/7 23/2
Clara [1]  26/19
clarity [1]  7/5
clean [1]  19/3
clear [13]  8/21 8/21 11/25 11/25 15/2 17/2 19/19 19/25 20/22 22/10 25/4 32/11 34/15
clearly [16]  5/21 6/24 7/11 8/7 12/9 13/2 13/3 13/17 20/11 20/13 22/20 22/25 24/4 28/1 32/24 34/13
clock [1]  20/25
close [1]  32/7
closing [1]  22/8
cmjui.csr [1]  1/25
co [2]  15/17 16/11
co-extensive [2]  15/17 16/11
Code [3]  13/14 19/14 36/4
colloquially [1]  15/25
COLVIN [1]  2/12
comfortable [1]  25/15
comment [1]  26/7
comments [3]  21/3 30/20 34/11
compelling [3]  21/8 21/12 24/8
competence [1]  11/21

complete [1]  12/3
CONAWAY [3]  2/7 2/8 3/11
concede [1]  16/5
conceded [1]  16/6
concept [1]  29/19
concerned [1]  5/13
concluded [1]  35/2
conduct [4]  9/2 24/14 24/21 27/25
Conference [1]  36/8
confidence [1]  5/14
conformance [1]  36/7
confused [4]  19/17 26/15 26/16 26/17
confusing [1]  19/24
consensual [2]  9/21 22/21
consider [4]  4/23 17/12 18/1 34/1
considered [1]  18/2
consistent [1]  31/3
consistently [1]  14/23
consonant [1]  18/2
constitute [1]  29/21
constitutes [1]  8/16
constitutional [1]  6/25 7/12 34/16
construed [1]  8/22
contact [2]  25/9 31/21
contacting [1]  31/24
context [1]  24/16
contrary [3]  5/17 5/18 27/5
contributory [1]  24/7
controlling [2]  8/14 8/17
controverted [1]  11/23
convenient [1]  32/4
conversation [1]  9/25
convey [2]  33/11 33/17
copy [1]  34/3
corrected [1]  29/25
correctly [5]  6/19 8/11 8/11 11/6 23/20
counsel [14]  2/1 5/15 19/17 19/24 23/25 25/8 25/9 25/16 25/23 31/21 31/21 31/23 31/24 34/8
county [11]  1/10 3/5 3/14 13/11 13/13 26/19 31/22 33/10 33/15 33/25 34/19
coupled [1]  29/21
course [3]  8/11 27/8 30/14
court reporter [1]  34/6
Court's [6]  6/5 13/10 15/24 20/20 20/23 24/12
courts [2]  14/20 14/22
cover [1]  34/5
credibility [5]  11/20 21/15 23/6 23/7 33/22

creditors [1]  15/19
cries [1]  17/25
criticizing [2]  33/13 33/16
CROSSROADS [1]  2/13
cruiser [1]  9/23
CSR [2]  1/23 36/15
cuffs [1]  9/23
CV [2]  1/9 3/4

**D**

DALE [3]  2/3 2/3 3/7
Dale Galipo [1]  3/7
damage [2]  21/7 24/6
damages [33]  12/25 13/2 13/7 13/18 13/19 15/10 16/5 16/7 16/10 17/5 17/6 17/14 17/16 17/23 19/20 19/21 19/24 19/25 20/3 20/8 20/17 23/17 26/2 28/5 28/7 28/8 28/9 28/22 29/1 29/3 29/3 29/5 34/15
Date [1]  36/10
day [2]  16/8 21/1
dealing [1]  33/1
dealt [1]  29/12
death [13]  9/17 14/1 14/21 14/24 16/7 17/5 17/6 17/16 19/21 19/25 20/17 26/21 31/12
DECEASED [1]  1/7
decedent [3]  13/3 26/23 27/2
decedent's [2]  13/23 15/10
decided [5]  6/10 6/22 17/9 17/9 17/20
decides [1]  18/19
decision [5]  9/1 15/9 24/3 24/9 31/13
defendant [1]  12/7
defendants [7]  1/11 2/11 3/14 3/16 7/3 8/5 33/13
defendants' [1]  3/24
defense [9]  4/4 4/13 5/2 7/6 12/8 12/10 21/17 23/24 33/16
definitely [1]  12/9
delay [2]  29/20 29/21
deny [1]  12/7
deputy [15]  9/21 10/2 10/13 10/19 11/13 11/16 11/24 12/9 13/11 21/15 22/20 22/23 23/7 25/1 32/22
Deputy Woods [9]  10/2 10/13 10/19 11/24 12/9 13/11 21/15 23/7 25/1
Deputy Woods's [1]  22/20
deputy's [2]  11/21 27/25

derivative [1]  29/14
designated [1]  29/12
detention [3]  9/7 9/10 22/23
die [1]  15/16
DIEU [1]  2/4
different [3]  14/6 15/14 30/14
differentiate [1]  15/3
dilated [1]  23/2
dire [1]  23/25
disagree [1]  32/12
disbelieved [1]  21/17
discretion [2]  23/21 30/4
discuss [1]  24/16
disputed [1]  14/19
DISTRICT [4]  1/1 1/2 1/3 26/20
Dividing [1]  23/17
DIVISION [1]  1/2
divvying [1]  17/15
DOMINIC [7]  1/5 2/2 3/4 3/7 3/10 13/25 17/5
Dominic Archibald [3]  3/7 3/10 17/5
door [2]  30/2 30/3
down [4]  7/4 8/2 10/1 10/3
drawn [1]  4/12
during [1]  11/7

**E**

early [1]  34/23
ED [1]  3/4
effect [2]  17/3 17/17
eight [1]  14/12
either [3]  4/11 10/11 16/21
element [1]  5/22
elevated [1]  22/22
emphasize [2]  7/8 7/25 10/5
emphasizing [1]  31/14
encounter [2]  9/21 22/21
encourage [1]  32/16
encouraged [1]  21/12
enforcement [3]  6/23 8/22 12/7
engaged [1]  9/24
enhanced [1]  18/5
enjoyment [4]  12/25 20/12 27/18 28/3
enough [2]  7/22 19/5
enter [1]  18/19
entered [3]  19/4 29/24 30/17
enters [1]  18/18
entire [1]  21/17
entirely [1]  23/18
entitled [9]  9/3 10/9 12/9 14/6 14/24 16/6 16/11 27/4 36/6
entitlement [1]  24/6
entity [2]  15/14 15/19

derivative column continued

error [4]  14/9 15/23 24/3 28/9
established [9]  5/22 6/21 6/24 7/11 7/11 8/7 10/13 27/5 34/14
estate [9]  15/5 15/14 15/14 15/17 15/18 20/3 28/11 28/13 29/4 30/4
even [11]  11/15 11/17 15/8 20/15 20/18 20/25 24/15 24/18 24/25 25/1 30/6
evidence [31]  4/22 4/24 5/1 5/5 5/6 5/8 5/10 5/15 5/17 5/17 10/13 10/15 11/1 11/9 11/10 11/12 11/23 21/6 21/7 21/11 22/15 22/16 23/1 23/8 25/4 26/1 30/8 30/22 31/3 31/12 33/22
exactly [1]  14/17
exception [2]  12/12 12/16
excess [1]  11/16
excessive [2]  17/10 17/11
excuse [1]  12/13
existing [3]  8/24 8/24 10/9
expect [1]  24/22
expedited [1]  34/4
expert [1]  22/4
explanations [1]  22/9
extensive [2]  15/17 16/11
extremely [1]  21/8
eyes [1]  10/23

**F**

F.Supp.3d [1]  26/19
face [1]  22/2
fact [5]  5/12 8/2 9/3 10/16 11/12 11/25
factor [1]  11/19
facts [5]  8/24 9/5 10/10 24/19 33/7
fair [2]  9/12 19/5
family [1]  14/23
far [2]  5/12 24/21
fashion [2]  17/24 30/21
fast [1]  30/17
father [2]  17/6 29/6
favor [3]  5/2 19/22 24/20
FCRR [1]  1/23
federal [7]  1/23 14/23 19/22 19/23 20/4 20/10 20/13
feel [1]  32/8
fell [1]  10/18
felt [1]  7/7
fence [1]  22/1
few [2]  4/18 21/2
fifty [4]  16/8 16/8 17/15 17/15
fifty-fifty [2]  16/8

**F**

fifty-fifty... [1] 17/15
fighting [1] 23/12
filed [3] 6/7 6/8 21/10
filing [1] 18/11
filings [1] 25/12
final [4] 21/22 24/3 26/10 34/22
finally [1] 19/4
find [1] 11/25
finding [2] 20/9 23/7
finds [1] 27/9
fine [1] 30/25
first [7] 1/24 3/18 13/20 15/7 21/5 21/9 28/6
Fitzgerald [2] 6/17 6/22
five [3] 14/12 21/25 23/3
flatly [1] 14/20
floating [2] 12/19 29/7
focus [1] 6/5
follow [1] 22/15
follow-up [1] 5/11
following [3] 6/10 16/23 27/24
force [2] 11/22 22/2
foregoing [1] 36/4
forensic [1] 33/22
form [7] 13/2 14/15 23/9 23/13 23/15 26/4 27/17
formal [1] 18/17
formalize [1] 32/1
format [1] 36/7
forth [10] 5/14 5/15 5/16 7/23 10/3 12/24 19/13 23/12 25/11 28/1
found [3] 19/22 20/11 34/17
four [3] 8/12 19/23 20/10
fourth [2] 8/13 9/8
Fourth Amendment [1] 9/8
frame [2] 22/3 22/4
frankly [3] 25/8 25/15 26/1
free [2] 12/19 29/7
frequently [1] 11/11
FRIDAY [2] 1/16 3/1
frontal [1] 10/22
full [3] 12/2 22/22 32/14
fully [1] 12/3
fulsomely [1] 33/9
fundamental [1] 12/16
fundamentally [4] 14/6 15/20 15/23 28/6
funny [1] 29/8
furnish [1] 34/4
further [2] 16/16 34/10
fuzzy [1] 9/14

**G**

GALIPO [8] 2/3 2/3

3/7 11/5 19/8 29/17 32/2 34/10
GARCIA [6] 2/13 3/16 3/18 4/13 4/16 5/12
getting [2] 10/4 25/16
Give [1] 16/17
given [1] 5/11
glad [5] 6/1 6/3 6/4
glanced [1] 21/25
GLASMAN [1] 2/12
gmail.com [1] 1/25
goes [3] 10/8 12/21 27/12
good [5] 3/6 3/15 27/12 33/23 34/18
Government [1] 13/14
governs [1] 10/10
grabbing [2] 22/9 25/1
granted [2] 8/13 24/1
grateful [1] 18/22
greetings [1] 3/22
gross [2] 13/9 13/10
ground [2] 8/13 10/18
grounds [1] 8/12
guess [6] 4/20 5/3 5/7 19/12 30/20 31/1
gun [3] 22/6 22/9 25/2

**H**

hand [2] 5/11 6/20
handle [1] 33/23
handled [1] 21/8
hands [5] 9/22 18/25 19/1 26/21 30/7
HANG [2] 2/4 3/9
Hang Le [1] 3/9
happened [2] 22/10 25/4
harder [1] 7/6
hardly [1] 6/23
Harlow [2] 6/17 6/21
harmless [1] 24/4
having [5] 19/18 21/8 32/16 33/13 33/16
Hayden [1] 3/14
hear [2] 5/3 33/10
heard [2] 4/10 26/11
hearing [2] 18/13 33/14
heart [3] 10/23 12/21 27/12
heat [1] 8/25
heavy [1] 32/5
heck [2] 16/4 16/7
held [1] 36/6
here3.5 [1] 18/6
here3.5 million [1] 18/6
hereby [1] 36/3
hesitancy [1] 33/3
high [2] 11/18 12/6
HILLS [1] 2/5
himself [1] 25/1
hit [3] 7/6 11/16 23/19
honorable [1] 1/3 21/12
hop [1] 22/1
hope [2] 33/11 33/17

hoping [1] 21/21
Hughes [4] 6/9 8/8 8/16 10/5
hundreds [1] 33/19

**I**

idea [1] 27/1
identified [1] 26/22
ignore [4] 5/8 5/10 5/17 9/5
II [1] 1/7
immediately [2] 27/24 34/3
immunity [12] 5/22 7/5 8/21 9/3 10/6 10/9 12/8 12/10 21/18 24/16 26/5 34/13
important [6] 6/7 7/8 7/17 8/15 12/5 21/21
importantly [1] 24/1
impose [1] 13/13
inappropriate [2] 25/3 25/20
incompetent [2] 10/7 10/14
incompetently [1] 11/3
indicate [3] 7/1 8/25 10/25
individual [1] 29/15
INDIVIDUALS [1] 1/6
indulge [1] 27/7
indulgent [1] 12/15
INDUSTRY [1] 2/14
inferences [1] 24/20
influence [1] 22/14
information [1] 33/1
inherit [1] 15/18
initial [1] 20/14
injure [1] 10/23
injury [1] 22/5
instruction [1] 12/22 12/23 27/24
instructions [2] 23/14 27/25
intention [1] 31/23
interest [7] 1/6 15/21 19/15 20/1 26/23 27/4 29/13
interesting [2] 15/12 27/23
intervening [2] 8/14 8/16
intoxication [1] 23/2
invited [1] 32/2
inviting [2] 14/9 34/5
invoke [1] 12/9
involved [2] 25/16 33/20
issue [14] 5/14 6/11 6/20 7/12 8/6 10/10 14/19 15/11 18/24 18/24 19/13 23/1 23/19 34/12
issued [1] 3/24
issues [9] 4/11 5/20 6/5 12/11 16/12 22/20 25/18 32/10 34/22

item [1] 14/15

**J**

JMOL [1] 6/8
JR [1] 1/3
judge [2] 1/3 23/22
judgment [18] 4/1 17/4 18/9 18/12 18/18 18/18 19/4 21/11 25/5 27/11 28/20 29/24 30/8 30/13 30/17 30/22 31/2 34/12
Judicial [1] 36/8
JUI [3] 1/23 36/14 36/15
jump [1] 8/9
juror [1] 23/25

**K**

killing [1] 9/6
kind [5] 6/4 7/22 21/25 29/8 29/14
Kisela [10] 6/9 6/9 7/4 8/2 8/8 8/10 8/16 10/5 12/6 24/23
Kisela versus [1] 6/9
knew [1] 10/21
knocked [1] 22/9
knowing [1] 11/2
knowingly [2] 10/7 10/15
known [1] 7/1
knows [1] 29/19
Kyle [1] 3/14

**L**

language [2] 23/22 27/20
large [2] 11/9 24/10
last [4] 18/7 30/19 31/19 34/11
later [3] 8/13 13/16 30/16
law [33] 2/3 2/3 2/4 2/7 2/8 2/12 2/13 6/23 6/23 7/7 8/6 8/14 8/17 8/19 8/22 10/7 10/15 11/2 12/7 14/19 17/23 19/17 20/11 20/4 20/6 20/13 24/23 24/24 24/24 27/5 29/10 31/2 34/14
LE [2] 2/4 3/9
least [9] 4/25 5/12 7/25 9/19 11/9 22/14 24/12 25/22 34/23
leave [2] 12/4 32/13
lectern [3] 4/17 15/16 16/25
legal [1] 15/14
length [2] 17/22 19/13
less [1] 16/4
let [8] 3/21 7/18 16/24 19/16 22/24 27/6 28/16 32/7
liability [3] 20/10 26/2 29/14
life [6] 13/1 20/13

26/16 27/18 28/3 33/20
like [9] 5/3 18/15 19/2 19/3 26/11 29/8 30/25 31/25 34/22
limits [1] 5/13
line [1] 14/15
line item [1] 14/15
linkage [1] 28/1
literally [1] 22/7
litigation [1] 24/19
little [5] 9/13 19/17 19/19 22/15 25/8
lodge [1] 25/9
lodged [1] 18/12
look [4] 7/17 18/23 22/17 27/16
looked [2] 21/24 22/4
looking [2] 22/12 32/22
LOS [4] 1/18 1/24 3/1 33/2
loss [4] 12/25 20/12 27/18 28/3
lot [9] 5/6 6/13 22/13 22/20 23/11 23/12 26/3 32/4 32/10
loudly [1] 32/23
loved [1] 14/24

**M**

made [6] 7/3 8/21 17/4 17/9 25/7 30/18
make [7] 8/21 19/4 21/2 31/3 31/13 31/19 32/11
makes [1] 23/17
making [1] 9/1
managers [1] 33/15
manner [2] 33/4 33/6
many [3] 19/18 21/8 21/16
March [1] 6/9
March 12th [1] 6/9
married [2] 20/2 27/2
material [1] 21/16
matter [5] 3/19 18/20 34/9 34/21 36/6
maybe [3] 11/15 19/18 32/17
mean [8] 6/21 11/19 14/10 17/1 21/24 23/5 23/10 24/15
meet [1] 34/19
MEI [3] 1/23 36/14 36/15
members [1] 14/23
memory [4] 9/13 11/6 19/15 23/12
mentioned [3] 7/2 17/22 29/18
Mere [1] 29/20
message [4] 24/13 33/10 33/11 33/17
messenger [1] 32/17
microphone [1] 32/2
might [4] 11/17 12/12 24/18 25/18

## M

million [21] 12/19 13/9 13/19 17/5 17/6 17/10 17/14 17/18 17/19 18/5 18/6 18/6 19/20 20/15 28/23 28/23 28/24 29/8 31/9 31/11 31/16
mind [1] 28/1
minutes [1] 23/3
Miss [5] 3/18 3/22 4/13 4/16 20/18
Miss Archibald [1] 3/22
Miss Archibald's [1] 20/18
Miss Garcia [3] 3/18 4/13 4/16
misunderstood [1] 31/20
modified [2] 30/13 30/15
moment [3] 7/2 9/1 16/18
money [1] 29/8
month [3] 6/10 7/2 8/2
months [3] 13/16 30/16 31/22
more [10] 4/6 4/7 4/8 7/19 16/4 19/19 24/1 32/4 32/12 33/8
morning [2] 3/6 3/15
mother [1] 29/5
motion [16] 3/25 5/23 6/6 6/8 6/11 6/17 7/3 7/7 7/13 8/2 8/10 8/13 12/17 12/18 21/11 21/20
motions [1] 20/14
move [1] 30/19
moving [1] 18/10
Mr. Archibald [1] 9/7
Mr. Chaudhry's [3] 15/4 15/5 15/5
Mr. Galipo [5] 11/5 19/8 29/17 32/2 34/10
Mr. Owens [3] 3/18 4/13 19/7 26/10 28/16
Mr. Picked [1] 10/2
Mr. Pickett [13] 3/12 3/22 9/24 10/18 11/8 11/11 11/13 13/7 13/17 17/19 22/13 27/1 29/4
Mr. Pickett's [1] 12/25
Mr. Pickett, Sr [1] 17/7
Mr. Pickett, Sr.'s [1] 14/2
Mr. Woods [1] 11/12
Ms. Archibald [1] 17/18
Ms. Dominic [1] 13/25
Ms. Garcia [1] 5/12
much [8] 7/6 7/21 9/16 16/1 19/11 23/8 28/19 34/7
multiple [1] 14/10
myself [1] 10/17

## N

name [1] 23/2
narcotics [1] 22/16
Nate [1] 22/23
Nate's [1] 24/7
NATHANAEL [4] 1/5 1/6 2/7 28/3
Nathanael Pickett [1] 28/3
naturally [1] 7/6
nature [1] 13/12
need [5] 4/6 4/7 4/8 18/5 25/10
negligence [1] 24/7
neither [2] 22/10 25/4
net [1] 17/3
never [4] 15/7 20/18 22/1 23/3
new [7] 3/25 6/23 7/7 8/19 12/17 24/23 24/24
next [1] 34/23
Nice [1] 34/19
Ninth [3] 15/2 28/14 32/12
Ninth Circuit [3] 15/2 28/14 32/12
nonfamily [1] 15/6
NORTH [1] 2/13
Northern [1] 26/20
Northern District [1] 26/20
noted [2] 23/21 23/24
notes [1] 22/12
nothing [1] 15/8
number [5] 10/17 15/6 21/14 21/15 27/17
Number 1 [1] 27/17
number one [1] 21/14
Number two [1] 21/15
numerous [1] 11/8

## O

Oakland [1] 6/18
objection [3] 25/10 25/13 25/24
objections [6] 18/11 18/17 25/12 25/17 32/1 32/7
obvious [1] 15/15
obviously [5] 4/10 6/13 7/8 9/17 20/23
occur [1] 34/23
occurred [1] 12/4
of Los [1] 33/2
off [2] 19/12 19/15
offense [1] 26/15
offensive [1] 24/17
office [1] 32/1
officer [6] 8/25 9/2 11/2 11/7 24/22 33/20
officer-involved [1] 33/20
officers [4] 6/24 8/22 10/9 26/22
OFFICES [2] 2/3 2/7
OFFICIAL [1] 1/23
officials [1] 33/10

offspring [1] 27/3
oh [4] 15/24 28/2 29/2 30/10
one [20] 5/20 6/14 11/1 11/24 14/24 16/3 17/25 18/7 19/12 21/14 22/3 22/4 22/4 22/10 25/4 25/6 26/10 26/17 28/9 32/12
only [6] 6/14 9/6 20/16 21/6 22/8 31/1
oOo [1] 35/3
open [3] 30/2 30/3
opinion [2] 24/13 26/23
opportunity [3] 18/16 24/1 26/10
opposed [2] 23/5
opposing [1] 31/23
opposition [1] 29/2
oranges [1] 34/14
order [2] 32/6 34/3
organizational [1] 15/6
original [2] 9/20 24/9
otherwise [1] 7/1
out [13] 9/24 10/19 13/5 14/7 14/8 14/11 18/1 20/24 21/6 22/9 24/2 25/2 32/6
outcome [1] 18/13
over [3] 9/24 10/18 32/23
overwhelming [1] 26/1
OWENS [7] 2/12 3/13 3/18 4/13 19/7 26/10 28/16
own [5] 15/19 15/19 22/3 32/25 34/5

## P

P.O [1] 2/8
page [4] 5/13 6/16 8/5 36/7
page 14 [1] 6/16
page 8 [1] 8/5
pages [1] 34/5
pain [4] 13/1 20/12 27/19 28/4
papers [8] 4/25 7/23 13/5 13/17 17/2 18/10 30/6 31/12
paragraph [2] 6/15 6/16
parents [11] 15/4 15/10 15/13 15/15 15/16 15/21 19/14 20/2 27/2 27/3 27/9
PARKWAY [1] 2/13
parsed [1] 14/8
part [6] 21/22 21/22 23/6 24/2 24/8 34/14
particular [3] 8/24 25/13 29/4
particularly [1] 23/24
parties [5] 4/1 9/14 9/16 16/11 21/13

party [1] 14/6
pass [1] 18/25
passing [1] 25/2
pat [2] 10/1 10/3
patently [1] 9/2
pause [1] 16/22
people [2] 33/9 33/12
perhaps [1] 23/6
permitted [1] 25/23
person [1] 7/1
personal [1] 29/15
phase [1] 20/19
photographic [1] 11/8
Picked [1] 10/2
PICKETT [16] 1/7 2/7 3/12 3/22 9/24 10/18 11/8 11/11 11/13 13/3 13/7 17/19 22/13 27/1 28/3 29/4
Pickett's [1] 12/25
Pickett, [2] 14/2 17/7
PICKETT,I [1] 1/5
plainly [2] 10/6 10/13
plaintiff [6] 2/2 2/7 3/7 3/9 15/13 19/23
plaintiffs [12] 1/8 4/2 9/9 12/22 13/6 13/16 15/3 15/6 15/6 16/4 18/12 33/12
plaintiffs' [4] 5/15 11/5 17/3 24/20
play [1] 14/7
please [2] 4/18 18/7
point [14] 7/21 9/14 9/20 10/4 12/17 16/13 16/23 17/11 23/5 29/19 30/7 30/18 30/19 31/19
pointed [3] 13/5 21/5 24/2
points [2] 17/1 21/16
police [2] 10/8 24/22 26/22 33/1
position [4] 5/18 10/22 13/21 25/22
possible [2] 22/8 32/15
poster [1] 32/22
powers [1] 34/4
precedent [2] 8/24 10/10
predeath [4] 13/1 20/12 27/19 28/4
predicated [1] 29/20
prejudice [2] 29/20 29/22
present [2] 3/8 4/11
presented [7] 13/22 13/24 13/25 17/21 23/8 27/13 27/21
preserve [1] 5/23
pressing [1] 5/13
pretty [1] 25/4
prior [1] 33/20
probably [1] 15/18
Probate [1] 19/14
Probate Code [1] 19/14

problem [1] 13/20
procedural [1] 4/21
proceedings [4] 1/15 16/22 35/2 36/6
proceeds [1] 19/1
process [1] 5/4 15/25
professional [1] 18/15
prong [1] 5/22
properly [5] 5/11 12/10 13/14 13/15 25/19
proposal [1] 7/23
proposed [4] 18/9 18/12 18/17 25/5
proposition [4] 6/21 15/9 26/18 30/6
propositions [1] 10/12
protects [1] 10/6
pull [1] 22/19
pulled [1] 9/23 10/19
punch [1] 22/4
punched [2] 11/8 22/2
punching [2] 11/11 11/13
punitive [1] 13/12 24/6
pupils [1] 23/3
pursuant [1] 36/3

## Q

qualified [10] 5/22 7/5 9/3 10/9 12/7 12/10 21/18 24/16 26/4 34/13
quarreling [1] 28/19
question [17] 4/21 11/9 13/2 14/9 14/11 14/12 19/22 20/7 20/8 20/9 20/20 23/3 23/8 24/6 27/12 28/17 28/20
Question 1 [1] 13/2
questioned [1] 21/16
questions [8] 4/9 4/14 4/18 11/20 22/15 23/25 26/6 26/9 26/1
quite [2] 13/17 15/15 18/4 24/10 25/8 25/15 26/1
quote [2] 10/13 12/25
quotes [2] 6/12 6/14

## R

raise [7] 5/21 5/23 6/11 14/6 16/12 25/18 31/1
raised [4] 7/12 12/17 17/1 25/19
raises [2] 11/20 32/10
raising [1] 17/17
rather [1] 32/1
read [9] 6/12 10/12 20/14 20/16 28/18 28/17 30/21 32/20 34/5
reallocate [1] 28/8
reallocation [1] 31/15

**R**

really [8]  7/4 8/19 10/4
12/21 31/8 31/9 33/25
34/2
reason [1]  31/1
reasonable [6]  6/25
7/11 22/22 22/25
24/20 24/22
reasonably [1]  7/11
reasoned [1]  20/23
reassign [1]  28/8
recall [2]  19/12 21/10
recess [2]  4/7 35/1
recharacterization [1]
31/15
recite [1]  32/3
recognize [3]  11/14
12/5 32/25
record [5]  12/3 25/14
32/3 32/11 32/14
recover [3]  16/6 26/24
27/4
recoverable [3]  19/21
20/13 34/15
recoveries [1]  14/10
redefine [1]  28/7
redesignate [2]  28/7
28/7
redesignation [1]
31/15
redirect [1]  22/8
redundant [1]  16/18
refashion [1]  30/8
refer [1]  29/11
reference [1]  11/6
reflected [1]  16/1
refrain [1]  7/24
refrained [3]  13/15
18/8 18/11
regard [3]  7/15 7/21
12/11
Regarding [1]  25/5
regardless [1]  7/21
regulations [2]  10/21
36/8
relates [3]  4/11 14/3
19/18
relevant [2]  8/4 8/6
reliable [1]  12/3
reliance [1]  29/22
remain [1]  34/21
remitted [1]  20/17
remittitur [2]  3/25
31/9
rendered [1]  13/10
repeat [2]  7/23 30/5
repeatedly [1]  32/18
rephrased [1]  28/18
reply [1]  30/6
reported [1]  36/5
reporter [2]  1/23 34/6
REPORTER'S [1]  1/15
representatives [1]
33/15
reputation [1]  32/25
request [2]  30/3 30/3
required [1]  4/23
resolve [1]  34/1

resolved [2]  33/4 33/6
respect [8]  8/1 16/1
20/22 23/16 26/4 26/4
26/5 34/13
respectfully [1]  31/7
respond [2]  7/25
25/10
response [2]  7/13
11/4
rest [2]  16/24 18/10
retained [1]  31/22
review [2]  4/1 4/6
reviewed [2]  33/19
33/22
right [18]  3/17 5/19
7/14 7/20 12/20 16/15
17/22 20/25 21/2
22/18 23/13 24/11
24/15 26/24 29/16
29/17 31/23 34/14
rights [6]  6/25 7/12
9/8 13/22 13/23 27/21
rise [1]  35/1
ROBERT [2]  2/7 2/8
rolled [1]  10/18
ROOM [1]  1/24
Rule [10]  4/23 6/6 6/8
6/16 7/7 7/13 8/10
8/13 12/17 21/20
Rule 50 [5]  6/6 6/8
6/16 7/13 21/20
Rule 59 [5]  8/10 8/13
12/17
ruled [1]  26/24
ruling [5]  16/2 18/17
21/22 21/23 34/22
rulings [1]  16/2
running [1]  22/1

**S**

same [4]  8/8 14/4 14/5
16/12
SAN [4]  1/10 3/5 3/14
33/25
San Bernardino [1]
33/25
Santa [1]  26/19
saying [5]  29/23 30/10
30/16 31/25 34/2
scene [3]  33/21 33/21
33/22
scope [2]  7/5 25/17
scrutiny [4]  30/9
30/23 31/4 31/18
scurry [1]  32/1
second [4]  9/1 11/16
14/8 20/19
Secondly [1]  21/24
Section [1]  36/3
see [4]  3/22 23/2
33/12 34/19
seeing [1]  32/21
seek [2]  17/23 29/1
seeking [2]  30/12
30/12
seem [1]  19/12
seems [2]  9/4 31/2
seen [2]  33/14 33/24

seizure [1]  9/11
selective [1]  5/1
sending [1]  24/13
sense [5]  4/21 4/25
8/23 14/9 23/17
sentence [1]  6/15
separate [2]  14/15
15/19
SEPTEMBER [3]  1/16
3/1 36/10
serves [1]  11/6 23/12
set [1]  7/23
sets [1]  12/6
settle [4]  21/13 32/18
32/19 33/3
seven [1]  23/3
several [1]  26/5
shielded [1]  6/24
shoot [1]  25/3
shooting [4]  33/20
33/21 33/21 33/21
shootings [1]  33/21
short [3]  4/12 7/16
25/25
show [1]  11/10
showed [1]  10/17
siblings [1]  15/5
side [6]  4/11 11/5 18/6
18/6 26/4 29/20
sides [7]  4/10 23/10
30/12 30/20 32/11
33/5 33/6
sign [1]  22/4
similar [1]  24/25
similar-type [1]  24/25
simply [1]  15/23
since [1]  13/12
single [2]  23/1 23/5
24/6
situation [1]  30/18
skip [4]  11/14 11/15
11/21 16/20
skirts [1]  19/3
somebody [1]  10/22
somehow [2]  20/16
21/18
someone [1]  11/5
something [2]  17/12
23/9
somewhat [3]  4/20
5/1 24/17
sort [3]  11/10 32/22
33/1
source [1]  28/8
speaking [2]  15/25
32/17
special [3]  12/24 13/2
27/17
specialist [1]  19/1
specific [2]  10/10
25/23
spent [1]  23/11
split [2]  9/1 16/8
spoke [1]  13/2
spot [2]  13/8 25/20
squad [1]  9/22
squarely [1]  10/10
Sr [1]  17/7

Sr.'s [1]  14/2
stages [1]  21/13
stand [3]  29/24 30/17
32/2
standard [3]  14/5
16/10 16/10
standards [1]  4/23
standing [8]  15/8
17/23 20/3 20/4 20/7
26/24 27/10 29/1
start [3]  4/2 6/2 19/12
started [2]  6/1 22/21
Starting [1]  26/14
state [5]  8/5 14/22
16/25 20/5 25/14
stated [2]  11/7 14/23
states [4]  1/8 8/11
36/4 36/8
stating [1]  14/20
statute [1]  14/21
statutory [2]  6/25 7/12
stenographically [1]
36/5
step [1]  4/17
STEPHEN [2]  2/12
3/13
Stephen T [1]  3/13
stop [3]  9/7 9/9 9/20
straight [1]  27/25
straw [1]  4/12
STREET [1]  1/24
strongly [2]  23/5
33/25
submission [2]  18/21
34/21
submit [1]  23/15
submitted [2]  18/9
23/9
substantial [1]  21/6
successor [3]  1/6
26/23 29/13
successor-in-interest
[2]  26/23 29/13
successors [4]  15/21
19/15 20/1 27/4
successors-in-interes
t [4]  15/21 19/15 20/1
27/4
sue [4]  14/24 15/10
15/13 15/22
suffering [4]  13/1
20/12 27/19 28/4
sufficient [1]  18/5
suggest [3]  26/3
30/20 31/2
suggested [1]  11/9
suggesting [14]  5/7
5/9 5/10 5/16 14/8
14/14 14/18 14/18
14/19 15/24 31/7
suit [1]  6/24
SUITE [2]  2/4 2/13
summary [1]  21/11
support [5]  15/9 21/6
22/15 24/21 26/2
supported [4]  4/24
20/9 29/9 30/8
Supreme [2]  6/10 7/4

sure [3]  17/12 26/16
32/11
surprising [1]  20/14
survival [6]  19/20
19/24 20/3 20/5 29/5
34/15
suspicion [2]  22/22
22/25

**T**

take [11]  4/7 4/14
11/15 12/12 12/14
12/16 16/19 18/20
24/20 26/15 31/9
taking [2]  17/8 17/14
talk [3]  5/21 15/1 28/2
talking [2]  8/10 28/4
tase [3]  10/20 10/20
10/22
Taser [2]  10/19 10/24
technically [1]  20/5
ten [1]  21/25
tentative [13]  3/24 4/2
5/21 6/12 6/14 8/5
8/12 12/12 16/1 18/17
20/23 21/22 25/25
terribly [1]  11/25
testified [1]  11/24
testimony [4]  20/18
21/17 22/13 22/20
thank [11]  4/19 12/15
16/14 16/20 19/7
26/12 32/9 34/7 34/8
34/18 34/25
the -- I [1]  8/20
them [12]  14/6 17/15
17/15 19/14 28/23
29/23 32/3 32/14
32/14 33/16 33/24
34/5
therefore [2]  27/3
27/4
thing [3]  17/25 18/7
20/16
things [3]  16/21 23/20
32/13
think [52]
think -- I [1]  9/15
thinking [2]  14/13
31/8
though [3]  17/16
27/21 31/14
thought [11]  4/22 5/4
6/13 7/8 11/16 11/17
15/25 20/24 22/13
25/16 25/23
thoughts [1]  5/3
thousands [1]  33/19
three [2]  15/18 30/16
throw [1]  9/21
throws [2]  30/2 30/3
Thus [1]  6/7
timing [1]  6/7
Title [1]  36/4
today [3]  3/8 18/13
25/13
together [1]  18/9
too [1]  15/25

**T**

**took [1]** 13/21
**totality [1]** 9/5
**touching [1]** 22/6
**training [2]** 10/22 25/2
**transcribed [1]** 34/6
**transcript [5]** 1/15
32/21 34/3 36/5 36/7
**transcripts [1]** 33/22
**treating [1]** 17/15
**treble [2]** 13/7 28/22
**trebling [1]** 13/13
**trial [11]** 3/25 5/5 5/7
5/11 9/16 11/1 11/7
12/17 13/21 20/18
32/20
**tried [1]** 26/18
**true [2]** 3/20 36/4
**try [1]** 21/13
**trying [2]** 22/16 34/1
**twice [1]** 20/25
**two [5]** 10/11 21/15
22/8 23/20 34/11
**type [3]** 24/25 25/9
34/16
**types [1]** 33/23

**U**

**ultimate [1]** 9/6
**ultimately [4]** 5/7
11/20 11/21 32/12
**unanimous [1]** 24/5
**under [26]** 4/23 6/6
13/4 13/14 14/25
15/10 15/13 15/22
16/7 17/23 18/20
19/21 19/25 20/4 20/5
20/13 22/14 24/16
26/25 27/5 27/10
27/21 29/1 29/14
34/16 34/21
**unfortunate [2]** 9/6
9/18
**Unfortunately [1]** 33/9
**UNITED [3]** 1/1 36/4
36/8
**unless [4]** 6/24 8/23
10/9 26/6
**unlikely [2]** 32/6 34/22
**unreasonable [1]** 9/2
**until [2]** 34/21 34/23
**up [9]** 9/21 16/23
17/15 17/18 17/18
22/7 22/15 22/19
32/14
**upon [2]** 8/12 23/10
**urge [1]** 33/25
**urging [1]** 13/6
**use [1]** 11/21
**used [2]** 15/8 23/20
**using [1]** 11/11

**V**

**VALLEY [1]** 2/9
**various [1]** 21/13
**verdict [12]** 4/24
12/24 13/2 14/15 23/9
23/13 23/14 24/5

24/21 26/2 26/4 27/17
**versus [9]** 3/5 6/9
6/17 6/18 6/21 8/8
8/16 10/5 26/19
**video [10]** 10/16 10/16
10/17 11/10 11/12
11/14 12/2 12/2 22/3
22/3
**views [1]** 30/14
**violate [1]** 10/7
**violated [2]** 10/15
27/21
**violation [5]** 11/2
12/23 13/23 27/14
27/15
**violations [1]** 34/16
**visible [1]** 22/5
**voice [1]** 25/24
**voir [1]** 23/25
**voir dire [1]** 23/25

**W**

**waive [1]** 17/1
**waived [4]** 8/6 21/19
21/20 23/15
**waiver [9]** 8/1 29/17
29/18 29/18 29/19
29/21 30/11 30/15
34/13
**Walk [1]** 5/20
**wanted [4]** 6/2 12/22
18/13 22/23
**wanting [1]** 25/9
**warrant [1]** 33/7
**wary [1]** 25/8
**watched [1]** 10/16
**waver [1]** 26/3
**weak [1]** 22/6
**week [1]** 34/23
**weekend [1]** 34/24
**weighed [1]** 5/2
**welcome [2]** 3/21 34/6
**well-established [1]**
6/21
**went [2]** 6/13 19/13
**WEST [1]** 1/24
**WESTERN [1]** 1/2
**why [3]** 8/18 28/12
31/1
**wife [3]** 15/17 26/22
29/12
**Wilkins [1]** 6/18
**wishes [1]** 4/11
**without [1]** 19/22
**withstand [4]** 30/9
30/23 31/3 31/17
**witnesses [1]** 32/21
**wonderful [1]** 34/24
**WOODLAND [1]** 2/5
**Woods [15]** 3/14 9/21
10/2 10/13 10/19 11/7
11/12 11/13 11/16
11/24 12/9 13/11
21/15 23/7 25/1
**Woods's [1]** 22/20
**word [2]** 15/8 19/3
**worded [2]** 27/17
27/18

**words [3]** 10/6 13/10
13/11
**worth [1]** 33/18
**written [1]** 25/10
**wrong [6]** 3/18 15/20
28/6 31/4 31/10 32/17
**wrongful [10]** 14/1
14/21 16/7 17/5 17/6
17/16 19/21 19/25
20/16 31/11

**Y**

**Your Honor [12]** 3/6
3/15 3/20 4/5 4/19
5/24 6/6 12/13 16/17
19/6 21/10 34/25

**Z**

**zero [1]** 24/7