**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333, Fax: (818) 347-4118

**LAW OFFICE OF JAMES S. TERRELL**
James S. Terrell, Esq. (SBN: 170409)
Email: jim@talktoterrell.com
15411 Anacapa Road
Victorville, CA 92392
Tel: (760) 951-5850, Fax: (760) 952-1085

**LAW OFFICE OF SHARON J. BRUNNER**
Sharon J. Brunner, Esq. (SBN: 229931)
Email: sharonjbrunner@yahoo.com
14393 Park Avenue, Suite 100
Victorville, CA 92392
Tel: (760) 243-9997, Fax: (760) 843-8155

**LAW OFFICE OF JOHN FATTAHI**
John Fattahi, Esq. (SBN 247625)
jfattahi@gmail.com
21250 Hawthorne Boulevard, Suite 70
Torrance, CA 90503
Tel: (424) 999-5579; Fax: (424) 675-2279

Attorneys for *Plaintiff* DOMINIC ARCHIBALD

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC ARCHIBALD AND NATHANAEL PICKET, I, AS INDIVIDUALS AND AS SUCCESSORS IN INTEREST TO NATHANAEL H. PICKETT II, DECEASED.<br><br>              Plaintiffs,<br><br>       vs.<br><br>COUNTY OF SAN BERNARDINO, KYLE HAYDEN WOODS, and DOES 2-10, INCLUSIVE,<br><br>              Defendants. | Case No. 5:16-cv-01128-AB-SPx<br><br>*Honorable André Birotte Jr.*<br><br>**DECLARATION OF DALE K. GALIPO IN SUPPORT OF PLAINTIFF ARCHIBALD'S MOTION FOR ATTORNEYS' FEES**<br><br>Date:<br>Time:<br>Crtrm: |

## DECLARATION OF DALE K. GALIPO

I, Dale K. Galipo, declare as follows:

1.     I am an attorney licensed to practice law in the United States District Court for the Central District of California and before all courts in the state of California. I am the lead trial counsel for Plaintiff Dominic Archibald in this instant action. I make this declaration in support of Plaintiff Dominic Archibald's Motion for Attorneys' Fees pursuant to 42 U.S.C. § 1988. I have personal knowledge of the matters stated herein and could and would testify competently thereto if called.

2.     I have maintained contemporaneous time records reflecting the work activity and time spent on this case. I have exercised billing judgment, and I have reduced or written off unproductive time or other time that would not ordinarily be charged to a fee-paying client. A copy of my time records for this case is attached hereto as **Exhibit "A"**.

3.     I graduated with a B.B.A. from the University of Michigan in Ann Arbor, Michigan in 1981. I attended law school at UCLA from 1981 to 1984.

4.     Since 1991, I have managed my own law firm originally specializing in major personal injury and wrongful death cases and criminal defense. Due to my experience in personal injury law and criminal defense law and my significant trial experience, prosecuting civil rights actions involving police misconduct causing serious injury or death was a natural transition for me. I have specialized in handling civil rights cases for over fifteen years.

5.     I have tried in excess of two hundred cases through verdict, including civil rights trials, medical malpractice cases, and a variety of serious personal injury cases. I have won the majority of my civil jury trials. I have had numerous seven figure verdicts, including verdicts for $8.1 million (*Guha v. Regents*); $6.3 million (*Schulman v. City of Burbank*); $4.5 million (*Cotton v. City of Eureka*); $4 million (*Mitchell v. County of Los Angeles*); $3.2 million (*P.C. v. City of Los Angeles*); $5.7 million (*Contreras v. City of Los Angeles*); $6.5 million (*R.S. v. City of Long*

-2-
DECLARATION OF DALE K. GALIPO

*Beach*); $2 million (*Nash v. City of San Bernardino*); $2 million (*Gutierrez v. County of Los Angeles*); $8.825 million (*Simplis v. Culver City Police Department*); $7.81 (*Howard v. County of Riverside*); $1 million (*Munoz v. County of Riverside*); $2.925 million (*Ramirez v. Oxnard Police Department*); $3 million (*Amaya v. County of Los Angeles*); $3.5 million (*Herrera v. City of Los Angeles*); $6.5 million (*Rose v. County of Sacramento*); and $5.5 million (*Mears v. City of Los Angeles*).

6.    I have also tried approximately fifty criminal felony cases including several homicide cases, attempted murder cases, robbery cases, and three strikes cases.  I have also won the majority of my criminal trials, including winning five homicide cases and numerous three-strike cases.  During one stretch from 1995 to 1996, I won six felony trials in a row including two homicides, two robberies, and two three-strikes cases.  For multiple victories in three strikes cases, the Daily Journal dubbed me "The Strikes Man."  In June of 2005, I won an acquittal in a jury trial in a homicide case (People v. Robert Vaughn).  My client, Robert Vaughn, the co-founder of Von Dutch Clothing Company, was accused of homicide.  Mr. Vaughn admitted to the shooting, but claimed it was done in self- defense.  The jury acquitted my client in approximately three hours.  I also prevailed in a homicide case in July of 2010 on the issue of self-defense.  I also prevailed in three criminal trials in the few last few years where an individual who was shot was charged with assault on a police officer or resisting by force.

7.    Some of my accomplishments in civil rights cases in recent years include:

- $1.5 million settlement in *Bosch v. County of Riverside* (police shooting), (May 2015)

- $1.5 million settlement in *Adams v. County of Los Angeles* (police shooting), (June 2015)

- $2.925 million jury verdict in *Ramirez v. Oxnard Police Department* (police shooting), (July 2015)

DECLARATION OF DALE K. GALIPO

- $2.4 million settlement in *Oliva v. County of Los Angeles* (police shooting), (July 2015)

- $5 million settlement in *Gomez v. Ryan Peppler* (police shooting), (August 2015)

- $2.5 million settlement in *Beierschmitt v. County of Los Angeles* (police shooting), (January 2016)

- $2.8 million settlement in *Martinez v. County of Los Angeles* (police shooting), (April 2016)

- $1.034 million verdict in *Beets v. County of Los Angeles* (police shooting), (May 2016)

- $3.7 million settlement in *R.S. v. City of Santa Ana* (police shooting), (July 2016)

- $2 million settlement in *Opsitnik v. City of Long Beach* (police shooting), (August 2016)

- $3.4 million settlement in *Garlic v. County of Kern* (police shooting), (September 2016)

- $2.5 million settlement in *Navas v. City of Los Angeles* (police shooting), (January 2017)

- $5.2 million settlement in *Cole v. City of Los Angeles* (unlawful incarceration), (January 2017)

- $1.1 million settlement in *Mueller v. County of Orange* (police shooting), (March 2017)

- $3.050 million jury verdict in *Amaya v. County of Los Angeles* (police shooting), (May 2017)

- $2 million settlement in *Powell v. City of Barstow* (police shooting), (May 2017)

- $1.9 million settlement in *L.R. v. County of Riverside* (police shooting), (May 2017)

- $2.5 million settlement in *Alcala v. West Valley Detention Center* (prisoner's rights), (July 2017)
- $3.5 million jury verdict in *Herrera v. City of Los Angeles* (police shooting), (October 2017)
- $6.5 million jury verdict in *Rose v. County of Sacramento* (police shooting), (October 2017)
- $5.5 million jury verdict in *Mears v. City of Los Angeles* (excessive force/taser-related death), (October 2017)
- $1.45 settlement in *Hernandez v. City of Los Angeles* (excessive force/asphyxiation), (February 2018)
- $2.7 settlement in *Hernandez v. County of Los Angeles* (police shooting), (February 2018)
- $1.5 million settlement in *Navarro v. County of Riverside* (police shooting), (March 2018)
- $33.5 million jury verdict in this case (March 2018)
- $2.65 million settlement in *Kaur v. City of Lodi* (police shooting), (June 2018)
- $2.75 million settlement in *Briones v. City of Ontario* (excessive force/asphyxiation), (June 2018)
- $4.6 million settlement in *C.M. v. County of Los Angeles* (police shooting), (August 2018)
- $3.75 million settlement in V.W. v. County of Los Angeles (police shooting), (October 2018)

8.   I specialize in police misconduct civil rights litigation and take on very difficult liability cases that require expertise in this area of law.  I have been asked to speak at seminars on several occasions on various topics of civil rights litigation before the federal bar association.  I am routinely called for consultation by various civil rights attorneys throughout the state with regard to my opinions and input on

-5-

5:16-cv-01128-AB-SPx

DECLARATION OF DALE K. GALIPO

civil rights cases.  In January of 2011, I was one of the speakers and a civil rights symposium sponsored by the University of La Verne Law School.  I regularly speak at the CAALA Convention in Las Vegas on civil rights.  I also spoke at UC Irvine's law school about civil rights and at a civil rights symposium in San Francisco in October of 2015.  In addition, I was awarded the Defender of the Constitution Award by the Inland Empire Chapter of the Federal Bar Association.  I was also nominated as a "Super Lawyer" for the years 2013-2018.

9.    I was nominated by the Consumer Attorneys Association of Los Angeles (CAALA) in 2018 for the Trial Lawyer of the Year Award. I finished second in a run-off with another accomplished trial attorney. I recently sponsored the Martin Luther King Jr. Civil Rights Moot Court Competition among fourteen law schools nationally. The Moot Court Competition was patterned after one of my civil rights police shooting cases. The top student advocacy award was given out in my name. I spend time giving back to young lawyers and law students. My law firm has an internship program for law students at Pepperdine School of Law and UCLA School of Law. I recently spoke to law students at UCLA School of Law regarding civil rights cases.

10.    My associate Tanya Sukhija-Cohen took over the day-to-day management of this case in October 2016. Ms. Sukhija-Cohen graduated from UCLA School of Law in 2013 and since law school has gained substantial experience working in civil rights. Ms. Sukhija-Cohen worked as a Law Clerk Schonbrun Seplow Harris and Hoffman LLP in Los Angeles while in law school where she assisted with litigation in civil rights and human rights cases. Ms. Sukhija-Cohen worked for me from August 2016 to December 2017 and has since been serving as a Judicial Law Clerk for a district court judge in the Southern District of Texas. Based on Ms. Sukhija-Cohen's experience and exceptional work in civil rights litigation, I believe it would be appropriate to compensate Ms. Sukhija-Cohen's work at $450 per hour.

11.     My associate Hang D. Le took over the day-to-day management of this case in December 2017 after Ms. Sukhija-Cohen's departure. Ms. Le graduated from USC Gould School of Law in 2013 and started working for me in May 2014. Since Ms. Le began working for me, she has worked almost exclusively on 42 U.S.C. § 1983 civil rights cases involving police excessive force and has been responsible for approximately ten to fifteen federal civil rights cases. Ms. Le is currently responsible for the day-to-day management of approximately fifteen federal civil rights cases. Based on Ms. Le's experience and promising work in civil rights litigation, I believe it would be appropriate to compensate Ms. Le's work at $450 per hour.

12.     My associate Marcel F. Sincich assisted in the management of this case since March of 2017. Mr. Sincich started interning for me during the summer of 2016 and continued to intern for me through the spring of 2017. Mr. Sincich graduated from Pepperdine University School of Law in May 2017. After graduation, Mr. Sincich began working for me as a full time associate and has worked almost exclusively on 42 U.S.C. § 1983 civil rights cases involving police excessive force. Mr. Sincich is currently responsible for the day-to-day management of four federal civil rights cases, assists in the management of over fifteen additional cases and assists in managing the firm's case intake. Based on Mr. Sincich's experience and promising work in civil rights litigation, I believe it would be appropriate to compensate Mr. Sincich's work at $350 per hour.

13.     In 2015, I was awarded $900 per hour by the Honorable Michael W. Fitzgerald. Prior to 2015, I had been awarded $800 per hour by four different courts, three federal judges and one state judge. Since 2015, I have prevailed in approximately eighteen trials and believe I have elevated my status and accomplishments as a civil rights lawyer. I also have approximately twelve published opinions.

5:16-cv-01128-AB-SPx

DECLARATION OF DALE K. GALIPO

14.     I believe in the last eight years, I have gone to trial and won more police excessive force cases than any lawyer in the country.

15.     Given the above, and based on the difficulty of this case and the skill, experience and ability necessary to prevail on this case, I believe an hourly attorney fee rate for my services under the circumstances should be $1,100 per hour.  I am respectfully requesting this hourly fee on the basis of my extensive trial experience, extensive experience in civil rights cases, and based on my accomplishments in this case and other civil rights cases.

16.     I have worked diligently on this case since September of 2016, when I first agreed to take over the case.  The extensive number of hours I worked on this case precluded me from accepting other cases and employment opportunities.

17.     This case involved a number of complex issues. This case was vigorously defended by the County of San Bernardino and defendant Deputy Kyle Woods.  From the outset, defendants contended that the Deputy Woods had reasonable suspicion that decedent was engaged in criminal activity and that Deputy Woods reasonably believed decedent posed a threat of death or serious bodily harm when he was shot twice in the chest point blank. Furthermore, Defendants did not make any meaningful settlement offer prior to going to trial.

18.     I am requesting $1,100 per hour in this case based on the difficulty this case presented and also on my accomplishments as a civil rights attorney and trial lawyer. Given that I have had my own law firm for 27 years, and have tried over 200 cases, I believe I have more trial experience and expertise in trial than most law firm partners in Los Angeles.

19.     Attached as **Exhibits "B", "C", "D"**, and **"E"** are true and correct copies of past orders awarding me $900 and $800 per hour under 42 U.S.C. § 1988 in civil rights cases that I successfully litigated on behalf of Plaintiffs.

//

//

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this was executed this 15th day of November 2018 at Woodland Hills, California.


_./s/ Dale K. Galipo_

Dale K. Galipo

DECLARATION OF DALE K. GALIPO

# Exhibit A

## Archibald v. County of San Bernardino
Case No.: 5:16-cv-01128 –AB-SPx
ATTORNEY:  DALE K. GALIPO

| DATE | TASK | HOURS/TIME |
|---|---|---|
| 09/10/16 | Review Case Materials | 1.2 |
| 09/17/16 | Review Case Materials | 1.8 |
| 09/18/16 | Meeting with client (Including Travel)-Review Case Materials | 5.5 |
| 09/24/16 | Review Case Materials | 1.3 |
| 09/25/16 | Review Case Materials | 1.7 |
| 10/20/16 | Discuss Case with Tanya | 0.2 |
| 10/24/16 | Discuss Case with Tanya | 0.1 |
| 11/07/16 | Review Complaint | 1.0 |
| 11/07/16 | Review Answer to Complaint | 0.5 |
| 11/07/16 | Review Rule 26 Report | 0.5 |
| 11/17/16 | Review Amended Joint Rule 26 Report | 0.5 |
| 11/18/16 | Review Order re Jury Trial | 0.3 |
| 12/10/16 | Review Discovery Materials | 4.2 |
| 12/17/16 | Review Discovery Materials | 3.8 |
| 12/18/16 | Review Investigation Materials | 4.0 |
| 12/19/16 | Review Investigation Materials | 3.0 |
| 12/20/16 | Review Statements | 3.2 |
| 12/23/16 | Review Statements | 3.8 |
| 12/26/16 | Review Discovery Materials | 2.5 |
| 12/27/16 | Review Exhibits (Photos – Audio – Medical Records)-Discussion with Tanya | 2.5 |
| 12/29/16 | Review Discovery Materials-Discussion with Tanya | 2.0 |
| 01/09/17 | Discuss FAC with Tanya | 0.5 |
| 01/14/17 | Prepare for Depositions (Woods – Kelsey) (Review Statements-Audio-Video) | 1.8 |
| 01/15/17 | Prepare for Depositions (Woods – Kelsey) (Review Statements-Audio-Video) | 2.2 |
| 01/19/17 | Discuss case with Tanya | 0.7 |
| 01/21/17 | Prepare for Depositions (Woods – Kelsey) (Review Statements-Audio-Video) | 2.9 |
| 01/22/17 | Prepare for Depositions (Woods – Kelsey) (Review Statements-Audio-Video) | 1.1 |
| 02/04/17 | Review Discovery Materials | 2.5 |
| 02/06/17 | Review Discovery Materials | 2.0 |
| 02/05/17 | Prepare for Depositions (Woods – Kelsey) | 3.0 |
| 02/07/17 | Review Stipulation for Protective Order | 0.2 |
| 02/11/17 | Review Photos | 0.5 |
| 02/11/17 | Review Video | 1.5 |
| 02/11/17 | Review Audio | 1.0 |
| 02/11/17 | Review Investigation Reports | 3.5 |
| 02/15/17 | Discuss case with Tanya | 0.4 |
| 02/17/17 | Review Application to file Amended Complaint | 0.2 |

1

## **Archibald v. County of San Bernardino**
Case No.: 5:16-cv-01128 –AB-SPx
ATTORNEY:  DALE K. GALIPO

| DATE | TASK | HOURS/TIME |
|---|---|---|
| 02/18/17 | Review Statements | 2.5 |
| 02/18/17 | Review Discovery Materials | 2.0 |
| 02/19/17 | Review Discovery Materials | 3.3 |
| 02/21/17 | Review Opposition to Ex-Parte Motion to Amend Complaint | 0.4 |
| 02/24/17 | Preparation for Woods Deposition – Review Statements | 3.7 |
| 02/25/17 | Preparation for Woods Deposition – Reports – Audio- Video | 4.0 |
| 02/26/17 | Prepare for Woods Deposition – Review Statements | 3.5 |
| 02/27/17 | Prepare for Kelsey Deposition – Reports – Audio – Video- Discussion with Tanya | 2.5 |
| 02/27/17 | Review Stipulation re First Amended Complaint | 0.2 |
| 02/28/17 | Prepare for Woods Deposition-Discussion with Tanya | 6.5 |
| 03/01/17 | Review Order re First Amended Complaint | 0.2 |
| 03/01/17 | Woods Deposition (including travel time, preparation and meeting) | 6.0 |
| 03/01/17 | Kelsey Deposition (including travel time)-client meeting | 4.0 |
| 03/02/17 | Review First Amended Complaint | 0.5 |
| 03/03/17 | Discuss case with Tanya | 0.1 |
| 03/04/17 | Consultation with Experts – Police Practices | 1.2 |
| 03/11/17 | Consultation with Experts – Medical/Police Practices | 1.8 |
| 03/15/17 | Discuss case with Tanya | 0.2 |
| 03/17/17 | Review Statements – Discovery Plan | 2.4 |
| 03/18/17 | Review Statements – Audio | 2.6 |
| 03/19/17 | Review Statements – Video | 2.0 |
| 04/01/17 | Review Motion to Dismiss Case | 1.0 |
| 04/08/17 | Review Woods Deposition | 2.5 |
| 04/09/17 | Review Woods Deposition | 2.0 |
| 04/13/17 | Telephonic with Attorneys | 0.6 |
| 04/15/17 | Review Woods Deposition | 1.7 |
| 04/16/17 | Review Opposition to Motion to Dismiss | 1.5 |
| 04/16/17 | Review Woods Deposition – Discovery Materials | 1.3 |
| 04/22/17 | Review Woods Deposition – Discovery Materials | 1.2 |
| 04/23/17 | Review Kelsey Deposition – Discovery Materials | 2.8 |
| 04/25/17 | Review Reply to Opposition to Motion to Dismiss | 0.5 |
| 04/29/17 | Review – Discovery Materials | 3.0 |
| 05/09/17 | Review Order re Motion to Dismiss | 0.2 |
| 05/13/17 | Discuss case with Tanya | 0.2 |
| 05/14/17 | Prepare for Kennedy Deposition | 3.0 |
| 06/01/17 | Review Answer to First Amended Complaint | 0.3 |
| 06/03/17 | Outline of Woods Statement | 2.5 |
| 06/04/17 | Outline of Woods Deposition | 3.5 |
| 06/05/17 | Review Kennedy Deposition | 2.1 |
| 06/06/17 | Review Medical Records | 1.9 |

## Archibald v. County of San Bernardino

Case No.: 5:16-cv-01128 –AB-SPx
ATTORNEY:  DALE K. GALIPO

| DATE | TASK | HOURS/TIME |
|---|---|---|
| 06/17/17 | Review Answer to Amended Complaint | 0.3 |
| 07/08/17 | Outline of Kelsey Deposition | 3.2 |
| 07/09/17 | Outline of Kelsey Statement | 1.8 |
| 07/15/17 | Outline of Kennedy Deposition | 1.5 |
| 07/22/17 | Review Photos – Video – Audio Recordings | 2.5 |
| 08/11/17 | Discuss case with Tanya | 0.3 |
| 08/12/17 | Review Video-Audio | 1.4 |
| 08/14/17 | Review Video-Audio | 1.6 |
| 08/20/17 | Review Discovery – Statements – Depos – Reports | 3.2 |
| 08/26/17 | Review Discovery – Statements – Depos – Reports | 2.8 |
| 08/27/17 | Review Discovery – Statements – Depos – Reports | 4.0 |
| 09/06/17 | Discuss case with Tanya | 0.1 |
| 09/09/17 | Review Discovery – Statements – Depos – Reports | 3.1 |
| 09/10/17 | Review Discovery – Statements – Depos – Reports | 2.9 |
| 09/16/17 | Prepare for Plaintiff's Depositions | 2.8 |
| 09/23/17 | Prepare for Plaintiff's Depositions | 3.2 |
| 09/29/17 | Prepare for McCormick Deposition | 1.7 |
| 09/30/17 | Prepare for Pickett Deposition | 1.3 |
| 09/30/17 | Prepare for Archibald Deposition | 3.0 |
| 10/03/17 | Pickett Deposition – Discussion with counsel | 0.8 |
| 10/05/17 | McCormick Deposition – Discussion with counsel | 1.2 |
| 10/10/17 | Discuss case with Tanya | 0.3 |
| 10/17/17 | Archibald Deposition – Preparation-Discussion with client | 2.8 |
| 11/12/17 | Review Statements – Depos – Reports | 3.9 |
| 11/16/17 | Discuss case with Tanya | 0.5 |
| 11/17/17 | Discussion with client re Pickett Depo | 1.0 |
| 11/18/17 | Review Statements – Depos – Reports – MSJ | 4.1 |
| 11/19/17 | Review Statements – Depos – Reports – MSJ | 4.3 |
| 11/26/17 | Review Statements – Depos – Reports – MSJ | 3.7 |
| 11/27/17 | Consultation with Experts re Reports-Case Materials | 2.0 |
| 11/28/17 | Consultation with Experts re Reports-Case Materials | 1.5 |
| 11/29/17 | Consultation with Experts re Reports-Case Materials | 2.5 |
| 11/29/17 | Discuss case with Tanya | 0.6 |
| 11/30/17 | Discuss case with Tanya | 0.4 |
| 12/01/17 | Review Expert Reports | 2.1 |
| 12/02/17 | Review Expert Reports | 3.9 |
| 12/03/17 | Review Expert Reports | 3.0 |
| 12/04/17 | Review MSJ Motion – Plaintiff | 2.7 |
| 12/05/17 | Review MSJ Motion – Plaintiff | 3.3 |
| 12/06/17 | Review MSJ Motion – Plaintiff | 2.4 |
| 12/07/17 | Review MSJ Motion – Plaintiff -Discussion with Tanya | 3.6 |
| 12/08/17 | Trial Preparation * (Outline Statements) | 5.5 |

**Archibald v. County of San Bernardino**
Case No.: 5:16-cv-01128 –AB-SPx
ATTORNEY:  DALE K. GALIPO

| DATE | TASK | HOURS/TIME |
|---|---|---|
| 12/09/17 | Trial Preparation * (Outline Statements) | 5.5 |
| 12/09/17 | Review County's MSJ | 3.1 |
| 12/10/17 | Trial Preparation * (Outline Depositions) | 5.1 |
| 12/10/17 | Review County's MSJ | 2.9 |
| 12/11/17 | Review County's MSJ | 2.0 |
| 12/12/17 | Discussed MSJ with Hang | 1.4 |
| 12/15/17 | Trial Preparation * (Outline Depositions) | 4.2 |
| 12/16/17 | Trial Preparation * (Outline Depositions) | 4.8 |
| 12/17/17 | Trial Preparation * (Outline Depositions) | 4.0 |
| 12/18/17 | Review Opposition to MSJ - Plaintiff | 1.3 |
| 12/19/17 | Review Opposition to MSJ – Plaintiff-Discussion with Hang | 2.7 |
| 12/20/17 | Review Opposition to MSJ - Plaintiff | 1.0 |
| 12/21/17 | Review Opposition to MSJ - Plaintiff | 1.5 |
| 12/21/17 | Trial Preparation * (Outline Depositions) | 4.7 |
| 12/22/17 | Review Opposition to MSJ - Plaintiff | 1.5 |
| 12/22/17 | Trial Preparation * (Experts-Direct Exam) | 4.3 |
| 12/23/17 | Trial Preparation * (Experts-Direct Exam) | 4.7 |
| 12/23/17 | Review County's Opposition to MSJ | 2.3 |
| 12/24/17 | Trial Preparation * (Experts-Cross-Exam) | 3.3 |
| 12/26/17 | Trial Preparation * (Experts-Cross-Exam) | 4.9 |
| 12/26/17 | Review County's Opposition to MSJ | 2.7 |
| 12/27/17 | Trial Preparation * (Plaintiff-Direct Exam) | 5.5 |
| 12/27/17 | Review Reply to Opposition – Plaintiff | 2.0 |
| 12/28/17 | Review Reply to Opposition – Plaintiff | 1.2 |
| 12/28/17 | Trial Preparation * (Woods-Cross-Exam) | 4.5 |
| 12/29/17 | Review Reply to Opposition - Plaintiff | 1.8 |
| 12/29/17 | Trial Preparation * (Woods-Cross-Exam) | 4.0 |
| 12/30/17 | Trial Preparation * (Woods-Cross-Exam) | 3.0 |
| 12/30/17 | Review County | 1.6 |
| 12/31/17 | Trial Preparation* (Woods-Kelsey Cross-Exam) | 4.4 |
| 01/06/18 | Trial Preparation – Review MSJ Motions | 5.5 |
| 01/07/18 | Trial Preparation – Review MSJ Motions | 4.5 |
| 01/13/18 | Trial Preparation * (Expert Examination) | 3.5 |
| 01/14/18 | Trial Preparation * (Expert Examination) | 3.1 |
| 01/15/18 | Trial Preparation * (Expert Examination) | 3.9 |
| 01/19/18 | Trial Preparation – Review Order re MSJ | 3.8 |
| 01/19/18 | Review Plaintiff's Motions in Limine | 2.7 |
| 01/20/18 | Review Plaintiff's Motions in Limine | 1.9 |
| 01/20/18 | Trial Preparation* (Witness Examination) | 4.1 |
| 01/21/18 | Review Plaintiff's Motions in Limine | 3.2 |
| 01/21/18 | Trial Preparation* (Witness Examination) | 4.8 |
| 01/21/18 | Review Memorandum of Contentions of Law | 1.0 |

4

## Archibald v. County of San Bernardino

Case No.: 5:16-cv-01128 –AB-SPx
ATTORNEY:  DALE K. GALIPO

| DATE | TASK | HOURS/TIME |
|---|---|---|
| 01/22/18 | Review Witness List | 0.5 |
| 01/22/18 | Review Exhibit List | 1.1 |
| 01/26/18 | Review Defendants' Motions in Limine | 1.4 |
| 01/27/18 | Review Defendants' Motions in Limine | 1.8 |
| 01/28/18 | Review Defendants' Motions in Limine | 2.2 |
| 01/31/18 | Review Oppositions to Motions in Limine | 2.5 |
| 02/01/18 | Review Oppositions to Motions in Limine | 1.5 |
| 02/02/18 | Review Proposed Voir Dire | 0.9 |
| 02/02/18 | Review Proposed Verdict Form | 1.1 |
| 02/02/18 | Review Proposed Jury Instructions | 2.5 |
| 02/02/18 | Review Statement of the Case | 0.5 |
| 02/05/18 | Preparation for Clark Deposition | 2.7 |
| 02/06/18 | Preparation for Defoe Deposition | 3.5 |
| 02/07/18 | Preparation for Cohen Deposition | 2.3 |
| 02/07/18 | Preparation for Chapman Deposition | 3.7 |
| 02/08/18 | Preparation for Cohen Deposition | 1.3 |
| 02/09/18 | Chapman Deposition -Preparation | 3.5 |
| 02/09/18 | Cohen Deposition – Preparation | 1.5 |
| 02/08/18 | Preparation for Ward's Deposition | 3.4 |
| 02/09/18 | Ward's Deposition | 2.6 |
| 02/10/18 | Trial Preparation* (Opening-Closing) | 6.3 |
| 02/11/18 | Trial Preparation* (Opening-Closing) | 7.7 |
| 02/14/18 | Prepare for Pre-Trial Conference | 4.5 |
| 02/15/18 | Prepare for Pre-Trial Conference | 3.1 |
| 02/16/18 | Attend Pre-Trial Conference | 3.9 |
| 02/17/18 | Trial Preparation* (Opening Statement) | 3.5 |
| 02/18/18 | Trial Preparation* (Opening Statement) | 2.8 |
| 02/24/18 | Trial Preparation* (Cross Examinations) | 4.2 |
| 02/25/18 | Trial Preparation* (Cross Examinations) | 4.3 |
| 03/01/18 | Trial Preparation* (Cross Examinations) | 4.7 |
| 03/02/18 | Trial Preparation* | 14.3 |
| 03/03/18 | Trial Preparation* | 15.7 |
| 03/04/18 | Trial Preparation* | 16.7 |
| 03/05/18 | Trial Preparation* | 16.3 |
| 03/06/18 | Trial Preparation – Trial | 16.5 |
| 03/07/18 | Trial Preparation – Trial | 15.5 |
| 03/08/18 | Trial Preparation – Trial | 15.9 |
| 03/09/18 | Trial Preparation – Trial | 14.6 |
| 03/10/18 | Trial Preparation* | 15.3 |
| 03/11/18 | Trial Preparation* | 15.7 |
| 03/12/18 | Trial Preparation – Trial | 14.2 |
| 03/13/18 | Trial Preparation – Trial | 13.8 |

# Archibald v. County of San Bernardino
Case No.: 5:16-cv-01128 –AB-SPx
ATTORNEY:  DALE K. GALIPO

| DATE | TASK | HOURS/TIME |
|---|---|---|
| 03/14/18 | Trial Preparation – Trial | 12.1 |
| 03/15/18 | Post-Trial Meetings | 2.5 |
| 04/03/18 | Review Proposed Judgment | 0.5 |
| 04/04/18 | Discussed case with Hang | 0.7 |
| 04/19/18 | Review Court's Order re Proposed Judgement | 0.5 |
| 04/26/18 | Discussed case with Hang | 0.5 |
| 04/30/18 | Review Response to Court's Order | 1.4 |
| 04/30/18 | Review Defendants' Response | 1.1 |
| 05/03/18 | Discussed case with Hang | 0.3 |
| 05/10/18 | Review Judgement Entered by Court | 0.5 |
| 06/06/18 | Research re Post-Trial Motions | 0.9 |
| 06/08/18 | Research re Post-Trial Motions | 1.1 |
| 06/16/18 | Review of Defendants' Post-Trial Motions | 4.5 |
| 06/17/18 | Review of Defendants' Post-Trial Motions | 3.5 |
| 06/23/18 | Review of Defendants' Post-Trial Motions | 3.9 |
| 06/24/18 | Research re Post-Trial Motions | 2.7 |
| 06/30/18 | Research re Post-Trial Motions | 3.3 |
| 07/01/18 | Review of Trial Transcripts | 4.7 |
| 07/07/18 | Review of Trial Transcripts | 5.3 |
| 07/10/18 | Discussed Post-Trial Motions with Hang | 1.0 |
| 07/14/18 | Review of Trial Transcripts | 5.4 |
| 07/15/18 | Work on Plaintiffs' Opposition to Post-Trial Motions | 5.2 |
| 07/21/18 | Work on Plaintiffs' Opposition to Post-Trial Motions | 4.8 |
| 07/22/18 | Work on Plaintiff's Opposition to Post-Trial Motions | 3.8 |
| 07/23/18 | Review of Opposition to Post-Trial Motions | 4.2 |
| 07/25/18 | Review of Opposition to Post- Trial Motions | 3.5 |
| 07/26/18 | Discussed Post-Trial Motions with Hang | 1.0 |
| 09/01/18 | Review of Reply to Opposition to Post-Trial Motions | 4.5 |
| 09/02/18 | Review of Reply to Opposition to Post-Trial Motions | 3.5 |
| 09/07/18 | Review Trial Transcripts | 3.7 |
| 09/08/18 | Review of Trial Transcripts | 3.8 |
| 09/09/18 | Preparation for Hearing on Post-Trial Motions | 4.8 |
| 09/10/18 | Preparation for Hearing on Post-Trial Motions | 5.2 |
| 09/12/18 | Preparation for Hearing on Post-Trial Motions | 6.2 |
| 09/13/18 | Preparation for Hearing on Post-Trial Motions | 6.4 |
| 09/18/18 | Hearing on Post-Trial Motions (includes prep & travel)(Meetings) | 5.5 |
| 11/1/18 to 11/15/18 | Attorney Fees – Motion | 4.7 |
| 11/1/18 to 11/14/18 | Settlement Discussion – Meetings | 3.5 |
| | **Total Hours:** | **784.4** |

6

## <u>Archibald v. County of San Bernardino</u>
Case No.: 5:16-cv-01128 –AB-SPx
ATTORNEY:  DALE K. GALIPO

**DATE          TASK                                                                HOURS/TIME**

**\*Trial preparation includes review of pleadings, written discovery, statements, investigation reports, medical records, photos, audio, video, depositions, expert reports, MSJ briefing and separate statements, pre-trial documents, including pre-trial conference order, exhibit list, witness list, motions in limine, jury instructions, verdict form, exhibits, client preparation, preparation for voir dire, opening statement, direct and cross examination, opening, closing and rebuttal arguments.**

# Exhibit B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL


**Case No.**  CV-13-01615-MWF (ANx)          **Date:  September 17, 2015**
Title:       Guillermo Ramirez, et al. -*v*- Oxnard Police Department, et al.


Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| | |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |
| | |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER RE MOTIONS FOR ATTORNEYS' FEES
[189] [192] [193]


This matter is before the Court on three Motions for Attorneys' Fees.  The Motion for Attorneys' Fees and Costs (the "Bamieh Motion"), filed for attorneys' fees incurred by Bamieh & Erickson, PLC ("B&E") as representatives of Plaintiffs Guillermo Ramirez and Teresa Ramirez (Docket No. 189); the Motion for Attorneys' Fees (the "Galipo Motion"), filed by Plaintiffs on July 24, 2015 for attorneys' fees for the Law Offices of Dale K. Galipo, (Docket No. 192) incurred as trial counsel for all Plaintiffs; and the Motion for Attorneys' Fees and Costs (the "Vogel Motion") for attorneys' fees for the Law Officers of Brian A. Vogel, PC ("Vogel Law") as counsel for Plaintiff R.R.  (Docket No. 193).  Defendants filed an Opposition to Plaintiffs' Motions for Fees and Costs (the "Opposition") addressing all three Motions on August 3, 2015.  (Docket No. 201).  Plaintiffs filed a Reply to Defendants' opposition to Motion for Attorneys' Fees (the Law Offices of Dale K Galipo) (the "Galipo Reply") and a Reply Brief in Further Support of Motion for Attorneys' Fees and Costs (the "Vogel Reply").  There was no reply filed to the Bamieh Motion.

The Court has reviewed and considered the papers on this Motion, and held a hearing on **August 24, 2015**.  For the reasons stated below, the Court in general **GRANTS** the Motions with the alterations as noted.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV-13-01615-MWF (ANx)**          **Date:  September 17, 2015**
Title:       Guillermo Ramirez, et al. -*v*- Oxnard Police Department, et al.

## I.     **BACKGROUND**

The Motions arise out of a jury verdict in favor of Plaintiffs after a jury trial on claims of civil rights violations by members of the Oxnard Police Department, which resulted in the death of Robert Ramirez.  (Docket Nos. 179, 188).

As reflected in the Jury Verdict and the Judgment after Trial, the jury found in favor of Ramirez on the first claim for excessive force against Defendant Steven Ramirez; in favor of Guillermo Ramirez, Teresa Ramirez, and R.R. on the third claim for interference with a family relationship in violation of the Fourteenth Amendment as to all Defendants; and for Ramirez on the fourth claim for negligence as to all Defendants.  The jury awarded Ramirez damages of $75,000, R.R. damages of $1,600,000, and Guillermo and Teresa Ramirez each $625,000.  (Docket Nos. 179, 188).  The jury found in favor of Defendants on the second claim for deliberate indifference to medical needs.

### A.     **The Representation of Counsel**

The case was taken to trial by Law Offices of Dale K. Galipo ("Galipo Law"), with Dale Galipo and Eric Valenzuela serving as trial counsel.  Galipo Law came onto the case very late, substituting in on the day of the Court's first Pretrial Conference on February 3, 2015.  Prior to February 2015, B&E and Vogel Law had represented the Plaintiffs.

#### 1.  **Vogel Motion Fees**

The Vogel Motion makes the following request:

| Attorney/Staff | Years of Experience | Hours worked (Merits) | Hours Worked (Motion) | Rate | Lodestar Total |
|---|---|---|---|---|---|
| Brian Vogel | 22 | 445.95 | 12.2 | $700 | $ 320,705 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-13-01615-MWF (ANx)**          **Date:  September 17, 2015**

Title:      Guillermo Ramirez, et al. -*v*- Oxnard Police Department, et al.

| | | | | | |
|---|---|---|---|---|---|
| Heather Quest | 17 | 463.35 | 18.25 | $500 | $ 235,800 |
| Steve Marshall | 2.5 | 63.6 | 3.4 | $300 | $ 20,100 |
| Paralegals | 22/11 | 102.1 | 4 | $200 | $ 21,220 |
| Total | | | | | $ 597,825 |

(Declaration of Brian Vogel, ¶¶ 3, 18, 22–25 (Docket No. 194); Declaration of Heather Quest, ¶¶ 10–11 (Docket No. 195); Declaration of Steve Marshall ¶¶ 7–8, Ex. 1 (Docket No. 196)).

The billing from Vogel Law continues up to February 3, 2015, the date of the Pretrial Conference, at which point Galipo Law took over as primary counsel.

## 2.  Bamieh Motion Fees Request

| Attorney/Staff | Years of Experience | Hours worked (Merits) | Hours Worked (Motion) | Rate | Lodestar Total |
|---|---|---|---|---|---|
| Ron Bamieh | 23 | 109.2 | 3.8 | $700 | $ 118,650 – $ 123,900 |
| David Ring | 27 | 32.6 | 5.7 | $500 | $ 28,725 |
| Laura Cota | 8 | 11.4 | | $350 | $ 5,985 |
| Administrative Assistants | | 18.9 | 9.5 – 14.5 | $200 | $ 5,670 |
| Total | | | | | $ 159,030 – $ 164,280 |

(Bamieh Mot. at 6–7).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-01615-MWF (ANx)          Date:  September 17, 2015
Title:      Guillermo Ramirez, et al. -*v*- Oxnard Police Department, et al.

The billing is similarly limited to the period up to early February until Galipo Law took over representation.

### 3.  Galipo Motion Fees

The Galipo Motion requests the following fees;

| Attorney/Staff | Hours | Rate | Lodestar Total |
|---|---|---|---|
| Dale Galipo | 630.6 | $900 | $ 567,540 |
| Eric Valenzuela | 248.3 | $350 | $ 86,905 |
| Total | | | $ 654,445 |

(Galipo Mot. at 19–20).

### B.    Comparative Rates

In support of the Motions, Plaintiffs present the average law firm billing rates for partners and associates for a number of regions and the nation as obtained from the *Los Angeles Daily Journal*.

| Location | Position | 2012 | 2011 | Percent Increase |
|---|---|---|---|---|
| Los Angeles | Partner | $797 | $766 | 4.0 |
| | Associate | $550 | $516 | 6.6 |
| San Diego | Partner | $568 | $568 | 0 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV-13-01615-MWF (ANx)          **Date:** September 17, 2015
Title:          Guillermo Ramirez, et al. -v- Oxnard Police Department, et al.

|               | Associate | $394 | $378 | 4.2 |
| San Francisco | Partner   | $675 | $654 | 3.2 |
|               | Associate | $482 | $449 | 7.3 |
| National      | Partner   | $750 | $725 | 3.4 |
|               | Associate | $495 | $460 | 7.5 |

(Declaration of Dale Galipo, Ex. B (Docket No. 192-1)).

## II.  BASIS FOR ATTORNEYS' FEES

Plaintiffs request attorneys' fees, pursuant to 42 U.S.C. § 1988.  Under § 1988(b), "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs" in an action enforcing 42 U.S.C. § 1983.  42 U.S.C. § 1988(b).

"A plaintiff must be a 'prevailing party' to recover an attorney's fee under § 1988."  *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983).  Typically, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Id.* (internal quotation marks and citation omitted).  This jury found in favor of Plaintiffs on three claims, and awarded Plaintiffs considerable damages on these claims.  Therefore, Plaintiffs have succeeded on significant issues in this litigation and achieved substantial benefits.  Accordingly, Plaintiffs are the prevailing parties for purposes of § 1988 and Federal Rule of Civil Procedure 54(d).

Case 5:16-cv-01120-AB-SP   Document 226-1   Filed 11/15/18   Page 24 of 117   Page
ID #:9309
Case 2:13-cv-01615-MWF-AN   Document 249   Filed 09/17/15   Page 6 of 17   Page ID #:4562

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-13-01615-MWF (ANx)          Date:  September 17, 2015**
**Title:      Guillermo Ramirez, et al. -*v*- Oxnard Police Department, et al.**

## III.   CALCULATION OF ATTORNEYS' FEES

### A.      Legal Standard

"In the Ninth Circuit, the customary method of determining the permissible amount of attorneys' fees under § 1988 is the 'lodestar' method." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006).  The lodestar "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 406 (9th Cir. 1990).

"The *Kerr* factors are used in this preliminary determination of the lodestar." *Id.* In *Kerr*, the Ninth Circuit adopted the following guidelines:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

"After the lodestar is determined, the court may make adjustments, depending on the circumstances of the case." *United Steelworkers*, 896 F.2d at 406 (citing *Blum v. Stenson*, 465 U.S. 886, 897, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).  "Factors subsumed in the original determination of reasonable hours and rates, however, should not be used to adjust the lodestar figure." *Id.*  "[T]here is a strong presumption" that the lodestar calculation "is a reasonable fee." *Id.*

---

Case 2:13-cv-01615-MWF-AN Document 219 Filed 09/17/15 Page 7 of 17 Page ID #:4563

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-01615-MWF (ANx)          Date:  September 17, 2015
Title:      Guillermo Ramirez, et al. -*v*- Oxnard Police Department, et al.

### B.      Discussion

Defendants present five arguments as to the attorneys' fees requested in the three motions. ***First***, the Vogel Motion is mistaken in its request for fees for opposing Defendants' summary judgment motion because that success did not make R.R. a prevailing party. ***Second***, even if fees are to be awarded it was unreasonable to expend 166 attorney hours opposing summary judgment. ***Third***, the Vogel Firm and B&E's billing rates are too high especially in light of counsel's refusal to take the case to trial. ***Fourth***, the lodestar amount should be reduced because of the partial success achieved by all attorneys. ***Fifth***, a multiplier is inappropriate in a straightforward case such as this.

"Fee awards pursuant to § 1988 must be reasonable, both as to the number of hours spent in advancing the successful claim(s) and the billing rate per hour." *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994) (holding district court did not abuse its discretion in reducing fee award by 50 percent given the recovery of only $25,000). As indicated above, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433.

### 1. R.R. is a Prevailing Party for the Purpose of Obtaining Fees for all Components of the Litigation

Defendants argue that the Vogel Motion's request for fees incurred in opposing Defendants' motion for summary judgment is impermissible because the motion did not alter the parties' legal relationship and so does not qualify Vogel Law's client, R.R., as a prevailing party. (Opp. at 2).

In support of this position, Defendants cite a number of cases holding that to be a prevailing party, a party must receive some form of relief from a court. (Opp. at 3). Success in defeating summary judgment did not provide any relief and so R.R. may not be a prevailing party entitled to attorneys' fees for opposing summary judgment.

_____

Case 5:16-cv-01120-WB-SR   Document 226-1   Filed 11/15/18   Page 26 of 117   Page ID #:9311

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV-13-01615-MWF (ANx)          Date:  September 17, 2015
Title:          Guillermo Ramirez, et al. -v- Oxnard Police Department, et al.

Vogel Law argues that this ignores the fact that R.R. achieved substantial success at trial, and is undeniably a prevailing party as the beneficiary of a substantial jury verdict.  Even if counsel did not act as trial counsel, they nonetheless are responsible for getting the case to trial, and for the bulk of the work leading up to early February when Galipo Law took over, without which success would not have been possible.

R.R. is entitled to attorneys' fees to cover all legal services, including those incurred in opposing summary judgment because it is R.R. as the prevailing party, not his attorneys, as prevailing attorneys, who is entitled to fees.  Defendants' case law is readily distinguishable because it addresses instances in which the *party* did not prevail.

Defendants rest their argument primarily on *Citizens for Better Forestry v. U.S. Department of Agriculture*, 567 F.3d 1128 (9th Cir. 2009).  In *Citizens* the Ninth Circuit held that plaintiffs were not prevailing parties and so not entitled to attorneys' fees under a similar statute.  Plaintiffs had sued the Department of Agriculture ("USDA") and United States Forest Service seeking injunctive relief to prevent the implementation of a new national forest management policy based on allegations that the defendants had failed to comply with certain statutory procedural requirements.  The USDA withdrew the policy and issued a new one.  Plaintiffs dismissed the case and moved for attorneys' fees.  The Ninth Circuit denied their request because despite achieving their goal, it concluded that to be a prevailing party, "a party must receive 'some relief' from a court."  *Id*. at 1131.

This is not an analogous situation.  R.R. undoubtedly obtained relief from the court in the form of a judgment for $1,675,000 against Defendants.  Defendants' position is that because Vogel Law's requested billing stops once Galipo Law took over, they are not entitled to fees because they did not achieve success as defined by *Citizens*.  However, as Defendants' note in the Opposition, "the term 'prevailing party," as used in fee shifting statutes, is a legal term of art which refers to one who has been awarded some relief by the Court."  (Opp. at 4).  Defendants present no authority that in determining a prevailing the Court must look to counsel's involvement, and it

_____

CIVIL MINUTES—GENERAL                                          8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-01615-MWF (ANx)          Date:  September 17, 2015
Title:       Guillermo Ramirez, et al. -v- Oxnard Police Department, et al.

declines to do so here.  Section 1988 awards attorneys' fees to prevailing parties, not prevailing attorneys.

### 2.  Hours Expended by Vogel Law Counsel

Defendants also take issue with Vogel Law's request for 166 hours expended on opposing their summary judgment motion.  They argue that the opposition produced by Vogel Law totaled 52 pages, counting the point and authorities in opposition (22 pages), the statement of facts and conclusions of law (24 pages), and counsel's declaration (6 pages).  Defendants maintain that this is excessive and providing for one hour per page, or only one full work week, for a total of 50 hours is more appropriate.

In support of this contention Defendants note that counsel's task was greatly simplified by the fact that the Ventura County Coroner's report supported Plaintiffs' position and that this was a "garden variety excessive force case."  (Opp. at 8–9).

The request for 166 hours is comprised of 96.6 hours from Vogel, 42.5 hours from Quest, and 27.3 hours from Marshall.  The total amount reflects a full month of billing to oppose summary judgment.  Having considered the parties' briefing on the motion for summary judgment, and the material presented on the Vogel Motion, the Court determines that a reasonable amount of time spent opposing summary judgment is 60 hours.  This is approximately 36 percent of the hours requested.  The Court reduces the amount spent by each attorney to 36 percent of the amount requested.  Therefore the appropriate number of hours for each attorney is, 35 for Vogel, 15 for Quest, and 10 for Marshall.

The Court has added 30 hours to the figures discussed at the hearing, to reflect use of pre-trial work at trial.

### 3.  Hourly Rates for Vogel Motion and Bamieh Motion

Defendants' third argument is that the hourly rates requested in the Vogel Motion and the Bamieh Motion are too high when compared to fees awarded in other cases, to those requested in the Galipo Motion, and in light of their refusal to take this

_____

Case 5:16-cv-01129-AB-SP   Document 226-1   Filed 1/15/18   Page 28 of 117   Page
Case 2:13-cv-01615-MWF-AN   Document 213   Filed 09/17/15   Page 10 of 27   Page ID #:3313
ID #:4566

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-01615-MWF (ANx)          Date:  September 17, 2015
Title:      Guillermo Ramirez, et al. -v- Oxnard Police Department, et al.

case to trial.  Accordingly, Defendants argue, their billing rates should be reduced by half.

Defendants argue that the Court should follow *Ingram v. Oroudjian*, 647 F.3d 925 (9th Cir. 2011), a case involving attorneys' fees awarded after successful fair housing litigation.  In that case, the Ninth Circuit upheld the district court's ruling that $325 to $375 an hour was an appropriate hourly fee in the Los Angeles legal market.

Defendants further argue that $350 an hour for Bamieh and Vogel is an appropriate given that neither attorney was willing to take the case to trial, and this is the amount requested in the Galipo Motion for Valenzuela.

The Vogel Firm argues that the case was a difficult one, with complicated issues of causation resulting from Ramirez's drug ingestion, and counsel took on substantial risk in litigating the case.  Therefore, in line with the average billing rates as indicated in the *Daily Journal* and for similarly situated lawyers, the $700 an hour for Brian Vogel is appropriate.  This is also true given the level of his experience and many accolades.  (Vogel Mot. at 17; Vogel Reply at 14–15; Vogel Decl. ¶¶ 4–12; Declaration of Barrett Litt ¶¶ 26–33, (Docket No. 200)).

The Court appreciates the challenges the case presented.  It has also considered the evidence presented to support the claimed rates.  However, the challenges in the case arose primarily in trying the case to a jury, and overcoming doubts as to causation, as well as the potentially unsympathetic circumstances surrounding the incident that gave rise to this litigation.  Neither Bamieh nor Vogel were involved in preparation for trial, and new counsel made substantial changes to the pre-trial material to ready the case for trial.  Absent this crucial participation on the part of counsel from Vogel Law and B&E, the Court cannot conclude that the rates being requested are reasonable.

Therefore, based on the Court's knowledge of the legal market in Los Angeles, and the nature of the involvement of Vogel Law and B&E in litigating the case, the Court determines that following hourly rates are reasonable and serve the purposes of § 1988:

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-13-01615-MWF (ANx)          Date:  September 17, 2015**
Title:      Guillermo Ramirez, et al. -*v*- Oxnard Police Department, et al.

| Attorney | Hourly Rate |
| --- | --- |
| Brian Vogel | $450 |
| Heather Quest | $300 |
| Steve Marshall | $200 |
| Paralegals | $100 |
| Ron Bamieh | $450 |
| David Ring | $300 |
| Laura Cota | $200 |
| Administrative Assistants | $100 |

Defendants do no contest the hourly rates proposed by either Galipo or Valenzuela.

### 4.  Discount for Degree of Success

In response to all three Motions, Defendants argue that the total lodestar figure should be reduced to reflect the partial success Plaintiffs achieved at trial.  Defendants argue that there are a number of ways to view the verdict, but all indicate that the numbers of hours worked should be cut in half.

First, Defendants argue the case can be conceived of presenting two theories of liability: excessive force and failure to summon medical care.  (Opp. at 12).  Because Plaintiffs failed to prevail on their second claim, they failed on that theory.  Their success on the other claims was duplicative and so they effectively achieved success on only half the case.

---

Case 5:16-cv-01129-AB-SP   Document 226-1   Filed 1/15/18   Page 30 of 117   Page
Case 2:13-cv-01615-MWF-AN   Document 213   Filed 09/17/15   Page 12 of 37   Page ID #:3315
ID #:4568

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-01615-MWF (ANx)          Date:  September 17, 2015
Title:      Guillermo Ramirez, et al. -v- Oxnard Police Department, et al.

_____

Second, the Court could consider 28 possible findings of liability, based on multiple claims against multiple defendants.  The jury returned a verdict on 15 of those claims, which is just a little over half.

Third, the jury found Ramirez to be 48 percent responsible in assessing the negligence claim, which also suggests a reduction by about half.

Plaintiffs argue that the first two methods provide a false metric of success and that the third metric, based on a state law claim that does not give rise to an award of attorneys' is irrelevant.  Plaintiffs note the considerable difficulty the case presented given the complications in proving causation because of Ramirez's substantial drug use, as well as the likely inherent bias of any jury in favor of the police and against illegal drug users.  This resulted in four medical experts testifying, three of whom testified on behalf of Defendants.  The case was therefore considerably more complicated than a normal excessive force case where the cause of injuries, typically by firearm, Taser or physical beating, is straightforward.

They also argue that Defendants' claim that this was a straightforward and easy case is belied by the fact that Defendants made no settlement offer at any point.  Therefore, Defendants' attempts to characterize the case as easy, is belied by the fact that until the verdict was handed down Defendants were confident that there was little risk that they would lose.  However, the jury awarded a total of $2,925,000 in damages on what amounted legally to four counts – excessive force, battery, deliberate interference, and negligence.

Further, Defendants' attempt to use the comparative negligence finding to reduce the award is inappropriate.  An award for attorneys' fees under § 1988 is for a constitutional violation and the Constitution and federal law does not consider comparative negligence when evaluating whether a violation occurred.  Therefore, Defendants' attempts to use substantive California law to reduce an award of attorneys' fees under federal law is inappropriate.

The Ninth Circuit has held that "success in a lawsuit is not always measured by the formal relief obtained." *Clark*, 803 F.2d at 990 (citing *Maher v. Gagne*, 448 U.S.

_____

Case 5:16-cv-01128-AB-SP   Document 226-1   Filed 11/15/18   Page 31 of 117   Page
Case 2:13-cv-01615-MWF-AN   Document 213   Filed 09/17/15   Page 13 of 17   Page ID #:3316
ID #:4569

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-01615-MWF (ANx)          Date:  September 17, 2015
Title:       Guillermo Ramirez, et al. -v- Oxnard Police Department, et al.

122, 129 (1980)).  In the present case, however, it is clear that counsel obtained substantial success.  The Court is not persuaded that a jury award of almost $3 million is not considerable success, especially where success on further counts would not have amounted to further damages because such an award would have been duplicative.

Accordingly, the Court will not reduce the attorneys' fees award based on the contention that Plaintiffs achieved only partial success.

### 5.  Multiplier

Defendants' fifth argument is that a multiplier of the lodestar calculation is not warranted in the present case.  The Vogel Motion and the Bamieh Motion both request a multiplier of 1.5 because of the difficulty of the case and the financial risk counsel took by litigating the case.  Defendants argue that Plaintiffs' request is based on outdated case law, the continued validity of which is suspect given intervening Supreme Court precedent.  (Opp. at 14).

In *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542 (2010) Supreme Court addressed use of enhancement to a lodestar amount and laid out the six factors to be considered in deciding reasonable attorneys' fees under federal fee shifting statutes such as § 1988.  *First*, a reasonable fee is one that induces a capable attorney to take representation of a meritorious case.  *Second*, the lodestar method is presumptively sufficient. *Third*, a multiplier has never been upheld by the Court for performance, but "may be awarded in 'rare' and 'exceptional' circumstances." *Id.* at 552.  *Fourth*, "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," and enhancement may not consider something contained within the lodestar calculation.  *Id.* at 553.  *Fifth*, burden of proving an enhancement is borne by the fee applicant.  *Id*.  *Sixth*, this burden is met only with the production of "specific evidence." *Id.*

Plaintiffs rely on *Clark v. City of Los Angeles*, 803 F2d 987 (9th Cir. 1986) in which the district court gave a multiplier of 1.5.  The district court did so because of the continent nature of the fee arrangement counsel had with plaintiffs and the risk and delay in payment "inherent in these fee arrangements."  The Ninth Circuit upheld the

_____

Case 5:16-cv-01129-AB-SP   Document 226-1   Filed 1/15/18   Page 32 of 117   Page
ID #:3317
Case 2:13-cv-01615-MWF-AN   Document 213   Filed 09/17/15   Page 14 of 37   Page ID #:4570

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-01615-MWF (ANx)          Date:  September 17, 2015
Title:       Guillermo Ramirez, et al. -v- Oxnard Police Department, et al.

district court's decision as to the multiplier, explaining that "a contingent-fee arrangement may justify an upward fee adjustment when the record shows that an adjustment is necessary to award counsel the 'reasonable' fee to which he is entitled under section 1988." *Id.* at 991 (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

The Ninth Circuit upheld the multiplier in substantial part because the district court had carefully analyzed the record and applied the factors articulated by *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975).  However, the Supreme Court held in *City of Burlington v. Dague*, 505 U.S. 557 (1992) that in considering a fee award under the Solid Waste Disposal Act and Clean Water, a court may not apply a multiplier because counsel took the case on a contingency basis.  The Ninth Circuit has recognized that this ruling bars using the contingent nature of representation as a basis for enhancing a lodestar figure.  *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992) opinion vacated in part on denial of reh'g, 984 F.2d 345 (9th Cir. 1993).  The *Davis* panel explained that "*Dague* represents an outright rejection of contingency as a factor relevant to the establishment of a reasonable fee; it would seem to be immaterial whether the consideration of contingency occurs in deciding to apply a multiplier to the lodestar fee or in initially calculating the lodestar." *Id.* at 1549.

For their part, Defendants contend that *Perdue* stands for the proposition that multipliers are "virtually preclude[ed]." (Opp. at 15).  As is clear from the factors laid out from *Perdue* above, this is not the case, although the bar is high, and Plaintiffs do not get over it.

Having addressed summary judgment, and presided over the trial, the Court is not persuaded that this case was a "garden variety" police excessive force case.  As noted above, the case involved complicated causation issues as a result of Ramirez's massive consumption of methamphetamine, shown by the testimony of four medical experts.  However, these challenges were present primarily in persuading a jury at trial, and the counsel who bore, and ultimately carried that burden, did not request a multiplier.  Plaintiffs have not presented specific evidence to indicate that this case involved the "rare" and "exceptional" circumstances that warrant a multiplier.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-01615-MWF (ANx)          Date:  September 17, 2015
Title:       Guillermo Ramirez, et al. -*v*- Oxnard Police Department, et al.

Accordingly, the Court will not give a multiplier. The lodestar calculations outlined below constitute a reasonable attorneys fee.

### 6.  Fees for Filing Motion

The Vogel Motion and Bamieh Motion both request fees for filing the respective Motions.  Defendants do not challenge those hours.  However, on review it is apparent to the Court that they are not reasonable.

The Vogel Firm spent almost 40 hours working on the Vogel Motion.  B&E spent 18 to 23 hours depending on the calculations.  The Court determines that reasonable fees are for 10 hours for each motion at the rates for Brian Vogel and Ron Bamieh.

### 7.  Fees for Opposing Defendants' Motions For New Trial and Judgment as a Matter of Law

Dale Galipo and Eric Valenzuela request compensation for the respective 24 hours and 91.4 hours spent on opposing Defendants' Motions for a New Trial and Judgment as a Matter of Law.  (Docket Nos. 215, 215).  The Court determines that reasonable fees are for 10 hours at the rate of Dale Galipo and 20 hours at the rate of Eric Valenzuela for each of the two motions.

### C.    Lodestar Calculation

| Attorney | Hourly Rate | Compensable Hours | Total |
|---|---|---|---|
| Brian Vogel | $450 | 415 | $186,750 |
| Heather Quest | $300 | 435.85 | $130,755 |
| Steve Marshall | $200 | 46.3 | $9,260 |
| Vogel Law Paralegals | $100 | 102.1 | $10,210 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV-13-01615-MWF (ANx)          **Date:  September 17, 2015**

Title:       Guillermo Ramirez, et al. -*v*- Oxnard Police Department, et al.

| | | | |
|---|---|---|---|
| Motion Work | $450 | 10 | $4,500 |
| **Total** | | | **$341,475** |
| Ron Bamieh | $450 | 109.2 | $49,140 |
| David Ring | $300 | 32.6 | $9,780 |
| Laura Cota | $200 | 11.4 | $2,280 |
| Administrative Assistants | $100 | 18.9 | $1,890 |
| Motion Work | $450 | 10 | $4,500 |
| **Total** | | | **$67,590** |
| Dale Galipo | $900 | 650.6 | $585,540 |
| Eric Valenzuela | $350 | 288.3 | $100,905 |
| **Total** | | | **$686,445** |

**D.     Requests for Costs**

In addition to attorneys' fees, the Vogel Motion requests $4,379.48 in costs not covered by the amount requested in the Bill of Costs.  The Bamieh Motion requests $19,132.77 in costs not otherwise part of the request to tax costs submitted to the Clerk of the Court.

Under § 1988 a prevailing plaintiff may recover "as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n. 7 (9th Cir.1986), reh'g denied and opinion amended, 808 F.2d 1373 (9th Cir.1987)).  Defendants do not challenge these requests.

_____

Case 5:16-cv-01128-AB-SP   Document 226-1   Filed 1/15/18   Page 35 of 117   Page
ID #:3320
Case 2:13-cv-01615-MWF-AN   Document 223   Filed 09/17/15   Page 17 of 17   Page ID #:4573

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-13-01615-MWF (ANx)**          **Date:  September 17, 2015**
Title:      Guillermo Ramirez, et al. -*v*- Oxnard Police Department, et al.

## IV.    **CONCLUSION**

In accordance with the reasoning above, the Court **GRANTS** the Motions as follows:

| Motion | Attorneys' Fees | Costs | Total |
|---|---|---|---|
| Vogel Motion | $341, 475 | $4,379.48 | $345,854.48 |
| Bamieh Motion | $67,590 | $19,132.77 | $86,722.77 |
| Galipo Motion | $686,445 | | $686,445 |

IT IS SO ORDERED.

---

**CIVIL MINUTES—GENERAL**                                 17

**igrubbs@galipolaw.com**

| | |
|---|---|
| **From:** | cacd_ecfmail@cacd.uscourts.gov |
| **Sent:** | Thursday, September 17, 2015 4:19 PM |
| **To:** | ecfnef@cacd.uscourts.gov |
| **Subject:** | Activity in Case 2:13-cv-01615-MWF-AN Guillermo Ramirez et al v. Oxnard Police Department et al Order on Motion for Attorney Fees |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA

## Notice of Electronic Filing

The following transaction was entered on 9/17/2015 at 4:18 PM PDT and filed on 9/17/2015
**Case Name:**    Guillermo Ramirez et al v. Oxnard Police Department et al
**Case Number:**    2:13-cv-01615-MWF-AN
**Filer:**
**WARNING: CASE CLOSED on 07/09/2015**
**Document Number:** 219

**Docket Text:**
**MINUTES (IN CHAMBERS) ORDER Re Motions for Attorneys' Fees [189], [192], [193] by Judge Michael W. Fitzgerald: The Court GRANTS the Motions asfollows: Vogel Motion Attorneys' Fees in the amount of $341,475 Costs $4,379.48. Total $345,854.48; Bamieh Motion Attorneys' Fees in the amount of $67,590. Costs $19,132.77, Total $86,722.77; Galipo Motion Attorneys' Fees $686,445. (jp)**

**2:13-cv-01615-MWF-AN Notice has been electronically mailed to:**

Heather Anderson Quest    brian@bvogel.com

Eric Valenzuela    evalenzuela@galipolaw.com

Dirk DeGenna    ddegenna@wps-law.net, sobryant@wps-law.net, krobson@wps-law.net

Alan E Wisotsky    bkeighron@wps-law.net, awisotsky@wps-law.net

Brian Arnold Vogel    heather@bvogel.com, brian@bvogel.com, cindy@bvogel.com, liisa@bvogel.com

1

James N Procter    sobryant@wps-law.net

Laura Cota    lcota@boyceschaefferlaw.com

Dale K Galipo    igrubbs@galipolaw.com, tseabaugh@galipolaw.com, dgalipo@galipolaw.com, hlee@galipolaw.com, rvalentine@galipolaw.com, rvasquez@galipolaw.com, dkg.courtmail@yahoo.com, mpartow@galipolaw.com, dalekgalipo@yahoo.com, evalenzuela@galipolaw.com

**2:13-cv-01615-MWF-AN Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**

# Exhibit C

**PRIORITY SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES -- GENERAL

Case No.   EDCV 12-00700 VAP (OPx)                    Date:  August 27, 2014

Title:      WILLIAM F. HOWARD -v- COUNTY OF RIVERSIDE ET AL
===============================================================
PRESENT:       HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

            Marva Dillard                              None Present
            Courtroom Deputy                           Court Reporter

ATTORNEYS PRESENT FOR                ATTORNEYS PRESENT FOR
PLAINTIFFS:                          DEFENDANTS:


      None                                 None

PROCEEDINGS:       MINUTE ORDER GRANTING IN PART DEFENDANT'S
                   MOTION TO STAY JUDGMENT PENDING APPEAL AND
                   GRANTING MOTION FOR ATTORNEY'S FEES (IN
                   CHAMBERS)


      On July 3, 2014, following a jury trial, the Court entered a Judgment in favor of
Plaintiff William Howard and against Defendants Deputy Armando Munoz and the
County of Riverside.  Before the Court is Defendants' Motion to Stay Enforcement of
Judgment Pending Appeal (Doc. No. 174) and Plaintiff's Motion for Attorney's Fees
and Costs (Doc. No. 169).  These matters came before the Court for a hearing on
August 25, 2014.  After considering the papers filed in support of, and in opposition
to, the Motions, and the arguments advanced by counsel at the hearings, the Court
GRANTS the Motion for Attorney's Fees and GRANTS IN PART the Motion to Stay
Judgment Pending Appeal without Bond.


MINUTES FORM 11                               Initials of Deputy Clerk __md_____
CIVIL -- GEN                       Page 1

Case 5:16-cv-01128-AB-SP   Document 226-1   Filed 11/15/18   Page 40 of 117   Page
ID #:1958
Case 5:12-cv-00700-VAP-OP   Document 195   Filed 08/27/14   Page 2 of 16   Page ID #:4578

EDCV 12-00700 VAP (OPx)
WILLIAM F. HOWARD v. COUNTY OF RIVERSIDE ET AL
MINUTE ORDER of August 27, 2014

## I. BACKGROUND

On April 7, 2011, William H. Howard ("Plaintiff") was shot in the face by County of Riverside Sheriff Deputy Armando Munoz. Plaintiff brought an action against Deputy Munoz and the County of Riverside, alleging that Deputy Munoz used excessive and unreasonable force in violation of federal and state law and seeking damages for pain, suffering, and past and future medical costs. The issues of liability and damages were tried to a jury on June 3, 2014. On June 11, 2014, the jury returned a special verdict in favor of Plaintiff on his federal and state law claims and awarded him a total of $7,810,000.00 in damages. ("Verdict") (Doc. No. 154.) Plaintiff elected the damages awarded to him on his federal claim, and a judgment in the sum of $6,410,000.00 was entered in his favor on July 3, 2014. ("Judgment") (Doc. No. 168.) Defendants have appealed the Judgment to the Ninth Circuit Court of Appeals. (Notice of Appeal) (Doc. No. 176.)

On July 17, 2014, Plaintiff filed a Motion for Attorney's Fees and Costs pursuant to 42 U.S.C. section 1988. ("Atty's Fees Mot.") (Doc. No. 169.) On July 28, 2014, Defendants filed an Opposition ("Atty's Fees Opp'n") (Doc. No. 181) and evidence in support of their Opposition (Doc. No. 180). On August 11, 2014, Plaintiff filed his Reply and the Supplemental Declarations of Carol Sobel ("Supp. Sobel Decl.") (Doc. No. 188); Vicki Sarmiento ("Supp. Sarmiento Decl.") (Doc. No. 189); and Dale Galipo (Supp. Galipo Decl.") (Doc. No. 190).

On July 24, 2014, Defendants filed a Motion to Stay the Enforcement of Judgment Pending Appeal ("Stay Motion") (Doc. No. 174). Plaintiff filed an Opposition on August 4, 2014 ("Stay Opp'n") (Doc. No. 183), and Defendants filed their Reply on August 7, 2014 ("Stay Reply") (Doc. No. 186).

## II. LEGAL STANDARD

### A. Staying Enforcement of Judgment Pending Appeal

Pursuant to Federal Rule of Civil Procedure 62(d), "[i]f an appeal is taken, the appellant may obtain a stay by supersedeas bond. . . . " Fed. R. Civ. P. 62(d). The bond "may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond." Id. Filing the bond results in a stay as a matter of right. Id. A supersedeas bond "suspends a judgment creditor's power to levy execution, [usually] pending appeal,"

MINUTES FORM 11                                    Initials of Deputy Clerk __md_____
CIVIL -- GEN                            Page 2

EDCV 12-00700 VAP (OPx)
WILLIAM F. HOWARD v. COUNTY OF RIVERSIDE ET AL
MINUTE ORDER of August 27, 2014

<u>Black's Law Dictionary</u> 1479 (8th ed. 2004), while also ensuring the judgment creditor will be able to collect the judgment plus interest should the court of appeals affirm the judgment, <u>Rachel v. Banana Republic, Inc.</u>, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987).  "District courts have inherent discretionary authority in setting supersedeas bonds. . . . The purpose of a supersedeas bond is to secure the appellees from a loss resulting from the stay of execution and a full supersedeas bond should therefore be required."  <u>Rachel</u>, 831 F.2d at 1505 n.1 (citing <u>Miami Int'l Realty Co. v. Paynter</u>, 807 F.2d 871, 873 (10th Cir. 1986)).

**B.      Attorney's Fees Under 42 U.S.C. § 1988**

Fees in section 1983 cases are governed by 42 U.S.C. section 1988, which provides:

> In any action or proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . .

42 U.S.C. § 1988(b).  "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 429 (1983) (quotation marks omitted).  The analysis of attorney's fees is twofold.  The Court first must determine whether or not the party seeking fees is the prevailing party.  <u>Fischer v. SJB-P.D., Inc.</u>, 214 F.3d 1115 (9th Cir. 2000); <u>Chabner v. United of Omaha Life Ins. Co.</u>, 1999 WL 33227443 (N.D. Cal. 1999).  A plaintiff is the prevailing party when the "resolution of the dispute . . . changes the legal relationship between itself and the defendant."  <u>Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 792 (1989).  In other words, "'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'"  <u>Farrar v. Hobby</u>, 506 U.S. 103, 109 (1992) (quoting <u>Hensley</u>, 461 U.S. at 433).

### III.  DISCUSSION
**A.      Stay Enforcement of Judgment Pending Appeal**

MINUTES FORM 11                                          Initials of Deputy Clerk __md_____
CIVIL -- GEN                              Page 3

EDCV 12-00700 VAP (OPx)
WILLIAM F. HOWARD v. COUNTY OF RIVERSIDE ET AL
MINUTE ORDER of August 27, 2014

Defendants seek to stay enforcement of the Judgment pending appeal without posting a supersedeas bond. Plaintiff opposes Defendants' Motion to stay the judgment without a bond, and contends that the bond should be set at 125 percent of the damages award, or $8,012,500.00.

## 1.     Waiver of Bond

While filing a supersedeas bond allows a party to obtain a stay as a matter of right, "[t]he court also has discretion to stay execution of judgment pending appeal without requiring a bond," where the court finds that the appellee's interests are adequately protected. Acacia Research Corp. v. Nat'l Union Fire Ins. Co., 2008 WL 4381649, at *2 (C.D. Cal. Sept. 9, 2008) (citing Am. Color Graphics, Inc. v. Travelers Prop. Cas. Ins. Co., 2007 WL 1520952, at *1 (N.D. Cal. May 23, 2007)); see Townsend v. Holman Consulting Corp., 881 F.2d 788, 796 (9th Cir. 1989) ("[T]he district court has broad discretionary power to waive the bond requirement if it sees fit."), vacated on reh'g on other grounds, 929 F.2d 1358 (9th Cir. 1990) (en banc); Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n, 636 F.2d 755, 759-61 (D.C. Cir. 1980) (Rule 62 "in no way necessarily implies that filing a bond is the only way to obtain a stay.").

The court may waive the bond requirement on several grounds: "(1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial position that the requirement to post a bond would place other creditors of the defendant in an insecure position." United States v. Boyce, 148 F. Supp. 2d 1069, 1096 (S.D. Cal. 2001) (citing Dillon v. City of Chicago, 866 F.2d 902, 904-05 (7th Cir. 1988) (internal citations and quotations omitted)).

Defendants argue that, although the Judgment was entered jointly and severally against Deputy Munoz and the County of Riverside, the County of Riverside is responsible for the entire amount of the Judgment pursuant to California Government Code section 825. Cal. Gov't Code § 825. The County argues that it has sufficient assets to pay the Judgment if it is affirmed on appeal, and requiring a

MINUTES FORM 11                                          Initials of Deputy Clerk __md_____
CIVIL -- GEN                              Page 4

Case 5:12-cv-00700-VAP-OP    Document 135    Filed 08/27/14    Page 5 of 16   Page ID #:1961

EDCV 12-00700 VAP (OPx)
WILLIAM F. HOWARD v. COUNTY OF RIVERSIDE ET AL
MINUTE ORDER of August 27, 2014

bond would be a waste of money.

The County bears the burden of "objectively demonstrat[ing]" the reasons for departing from the usual requirement of a full superseadeas bond.  Cotton ex rel. McClure v. City of Eureka, Cal., 860 F. Supp. 2d 999, 1028 (N.D. Cal. 2012).  In support of its assertion that the County has sufficient resources to satisfy the Judgment, the County submits the declaration of the County of Riverside's Chief Executive Officer, Jay Orr.  Orr states that County is not in any danger of filing for bankruptcy and the annual budget for 2014-2015 fiscal year is $4.8 billion dollars. (Orr Decl. ¶¶ 1-2.)  In addition, Jeff Ashworth, the County's Senior Liability Claims Adjustor, submitted a declaration detailing the payment process if the Judgment is affirmed.  (Ashworth Decl. ¶ 6.)  Ashworth states that if the Judgment is affirmed, he will submit a check request to the Auditor/Controller's office for payment of the amount of the Judgment, and then the Auditor/Controller will issue a check and return it to him.  Plaintiff will then be required to provide a signed W-9 statement to comply with IRS regulations.  (Id. ¶ 6.)  In total, Ashworth estimates the process usually takes less than 30 days.  (Id.)

As Plaintiff correctly asserts, the County has provided information about the County's assets without explaining its liabilities.[1]  The County has not identified which section of the budget the Judgment will be paid from, or provided any assurance that the amount necessary to pay the judgment is available or kept as part of a specific fund.  Ashworth states that the process of satisfying the judgment is accomplished by simply requesting a check from the auditor/comptroller, but neither Orr nor Ashworth give any information about which fund within the budget will pay the judgment, or how much money is available in that specific fund.

"Courts are generally reluctant to waive the bond requirement for

_____

[1]For example, the "Riverside County Budget Summary" attached to the Defendants' Reply states, in reference to the 2013-2014 fiscal year that, "of the $4.7 billion total, the Board of Supervisors has direct control over revenue totaling $590 million.  The remainder of the budget is encumbered by state spending mandates and other commitments, such as bond payments."  (Ex. 3 to Opp'n at 3.)

MINUTES FORM 11                                    Initials of Deputy Clerk __md_____
CIVIL -- GEN                          Page 5

Case 5:16-cv-01128-AB-SP    Document 226-1    Filed 11/15/18    Page 44 of 117    Page
ID #:4582
Case 5:12-cv-00700-VAP-OP    Document 155    Filed 08/27/14    Page 6 of 16    Page ID #:1962

EDCV 12-00700 VAP (OPx)
WILLIAM F. HOWARD v. COUNTY OF RIVERSIDE ET AL
MINUTE ORDER of August 27, 2014

governmental entities unless funds are readily available and an effective procedure is in place for paying the judgment." Wilmer v. Bd. of Cnty. Comm'rs of Leavenworth Cnty., Kan., 844 F. Supp. 1414, 1419 (D. Kan. 1993).  Courts have waived the bond requirement for governmental entities when the entity has specifically allocated and identified funds that will be available to pay a judgment.  See Lightfoot v. Walker, 797 F.2d 505, 507 (7th Cir. 1986) (noting the Rule 62(e), which entitles the federal government to stay execution pending appeal without bond, is appropriate because all judgments against the United States are paid out of a specific "Judgments Fund"); Contract Design Grp., Inc. v. Wayne State Univ., 2014 WL 2892513, at *2 (E.D. Mich. June 25, 2014) (no bond required when University received funding from the state of Michigan legislature and identified $183.5 million in unrestricted net assets that could satisfy the judgment of $550,000); Johnson v. City of Memphis, 2013 WL 2404042, at *1 (W.D. Tenn. May 31, 2013) (no bond necessary because City of Memphis maintains a "General Fund for, inter alia, the purpose of satisfying money judgments"); McCaughey v. City of Blue Ash, 2009 WL 4280266, at *1-2 (S.D. Ohio Nov. 25, 2009) (no bond necessary where city represented it had already set aside funds to pay $526,430.42 judgment).  Courts have not permitted waiver when funds are not reserved specifically for the payment of the judgment.  See Order Re: Motion for Stay of Execution of Judgment and Waive of Posting Supersedeas Bond, Contreras v. City of Los Angeles, Case No. 2:11-cv-1480-SVW-SH (May 20, 2013, C.D. Cal.) ("Contreras") (City of Los Angeles not entitled to bond waiver when it merely identified the amount available in reserve fund without reporting deficits or providing assurance the sufficient funds were set aside for the judgment).

Furthermore, the amount of the judgment in this case, $6,410,000.00, is much larger than the judgments in cases where courts have found that simply identifying the government entity's resources was a sufficient guarantee the judgment would be paid. Fialka-Feldman v. Oakland Univ. Bd. of Trs., 2010 U.S. Dist. LEXIS 92581 (E.D. Mich. Sept. 7, 2010) (Oakland University received funding from state and had sufficient resources to pay $101,676.00 judgment); Reese v. Mich. Dep't of Corr., 2011 U.S. Dist. LEXIS 21545 (E.D. Mich. Mar. 3, 2011) (state of Michigan's ability to pay $50,000.00 judgment "beyond dispute.").

In Reply, the County submits the Declaration of James Sessions, the County

MINUTES FORM 11                                    Initials of Deputy Clerk __md_____
CIVIL -- GEN                          Page 6

EDCV 12-00700 VAP (OPx)
WILLIAM F. HOWARD v. COUNTY OF RIVERSIDE ET AL
MINUTE ORDER of August 27, 2014

of Riverside's Risk Manager, who states that the majority of the judgment will be covered through "CSAC-Excess Insurance Authority," which is an insurance pool and group purchase program that currently insures most of the counties, cities, schools, and districts in the State of California.  (Sessions Decl. ¶ 3.)  The County is self-insured for the first million dollars of defense costs and the payment of any judgment against it.  Sessions states that CSAC purchased excess insurance for this action from Ironshore Insurance Company, which will be responsible for the amount of judgment in excess of one million dollars.  (Sessions Decl. ¶ 4.)  As Vice-President of the CSAC Executive Committee, Sessions states that he can attest that CSAC is financial stable.  (Sessions Decl. ¶ 3.)  In addition, Sessions submits A.M. Best's A:14 rating of Ironshore.  (Sessions Decl. ¶ 4.)

In Cotton, the City of Eureka submitted declarations from representatives of its insurance company stating that were no coverage issues in regard to the Judgment and thus the insurance would provide sufficient funds to pay the judgment.  The United States District Court for the Northern District of California found these declarations were not sufficient proof of the City's ability to pay any judgment because the insurance representatives did not state their respective funds would "unconditionally satisfy the judgment."  860 F. Supp. 2d at 1028.

Here, the Risk Manager for the County of Riverside stated that Ironshore will cover the costs of any judgment.  The County has not provided any declarations from Ironshore, or any other evidence, such as the policy limits, that supports Sessions' assertion that there is insurance coverage and that coverage would "unconditionally satisfy the judgment."  See Cotton, 860 F. Supp. 2d at 1028; Cf. Barachkov v. Davis, 2013 WL 2149104, at *9 (E.D. Mich. May 16, 2013) (Affidavit from insurance company admitting liability and promising to pay judgment on appeal sufficient to waive bond).[2]  The County has not met its burden of demonstrating that

---

[2]At the hearing the County indicated it was willing to provide a declaration from Ironshore regarding its liability and willingness to pay the amount the amount of the
(continued...)

MINUTES FORM 11                                    Initials of Deputy Clerk __md_____
CIVIL -- GEN                          Page 7

Case 5:16-cv-01128-AB-SP   Document 326-1   Filed 11/15/18   Page 46 of 117   Page
ID #:4584
Case 5:12-cv-00700-VAP-OP   Document 135   Filed 08/27/14   Page 8 of 16   Page ID #:1964

EDCV 12-00700 VAP (OPx)
WILLIAM F. HOWARD v. COUNTY OF RIVERSIDE ET AL
MINUTE ORDER of August 27, 2014

waiver of the supersedeas bond requirement is appropriate.

### 2.    Amount of the Bond

Plaintiff seeks a bond in the sum of 125 percent of the trial judgment, which amounts to $8,012,500.00.  Plaintiff seeks this amount in order to account for interest on the judgment and attorney's fees and costs.  Defendants argue that, if a bond is required, it should be calculated based on an interest rate of .11 percent per year for two years, which is the average amount of time the Ninth Circuit takes to resolve an appeal.  Under Defendant's calculation the bond would be set at $6,424,102.00.

The purpose of a supersedeas bond is to secure the appellees from a loss resulting from the stay of execution.  Rachel, 831 F.2d at 1505 n.1.  Rule 62(d) is silent as to the amount appropriate for a supersedeas bond pending appeal and the Court has discretionary authority to set the amount of the bond.  "Although practices vary among judges, a bond of 1.25 to 1.5 times the judgment is typically required." Cotton, 860 F. Supp. 2d at 1029 (quoting Christopher A. Goelz & Meredith J. Watts, California Practice Guide: Ninth Circuit Civil Appellate Practice ¶ 1:168 (2011)).

Defendant has cited no case law in support of its calculation of the amount of the supersedeas bond.  Plaintiff has cited to one recent civil rights cases in the

---

[2](...continued)
judgment in excess of $1,000,000.00 if it is affirmed on appeal.  First, the Court notes that the issue of insurance was improperly raised for the first time on Reply.  Second, the Court it is not required to consider new evidence submitted after the hearing, especially when that evidence could have been obtained at the time the motion was filed.  It is clear under existing case law, including the cases cited by the Defendants in their Motion, that the declarations submitted in support of their Motion were insufficient to justify waiver of a supersedeas bond.  Defendants initial failure to include the appropriate declarations in support of their Motion is not a reason to afford Defendants a second opportunity to submit sufficient evidence.

Case 5:16-cv-01128-AB-SP    Document 226-1    Filed 11/15/18    Page 47 of 117    Page
ID #:4585
Case 5:12-cv-00700-VAP-OP    Document 135    Filed 08/27/14    Page 9 of 16    Page ID #:1965

EDCV 12-00700 VAP (OPx)
WILLIAM F. HOWARD v. COUNTY OF RIVERSIDE ET AL
MINUTE ORDER of August 27, 2014

Central District of California where the court set the supersedeas bond at 125 percent of the amount of the total judgment. See Contreras at 7. In Contreras, the City of Los Angeles was required to post bond of $8,283,612.88, which was 125 percent of the $6,626,890.30 judgment, in order to stay execution of the judgment. Id. Similarly, in Cotton, the court ordered the City of Eureka to post a bond of $5,718,750.00, which was 125 percent of the judgment entered in a civil rights action. Accordingly, the Court finds that a bond in the amount of 125 percent of the judgment, which is $8,012,500.00, is appropriate.

## B.    Attorney's Fees Under 42 U.S.C. § 1988

Plaintiff was the prevailing party at trial. The jury found that Deputy Munoz used excessive and unreasonable force against Plaintiff and awarded Plaintiff $7,810,000.00 in damages. After electing damages for his federal excessive force claim, a Judgment was entered in Plaintiff's favor for $6,410,000.00. Defendants agree Plaintiff is entitled to reasonable attorney's fees, but objects to the costs, hourly rate, and number of hours requested.

"In determining a reasonable attorney's fee, the district court's first step is to calculate a 'lodestar' by multiplying the number of hours it finds the prevailing party expended on the litigation by a reasonable hourly rate." McGrath v. County of Nevada, 67 F.3d 248, 252 (9th Cir. 1995) (citing Hensley, 461 U.S. at 433). The Court then decides whether to increase or decrease the lodestar amount by evaluating the factors enunciated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), cert. denied, 425 U.S. 951 (1976). The Kerr factors are: time and labor required; the novelty and difficulty of the questions involved; the skill needed to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee, whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorney; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. Id.

MINUTES FORM 11                                    Initials of Deputy Clerk __md_____
CIVIL -- GEN                         Page 9

Case 5:16-cv-01128-AB-SP   Document 226-1   Filed 11/15/18   Page 48 of 117   Page
ID #:1966
Case 5:12-cv-00700-VAP-OP   Document 195   Filed 08/27/14   Page 10 of 16   Page ID #:4586

EDCV 12-00700 VAP (OPx)
WILLIAM F. HOWARD v. COUNTY OF RIVERSIDE ET AL
MINUTE ORDER of August 27, 2014

Plaintiff's counsel Vicki Sarmiento seeks $320,040.00 in fees based on an hourly rate of $600 per hour and a total of 533.4 hours; Dale Galipo seeks $419,120.00 in fees based on an hourly rate of $800 per hour and a total of 523.9 hours.  Defendants object that (1) the hourly rates requested are too high; (2) fees should not be awarded for duplicative work, generic "trial preparation", or hours that did not contribute to the verdict; and (3) the hours claimed are excessive.

## 1.    Reasonable Hourly Rate

"The hourly rate for successful civil rights attorneys is to be calculated by considering certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases."  Moreno v. City of Sacramento, 534 F.3d 1106, 1114 (9th Cir. 2008).  In addition, the court is guided by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  Trevino v. Gates, 99 F.3d 911, 925 (9th Cir. 1996).

In support of their requested hourly rates, Ms. Sarmiento and Mr. Galipo submit declarations detailing their skills as civil rights attorneys and past fee awards they have received.[3]  They also submit numerous declarations from accomplished civil rights attorneys in the Los Angeles area - Paul Hoffman, John Burton, Jorge Gonzalez, and Carol Sobel - who attest that the rates requested by Sarmiento and Galipo are reasonable.[4]

In Opposition, Defendants argue that the hourly rates requested are too high.

---

[3]Declaration of Plaintiff's attorney Vicki I. Sarmiento ("Sarmiento Decl.") (Doc. No. 170) and Declaration of Plaintiff's attorney Dale Galipo ("Galipo Decl.") (Doc. No. 171).

[4]Declarations of Carol Sobel ("Sobel Decl.") (Doc. No. 170-2); Jorge Gonzalez ("Gonzalez Decl.") (Doc. No. 170-3); Paul Hoffman ("Hoffman Decl.") (Doc. No. 171-1); and John Burton ("Burton Decl.") (Doc. No. 171-2).

MINUTES FORM 11                                    Initials of Deputy Clerk __md_____
CIVIL -- GEN                          Page 10

Case 5:16-cv-01128-ABCSP Document 226-1 Filed 11/15/18 Page 49 of 117 Page
Case 5:12-cv-00700-VAP-OP Document 195-2 Filed 08/27/14 Page 11 of 16 Page ID #:1967
ID #:4587

EDCV 12-00700 VAP (OPx)
WILLIAM F. HOWARD v. COUNTY OF RIVERSIDE ET AL
MINUTE ORDER of August 27, 2014

In support of their Opposition they submit the declarations of several attorneys who practice in the Inland Empire, including the attorneys hired to defend the County in this action.  All of these attorneys bill at hourly rates that are lower than the rates requested by Plaintiff and range from $165.00 per hour to $400.00 per hour.[5]  As Plaintiff correctly points out in Reply, except for Andrew Roth, all of the declarations were submitted by attorneys who do not practice in the area of civil rights litigation.  The Roth Declaration submitted is a copy of a Declaration submitted in support of Roth's 2011 motion for attorney's fees in an employment action, in which he requested an hourly rate of $400.00 per hour.  (Roth Decl. ¶ 5.)  Thus, although the Court has considered the rates charged by Mr. Roth, the Court notes that the declaration submitted does not relate to fees charged for work in a civil rights action.

In regard to the rates charged by defense counsel, the Ninth Circuit has stated that "private attorneys hired by a government entity to defend excessive force cases are not in the same legal market as private plaintiff's attorneys who litigate civil rights cases."  Trevino, 99 F.3d at 925.  Accordingly, the Court may not consider the compensation of the defense attorneys in this case when determining the reasonable hourly rates for Plaintiff's counsel.

Mr. Galipo is an extremely accomplished and successful civil rights attorney. He has managed his own law firm since 1991, and has tried in excess of two hundred civil cases through verdict.  (Galipo Decl. ¶¶ 8, 9.)  Mr. Galipo specializes in police misconduct civil rights litigation and been counsel on numerous civil rights cases that resulted in multi-million dollar plaintiff's verdicts.  (Id. ¶ 10.)  In support of Mr. Galipo's fee request, Paul Hoffman, a partner at Schonbrun DeSimone Seplow Harris & Hoffman LLP, states that "there is no other attorney in our community who has had the level of success in police misconduct litigation in terms of large verdicts that Mr. Galipo has."  (Hoffman Decl. ¶ 4.)  In 2006 and 2007 this Court awarded Mr. Galipo an hourly rate of $500.00 per hour for his work on two different civil rights

---

[5]Declarations of Andrew Roth ("Roth Decl."); Dennis Stout ("Stout Decl."); Mark Gunn ("Gunn Decl."); Jeffrey Raynes ("Raynes Decl."); and Jeremy Hanson ("Hanson Decl.")(Doc. No. 180).

MINUTES FORM 11                                    Initials of Deputy Clerk __md_____
CIVIL -- GEN                          Page 11

Case 5:16-cv-01128-AB-SP   Document 226-1   Filed 11/15/18   Page 50 of 117   Page
ID #:1968
Case 5:12-cv-00700-VAP-OP   Document 195   Filed 08/27/14   Page 12 of 15   Page ID #:4588

EDCV 12-00700 VAP (OPx)
WILLIAM F. HOWARD v. COUNTY OF RIVERSIDE ET AL
MINUTE ORDER of August 27, 2014

cases.[6]  Since 2007 the hourly rates awarded to Mr. Galipo by courts in the Central
District have ranged from $675.00 to $800.00.[7]  Notably, Mr. Galipo was awarded an
hourly rate of $800.00 per hour in two recent civil rights cases in the Central District.
See R.S. v. City of Long Beach, SACV11-536 AG (RNBx) (C.D. Cal. Jan. 31, 2014);
Sanchez et al v. County of San Bernardino, CV10-9384 MMM (OPx) (C.D. Cal.
March 10, 2014).  Considering the rate prevailing in the community for similar work
performed by attorneys of comparable skill, experience, and reputation, the Court
finds a reasonable hourly rate for Mr. Galipo is $800.00 per hour.

     Ms. Sarmiento is also an accomplished civil rights attorney.  She has been in
private practice since 1991 and specializes in major personal injury and civil rights
police misconduct cases.  (Sarmiento Decl. ¶ 5.)  Several local civil rights attorneys
submitted declarations attesting to Ms. Sarmiento's skill and experience.  Ms.
Sarmiento was recently awarded an hourly rate of $500.00 per hour in a civil rights
case in Los Angeles Superior Court.  (Id. ¶ 8.)  Considering the rate prevailing in the
community for similar work performed by attorneys of comparable skill, experience,
and reputation, the Court finds a reasonable hourly rate for Ms. Sarmiento is $550
per hour.

### 2.    Reasonable Hours

     The Court has reviewed each and every billing entry in Plaintiff's fee request.
The Court has reduced the fees requested by Plaintiff for tasks (1) on which
excessive time was spent, (2) unnecessary, excessive, or duplicative entries, (3)

---

[6]Ingram v. City of San Bernardino, No. EDCV
05-925-VAP (SGLx), 2007 WL 5030225 (C.D. Cal. Aug. 27, 2007) (hourly rate of
$500 for Galipo); Adams v. City of Rialto, Nos. EDCV 04–155–VAP (SGLx), EDCV
04–1032 VAP, 2006 WL 7090890 (C.D. Cal. July 20, 2006) (same).

[7]Contreras v. City of Angeles, No. 2:11–cv–1480–SVW–SH, 2013 WL
1296763 (C.D. Cal. Mar. 28, 2013) ($675 per hour); P.C. v. City of Los Angeles, No.
CV 07-6495 PLA (C.D. Cal. Sept. 14, 2012) ($700 per hour).

Case 5:16-cv-01128-AB-SP  Document 226-1  Filed 11/15/18  Page 51 of 117  Page
ID #:1969
Case 5:12-cv-00700-VAP-OP  Document 195  Filed 08/27/14  Page 13 of 15  Page ID #:4589

EDCV 12-00700 VAP (OPx)
WILLIAM F. HOWARD v. COUNTY OF RIVERSIDE ET AL
MINUTE ORDER of August 27, 2014

time charged for clerical or secretarial tasks.  The Court notes that Plaintiff's counsel voluntarily eliminated time spent on administrative or semi-clerical tasks, inter-office communication, some communication between co-counsel, and miscellaneous discovery matters, and thus the Court's reductions are minimal.  (Atty's Fee Mot. at 12.)  In addition, Plaintiff does not seek fees for any paralegal assistance and does not seek a multiplier, and has withdrawn his request for witness costs on Reply.

Defendants argue that Plaintiff should not receive compensation for hours related to claims on behalf of Plaintiff's father and son that were dismissed and claims against Sergeant Wedertz that were dismissed shortly before trial.  The Court agrees that the hours related to the potential claims by Plaintiff's father and son are not sufficiently related to the ultimate litigation in which Plaintiff prevailed to justify an award of fees, and has reduced the hours requested accordingly.  The time spent related to the claims against Sergeant Wedertz, including the motion for summary judgment, were in furtherance of the litigation in which Plaintiff prevailed and contributed to Plaintiff's success at trial.  Accordingly, a reduction of those hours is not warranted.

Defendants also argue that counsels' hours should be reduced to account for round numbers, and that it is "impossible that all tasks just happened to take whole hours or half hours to complete."  (Atty's Fees Opp'n at 12.)  The Court has reviewed the billing records of Plaintiff's counsel and notes there are numerous records that are not in whole or half-hour increments.  It appears that Plaintiff's counsel do indeed bill in tenth of hour increments, and therefore a reduction on this basis is not justified.

Defendants further argue that there is "huge duplication" in the billing records, including entries for both Ms. Sarmiento and Mr. Galipo to analyze all the reports, statements, and trial documents.  (Atty's Fees Opp'n at 13.)  In their supplemental declarations, Plaintiff's counsel explain that Ms. Sarmiento took the lead in drafting all the pleadings, motions, and pretrial documents, propounding and responding to written discovery, and consulting with experts.  (Sarmiento Supp. Decl. ¶ 2.)  Mr.

EDCV 12-00700 VAP (OPx)
WILLIAM F. HOWARD v. COUNTY OF RIVERSIDE ET AL
MINUTE ORDER of August 27, 2014

Galipo was lead trial counsel, but reviewed pretrial documents and motions in order to offer his input and familiarize himself with the case. (Galipo Supp. Decl. ¶ 5; Sarmiento Supp. Decl. ¶ 2.) Aside from Deputy Munoz, Ms. Sarmiento voluntarily eliminated hours she spent attending depositions taken by Mr. Galipo. (Sarmiento Supp. Decl. ¶ 3.) Accordingly, any duplication of efforts in this regard were reasonable and necessary and a reduction of hours on this basis is not justified.

Finally, Defendants object to Mr. Galipo's entries for generic "trial preparation," which add up to a total of 241.5 hours, or almost half of the total hours he listed for this case. Mr. Galipo's billing sheet describes "trial preparation" as including:

Outlining examination for all witnesses while reviewing reports, statements, photos, medical records, expert reports, officer's depositions, expert report and deposition testimony, preparing Voir Dire, Opening Statement, Closing Argument, Direct Examination, Cross Examination, and Rebuttal Arguments. Trial Preparation also includes reviewing Pre-Trial Documents, Exhibits, Jury Instructions, Witness Lists, Motions in Limine, and Verdict Form, etc.

(Ex. A to Galipo Decl. at 5.) Mr. Galipo's billing records do not specifically describe the particular tasks within his definition of "trial preparation" that are associated with each individual billing entry.

Plaintiff's counsel bears the burden of establishing entitlement to an attorney's fee award and "documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The Court maintains discretion to reduce the number of hours requested where an attorney's block billing makes it difficult to identify whether the hours were reasonably expended. See Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007) ("We do not quarrel with the district court's authority to reduce hours that are billed in block format. The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked."); R.S., et al,

MINUTES FORM 11                                    Initials of Deputy Clerk __md_____
CIVIL -- GEN                          Page 14

EDCV 12-00700 VAP (OPx)
WILLIAM F. HOWARD v. COUNTY OF RIVERSIDE ET AL
MINUTE ORDER of August 27, 2014

SACV11-536 AG (RNBx) at 28 (reducing Galipo's "trial preparation" hours by 20 percent based on block billing).

The trial court, due to its familiarity with the case, is in the best position to evaluate the reasonableness of the hours requested.  Moreno, 534 F.3d 1106, 1116 (9th Cir. 2008).  The time Mr. Galipo spent preparing for trial was reflected in the organized manner of counsel's trial presentation and his familiarity with the facts and complex legal issues of the case.  In addition, the Court notes that throughout the trial Defendants were represented by three senior attorneys, who also had the assistance of a paralegal.  Meanwhile Mr. Galipo and Ms. Sarmiento handled Plaintiff's case entirely on their own.  Accordingly, the time spent on trial preparation was not excessive.  In light of the lack of specificity in Mr. Galipo's billing for "trial preparation", the Court reduces the hours he spent dedicated to "trial preparation" by 5 percent, or 12.08 hours.

In addition, Plaintiff is entitled to attorney's fees for the time spent establishing his right to attorney's fees.  Clark v. City of Los Angeles, 803 F.2d 987, 992 (9th Cir. 1986).  Ms. Sarmiento submitted billing records documenting the time spent preparing this Motion and requests an award for an additional 18.5 hours.  This is a reasonable amount of time to spend in relation to the Attorney's Fees Motion, and the Court has added these hours to its calculation.

In conclusion, the "presumptively reasonable" lodestar amounts for Plaintiff's counsel are as follows. See Jordan, 815 F.2d at 1262.  The Court sees no reason to depart from the lodestar amount.

| Attorney | Hourly Rate | Hours | Lodestar |
|----------|-------------|-------|----------|
|          |             |       |          |

MINUTES FORM 11                                    Initials of Deputy Clerk __md_____
CIVIL -- GEN                          Page 15

EDCV 12-00700 VAP (OPx)
WILLIAM F. HOWARD v. COUNTY OF RIVERSIDE ET AL
MINUTE ORDER of August 27, 2014

| Galipo | $800.00 | 498.4[8] | $398,720.00 |
|---|---|---|---|
| Sarmiento | $550.00 | 499.4[9] | $274,670.00 |
| **Total** | | 997.82 | $673,390.00 |

Plaintiff is also entitled to his reasonable out of pocket expenses of $12,796.14.[10]  The total award of attorney's fees and costs is $686,186.14.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Defendants' Motion to Stay the Judgment Pending Appeal, and orders Defendant County of Riverside post a bond of $8,012,500.00.  The Court GRANTS Plaintiff's Motion for Attorney's Fees and Costs, and awards fees in the amount of $673,390.00 and costs in the amount of $12,796.14.

**IT IS SO ORDERED.**

---

[8]521.9 - 12.08 (5% block billing reduction) - 11.4 (father/son claim) = 498.4.

[9]525.4 - 44.4 (father/son claim) + 18.5 (attorney's fee motion) = 499.5.

[10]As noted earlier, Plaintiff withdrew his request for expert witness fees of $45,670.18 in his Reply.

MINUTES FORM 11                                         Initials of Deputy Clerk __md_____
CIVIL -- GEN                            Page 16

# Exhibit D

Case 2:10-cv-09384-MMM-OP   Document 275-1   Filed 03/10/14   Page 1 of 43   Page ID #:4594

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD SANCHEZ, individually and as successor-in-interest; GABRIEL SANCHEZ, individually and as successor-in-interest; MALACHI SANCHEZ, individually and as successor-in-interest; J.S., a minor by and through his guardian ad litem, YVONNE VARELA,<br><br>        Plaintiffs,<br><br>    vs.<br><br>COUNTY OF SAN BERNARDINO; SERGEANT CASEY JILES; DEPUTY ANTEKEIER; and DOES 1-10, inclusive,<br><br>        Defendants. | CASE NO. CV 10-09384 MMM (OPx)<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS |

Case 5:16-cv-01129-AB-SP Document 226-1 Filed 11/15/18 Page 57 of 117 Page ID #:9786
Case 2:10-cv-09384-MMM-OP Document 275 Filed 03/10/14 Page 2 of 43 Page ID #:9786
ID #:4595

Plaintiffs Donald Sanchez, Gabriel Sanchez, Malachi Sanchez's, and Jacob Sanchez filed a motion for attorneys' fees and costs on November 14, 2013.[1] The defendant, San Bernardino Police Sergeant Casey Jiles, opposes the motion.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 9, 2010, plaintiffs sued Jiles, the County of San Bernardino ("the County"), Deputy Andrew Antekeier, and various fictitious defendants.[3] The complaint alleged eleven causes of action based on Jiles' February 10, 2010 shooting of plaintiffs' father, Don Richard, and Don Richard's subsequent death.[4] Seven of these claims were asserted under 42 U.S.C. §§ 1983 and 1985, and alleged unreasonable detention and arrest, excessive force, denial of medical care, violation of substantive due process, conspiracy to violate civil rights, conspiracy to cover up violations of Don Richard's civil rights, and municipal and supervisory liability under *Monell*. The complaint also alleged state law claims for false arrest and false imprisonment, battery, negligence, and violation of the Bane Civil Rights Act, California Civil Code § 51.7.

On June 6, 2011, after plaintiffs filed a notice of non-opposition, the court granted defendants' motion to dismiss, dismissing their *Monell* claim against Jiles and Antekeier and all of the state law claims.[5] On February 24, 2012, the court dismissed Antekeier pursuant to the

---

[1]Second Motion for Attorneys' Fees ("Motion"), Docket No. 259 (Nov. 14, 2013). Because the decedent, Donald Richard Sanchez, Sr. and several of the plaintiffs share the same last name, for clarity, the court refers to the decedent in this order, as it has in prior orders, as "Don Richard."

[2]Opposition to Motion for Attorneys' Fees ("Opposition"), Docket No. 270 (Jan. 31, 2014).

[3]Yvonne Varela sued as guardian ad litem for plaintiff Jacob Sanchez, who was a minor when the action was filed.

[4]Complaint, Docket No. 3 (Dec. 9, 2010).

[5]Order Granting Defendants' Motion to Dismiss, Docket No. 13 (June 6, 2011).

parties' stipulation.[6]  On February 29, 2012, also pursuant to stipulation, the court dismissed plaintiffs' claims for unreasonable detention and arrest, denial of medical care, conspiracy to violate civil rights, conspiracy to cover up violations of Don Richard's civil rights, and municipal and supervisory liability under *Monell*.[7]  As a result of the dismissal of the *Monell* claim, the parties then stipulated to dismiss the County, which the court did.[8]

Following the entry of these orders, Jiles was the sole remaining defendant.  The remaining claims were plaintiffs' claim that Jiles used excessive force in violation of the Fourth Amendment when he shot Don Richard, and that Jiles violated plaintiffs' substantive due process rights by interfering with their familial relationship with their father.  These two claims were tried to a jury between June 26 and June 29, 2012.  On July 3, 2012, the jury returned a verdict in favor of Jiles on plaintiffs' due process claim but could not reach a unanimous verdict on plaintiffs' excessive force claim.[9]  The court directed the parties to participate in a settlement conference before Magistrate Judge Jay C. Gandhi,[10] which they did on November 1, 2012.[11]  The case did not settle.[12]  As a result, the excessive force claim was retried between January 8 and January 14,

---

[6]Order Granting Stipulation to Dismiss Individual Defendant Deputy Antekeier, Docket No. 33 (Feb. 24, 2012).

[7]Order Granting Stipulated Dismissal with Prejudice of the First, Third, Fifth, Sixth, and Seventh Claims, and Plaintiffs' Claim Defendants Deprived, or Conspired to Deprive, Plaintiffs' Decedent's Rights to Equal Protection and Immunities Because of His Hispanic Race, Docket No. 34 (Feb. 29, 2012).  See also Pre-Trial Conference Order, Docket No. 96 (Apr. 30, 2011).

[8]Order Granting Joint Stipulation to Dismiss County of San Bernardino, Docket No. 162 (June 28, 2012).

[9]Jury Verdict from First Trial ("First Verdict"), Docket No. 175 (July 3, 2012).

[10]Order Regarding Settlement Conference, Docket No. 181 (Aug. 2, 2012).

[11]Minutes of Settlement Conference, Docket No. 189 (Nov. 1, 2012).

[12]Second Order Regarding Settlement Conference, Docket No. 190 (Nov. 8, 2012).

3

2013.   The second jury returned a unanimous verdict in favor of plaintiffs and awarded $200,000.00 in damages.[13]

On January 29, 2013, Jiles filed a motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure, arguing that he was entitled to qualified immunity.[14]  On September 12, 2013, the court denied the motion,[15] and on October 30, 2013, it entered judgment in favor of plaintiffs.[16]  On November 13, 2013, plaintiffs filed a motion for attorneys' fees.[17]  The court struck the motion on November 14, 2013, because plaintiffs had set it for hearing on a date that was closed on the court's calendar.[18]  That same day, plaintiffs filed a new motion for attorneys' fees, setting the motion for hearing on February 24, 2014.

## II. DISCUSSION

### A.   Whether the Court Should Deny the Motion on Procedural Grounds

Jiles argues first that the court should deny plaintiffs' motion on procedural grounds because it was untimely, because plaintiffs' attorney did not meet and confer with opposing counsel prior to filing the motion, because the motion does not include the time and date of the hearing on the first page, and because it does not state that counsel met and conferred before the motion was filed.

---

[13]Jury Verdict from Second Trial ("Second Verdict"), Docket No. 232 (Jan. 15, 2013).

[14]Renewed Motion for Judgment as a Matter of Law, Docket No 236 (Jan. 29, 2013).

[15]Order Denying Motion for Judgment as a Matter of Law ("JMOL Order"), Docket No. 253 (Sept. 12, 2013).

[16]Judgment on the Verdict for the Plaintiff ("Judgment"), Docket No. 254 (Oct. 30, 2013).

[17]Plaintiffs' First Motion for Attorneys' Fees, Docket No. 257 (Nov. 13, 2013).

[18]Order Striking Plaintiffs' First Motion for Attorneys' Fees, Docket No. 248 (Nov. 14, 2013).

4

### 1. Whether Plaintiffs' Motion Is Untimely

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2) of the Federal Rules of Civil Procedure. That Rule provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages. . . . Unless a statute or a court order provides otherwise, the motion must[ ] be filed no later than 14 days after the entry of judgment." FED.R.CIV.PROC. 54(d)(2); see also CA CD L.R. 54-10 ("Any motion or application for attorneys' fees shall be served and filed within fourteen (14) days after the entry of judgment or other final order, unless otherwise ordered by the Court"). "Although 'the 14-day period [set forth in Rule 54] is not jurisdictional, the failure to comply [with Rule 54] should be sufficient reason to deny the fee motion, absent some compelling showing of good cause.'" *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 889-90 (9th Cir. 2000) (quoting 10 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 54.151[1] (3d ed. 2000) (second alteration original)).

Judgment was entered in this case on October 30, 2013. Plaintiffs' motion for attorneys' fees should therefore have been filed on November 13, 2013. Plaintiffs in fact filed a motion for attorneys' fees that day, but, as noted, the clerk struck the motion on November 14, 2013 because it was set for a date that was closed on the court's calendar. The text entry striking the motion also noted that plaintiffs' motion had not included an indication on the first page of the date and time of the hearing as required by Local Rule 7-4.[19] Plaintiffs refiled the motion that day. Jiles argues that plaintiffs have not shown good cause for a late filing because plaintiffs' need to refile the motion was due to their failure to comply with the Local Rules and failure to have ascertained the court's closed motion days prior to setting the motion for hearing.[20]

---

[19]Local Rule 7-4 provides that "[o]n the first page of the notice of motion and every other document filed in connection with the motion, there shall be included, under the title of the document, the date and time of the motion hearing." CA C.D. L.R. 7-4.

[20]Opposition at 4-5.

Plaintiffs' motion was not untimely under the Federal Rules of Civil Procedure, however. Rule 5(d)(4) states that "[t]he clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice." FED.R.CIV.PROC. 5(d)(4). See *Klemm v. Astrue*, 543 F.3d 1139, 1143 (9th Cir. 2008) (holding that the clerk was obligated to accept appellant's notice of appeal for filing, even though appellant failed to comply with local filing rules, citing FED.R.CIV.PROC. 5(d)(4)); *MD Propertyco, LLC v. Mad Dog Saloon AZ, L.L.C.*, No. CV–12–2516–PHX–LOA, 2012 WL 5984950, \*3 (D. Ariz. Nov. 28, 2012) ("[T]he Clerk of Court is not authorized to strike a non-conforming pleading or filing," citing FED.R.CIV.PROC. 5(d)(4)); *Zepeda v. Walker*, 564 F.Supp.2d 1179, 1183 (C.D. Cal. 2008) ("[A] pleading may be deemed filed even if the pleading is not in compliance with filing rules," citing *Ordonez v. Johnson*, 254 F.3d 814, 816 (9th Cir. 2001) ("We have previously held that a complaint is filed when it is placed in the actual or constructive custody of the clerk [of the court], despite any subsequent rejection by [the clerk] of the pleading for non-compliance with a provision of the local rules" (internal quotation omitted; alterations original), and *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)). For that reason, although the motion may have failed to comply with the local rules or was otherwise deficient, it was not untimely. It was deemed filed when plaintiffs docketed it on November 13, 2013.

### 2. Whether Plaintiffs Failed to Comply with Local Rule 7-3

Local Rule 7-3 provides that "[i]n all cases . . . , counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. The conference shall take place at least seven (7) days prior to the filing of the motion." CA CD L.R. 7-3. Plaintiffs report that they met and conferred with opposing counsel prior to filing the motion. Dale Galipo has submitted a declaration that states:

> "Prior to filing the instant motion for attorney fees I had numerous discussions with Defense counsel Dana A. Fox regarding the pending attorney fees motion and the settlement of the case, but no resolution could be reached. Since no resolution

6

could reached prior to the final date to file the attorney fees motion I timely filed Plaintiffs['] motion for attorney fees on November 13, 2013."[21] Jiles has adduced no evidence contradicting this statement; he merely offers attorney argument that plaintiffs failed to meet and confer. This is insufficient to rebut Galipo's sworn statement that he complied with the meet and confer requirement. Accordingly, the court cannot find that failure to conduct a prefiling conference warrants denial of the motion.

### 3. Whether the Court Should Deny Plaintiffs' Motion Due to Procedural Errors

Under Local Rule 83-7, the court can sanction a party as it deems appropriate for "[t]he violation of or failure to conform to any of the[ ] Local Rules" if the court finds the failure was "willful, grossly negligent, [ ] reckless . . . bad faith and/or a willful disobedience of a court order." CA CD L.R. 83-7. Plaintiffs concede they did not comply with Local Rule 7-3 because they failed to include a statement in the notice of motion that "[the] motion [was] made following the conference of counsel pursuant to L.R. 7-3, which took place on (date)." They also acknowledge that they did not comply with Local Rule 7-4 because they failed to note on the first page of the motion the date and time of the motion hearing.[22] The court cannot conclude, however, that plaintiffs' failure to adhere to these rules constitutes willfulness, recklessness or bad faith. While the omissions may have been the result of negligence, the court declines to impose the harsh sanction of denying plaintiffs attorneys' fees because of two procedural mistakes. See *Brodie v. Board of Trustees of California State University*, No. CV 12-07690 DDP (AGRx), 2013 WL 4536242, *1 (C.D. Cal. Aug. 27, 2013) (considering the merits of a motion despite counsel's failure to comply with Local Rule 7-3); *Williams-Ilunga v. Gonzalez*, No. CV 12–08592 DDP (AJWx), 2013 WL 571795 at *4 (same); *Reed v. Sandstone Properties, L.P.*, No. CV 12–05021 MMM (VBKx), 2013 WL 1344912, *6 (C.D. Cal. Apr. 2, 2013) (electing to consider a motion

---

[21]Reply in Support of Motion for Attorneys' Fees ("Reply"), Docket No. 271 (Feb. 10, 2014), Exh. 1 (Reply Declaration of Dale K. Galipo in Support of Motion for Attorneys' Fees ("Galipo Reply Decl."), ¶ 4).

[22]Reply at 3-4.

7

even though the prefiling conference was untimely); *Thomas v. U.S. Foods, Inc.*, No. 8:12–cv–1221–JST (JEMx), 2012 WL 5634847, *1 n. 1 (C.D. Cal. Nov. 14, 2012) (considering a motion despite the fact that the movant had not met and conferred with his opponent); *Wilson-Condon v. Allstate Indemnity Co.*, No. CV 11–05538 GAF (PJWx), 2011 WL 3439272, *1 (C.D. Cal. Aug. 4, 2011) (same).

**B.    Whether the Court Should Grant Jiles' *Ex Parte* Application for an Order Allowing Him to File Evidentiary Objections**

On February 14, 2014, Jiles filed an *ex parte* application seeking an order permitting him to file objections to the declarations that plaintiffs' counsel filed in support of their reply.[23] Concurrently with his application, Jiles proffered proposed objections to the declarations.  Jiles contends that counsel submitted new evidence by (1) requesting that the court award additional attorneys' fees incurred in connection with preparation of the reply; (2) submitting a recent case that awarded attorneys' fees to counsel; (3) stating that Jiles made no meaningful offer to settle the case; (4) clarifying Navab's role at the second trial; (5) explaining the applicable time period covered by the Schlueters' request for fees in another case; and (6) expanding on Peter Schlueter's civil trial experience and his role in this case.

The court can refuse to consider evidence or argument offered for the first time in reply. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief").  The court can properly consider evidence and argument offered in reply that is responsive to points raised in the non-moving party's opposition, however.  See *United States v. Taibi*, No. 10–CV–2250 JLS, 2012 WL 553143, *4 (S.D. Cal. Feb. 21, 2012) ("[B]ecause the[ ] documents respond directly to Defendant's allegations made in his opposition brief, the Court finds it may properly consider this rebuttal evidence even though it was offered for the first time in Plaintiff's reply brief," citing *EEOC v. Creative Networks, LLC and Res–Care, Inc.*, No. CV–05–3032–PHX–SMM, 2008 WL 5225807,

---

[23]*Ex Parte* Application for Order to File Evidentiary Objections ("Application"), Docket No. 272 (Feb. 14, 2014).

*2 (D. Ariz. Dec. 15, 2008) (reviewing the rule that a party may not provide "new" evidence in a reply and deprive the opposing party of an opportunity to respond to it, but denying a motion to strike because the challenged evidence was not "new," as it properly rebutted arguments first raised in opposition to the motion for summary judgment)); *Aguirre v. Munk*, No. C 09–763 MHP, 2011 WL 2149087, *13 (N.D. Cal. June 1, 2011) ("There was no new evidence in defendants' reply. Any shift in focus between the motion and the reply was responsive to Aguirre's arguments and 'evidence' in opposition that were different from the allegations in the amended complaint"); *Bell v. Santa Ana City Jail*, No. SA CV 07-1218-ODW, 2010 WL 582543, *1 n. 3 (C.D. Cal. Feb. 16, 2010) ("The Court concurs with defendant that the evidence adduced in her Reply raises no new issues and consists solely of a response to the arguments that plaintiff first raised in his Opposition"); *QBAS Co., Ltd. v. C Walters Intercoastal Corp.*, No. SACV 10–406 AG, 2010 WL 7785995, *3-4 (C.D. Cal. Dec. 16, 2010) ("Defendants argue that new evidence submitted for the first time with a Reply brief should not considered.  This issue arises frequently, and it's sometimes tricky to distinguish between impermissible 'new' evidence in a reply and evidence that is permissibly responsive to an argument made in the opposing party's opposition.  In this case, the issue is not so tricky.  Plaintiffs' evidence . . . submitted with their Reply is clearly permissible evidence responsive to Defendants' . . . arguments.  Thus, the . . . objections are OVERRULED").

The court may also consider new evidence offered in reply if it gives the opposing party an opportunity to respond.  *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040-41 (9th Cir. 2003) (indicating that the court may consider new issues raised in reply if it gives the opposition an opportunity to respond); *Glenn K. Jackson, Inc. v. Roe*, 273 F.3d 1192, 1202 (9th Cir. 2001) (stating that the "district court has discretion to consider [a new] issue even if it was raised in a reply brief"); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("[W]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond").

9

Even assuming, therefore, that the reply declarations offer new evidence, the court can properly consider their contents so long as Jiles has had an opportunity to respond to them. Jiles' objections afford him such an opportunity, as they contain topic-by-topic objections to the declarations. The clerk is therefore directed to accept the objections for filing, and the court will consider *infra* both the declarations and the objections.

### C.   Whether Plaintiffs Can Recover Attorneys' Fees

As noted, the procedure for requesting attorneys' fees is set forth in Rule 54(d)(2) of the Federal Rules of Civil Procedure. While the rule specifies that requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees. "Rather, [Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award . . . [in order to] give[ ] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award." *MRO Communications, Inc. v. AT&T*, 197 F.3d 1276, 1281 (9th Cir. 1999).

Under § 1988, the prevailing party in a § 1983 lawsuit can recover reasonable attorneys' fees. 42 U.S.C. § 1988(b). In *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Supreme Court considered the meaning of the term "prevailing party." It concluded that plaintiffs are considered the "prevailing party" if they "succeed on any significant issue in litigation which achieves some of the benefit of the parties sought in bringing suit." *Id.*; see *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001) ("Our '[r]espect for [the] ordinary language [of § 1988] requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail,'" quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)).

In subsequent cases, the Supreme Court continued to clarify the definition of "prevailing party." In *Farrar v. Hobby*, 506 U.S. 103, 111 (1992), it held that, "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought,

or comparable relief through a consent decree or settlement. . . .  In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111-12.

Jiles contends that plaintiffs are not prevailing parties.  He argues that he prevailed on many significant aspects of the case, citing the fact that the court granted his motion to dismiss, all of plaintiffs' state law claims and the *Monell* claims against Jiles and Antekeier, that plaintiffs voluntarily dismissed Antekeier and the County of San Bernardino as defendants, and that the first jury returned a verdict in favor of Jiles on plaintiffs' interference with familial relations claim.[24] Jiles is wrong, as it is clear that plaintiffs satisfy the "prevailing party" standard set forth in *Hensley* and *Farrar*.  One need only look to the jury verdict and judgment to reach this conclusion.  The jury in the second trial found that "Casey Jiles use[d] excessive force against Donald Sanchez, Sr." and awarded plaintiffs $200,000 in damages.[25]  The judgment reflected "judgment on the verdict *for the plaintiff(s)*," and "ordered and adjudged that the plaintiff(s) . . . recover of the defendant[ ] Sergeant Casey Jiles the sum of . . . $200,000."[26]  Because plaintiffs "obtain[ed] at least some relief on the merits of [their] claim[s]," they are the prevailing parties. See *Farrar*, 506 U.S. at 111.

The court also determines that plaintiffs are entitled to an award of reasonable attorneys' fees because Jiles has not shown that any special circumstances merit their outright denial.  In *Hensley*, the Supreme Court noted that it was within the district court's discretion whether to allow reasonable attorneys' fees to prevailing parties under § 1988.  461 U.S. at 426.  The court's discretion under § 1988, however, "is very narrow and . . . fee awards should be the rule rather than the exception." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2008) (internal quotation marks omitted).  This is because denying a prevailing party attorneys' fees

---

[24]Opposition at 7-8.

[25]Second Verdict at 1-2.

[26]Judgment at 1.

11

could contravene Congress' intent in passing § 1988, which was "'to attract competent counsel to prosecute civil rights cases.'" Stated differently, denying fees could be a disincentive to counsel considering whether to undertake to represent civil rights plaintiffs. *Barnard v. Theobald*, 721 F.3d 1069, 1077 (9th Cir. 2013) (citing *Mendez*, 540 F.3d at 1126).

Consequently, only in special circumstances should a district court deny a prevailing party's fee request under § 1988 outright. A district court "evaluate[s] whether special circumstances exist by asking whether '(1) allowing attorney's fees would further the purposes of § 1988 and (2) whether the balance of equities favors or disfavors the denial of fees.'" *Mendez*, 540 F.3d at 1126. Only where any award of attorneys' fees would be unreasonable should the court decline to award fees altogether. *Thomas v. City of Tacoma*, 410 F.3d 644, 648 (9th Cir. 2005) (noting that "there are occasions when a prevailing party's reasonable fee is no fee at all"). In *Farrar*, the Supreme Court found such a special circumstance and affirmed the circuit court's decision to deny all attorneys' fees because, although the plaintiff had technically prevailed on his claims by proving a constitutional violation and being awarded nominal damages, allowing him to recover attorneys' fees when he had failed to prove that he suffered any actual damages was unreasonable. *Farrar*, 506 U.S. at 115. Justice O'Connor, who provided the necessary fifth vote, and wrote separately "only to explain more fully why, in [her] view, it [was] appropriate to deny fees in [that] case," noted that "chimerical accomplishments" such as "a purely technical or *de minimis* victory" were not the kind of legal change Congress intended to promote in enacting § 1988. *Id.* at 116, 118.

Jiles contends that special circumstances exist in this case because plaintiffs' requested fee award of $932,321.00 is not proportional to their recovery of $200,000.[27] *Farrar*, however, does not stand for the proposition that a district court should deny outright any fee request that it believes is disproportionate to a prevailing party's recovery. Rather, as noted, *Farrar* indicates that in certain circumstances, it may be reasonable to decline to award fees if a plaintiff's recovery has been merely technical or *de minimis*: the focus is on the nature of the plaintiff's recovery, not

---

[27]Opposition at 8.

Case 5:16-cv-01428-AB-SP    Document 226-1    Filed 11/15/18    Page 68 of 117   Page
ID #:5797
Case 2:10-cv-09384-MMM-OP    Document 273    Filed 03/10/14    Page 13 of 43    Page ID #:4606

on whether the fees requested are disproportionate to that recovery. See *Farrar*, 506 U.S. at 115 ("When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all"); *Mendez*, 540 F.3d at 1126 (holding that a denial of all attorneys' fees under *Farrar* is "appropriate only where 'the plaintiff's success is purely technical or *de minimis*,'" citing *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996)).

Because the focus is on the nature of plaintiff's recovery, and not a comparison of that recovery to requested fees, the Ninth Circuit has consistently rejected the argument that giving a prevailing plaintiff a windfall by allowing him or her to recover a large fee award when the recovery has been a much smaller – but not *de minimis* – amount of damages is a special circumstance that justifies denying all fees. In *Thomas*, for example, the Ninth Circuit reversed a district court's decision not to award fees to a prevailing plaintiff. 410 F.3d at 648. The case began with four plaintiffs alleging multiple causes of action against 27 defendants; in the end, only one plaintiff prevailed on one claim against one defendant. *Id*. at 646-47. The jury awarded the prevailing plaintiff $15,000 in compensatory damages and $20,000 in punitive damages. *Id*. at 647. Counsel requested $488,174.35 in fees. *Thomas v. City of Tacoma (Thomas II)*, No. C01-5138 RBL, 2005 WL 2254005, *5 (W.D. Wash. Sept. 16, 2005). The Ninth Circuit held that Thomas' $35,000 recovery was not *de minimis* and that the district court had therefore erred in refusing to award any fees under the special circumstances exception. *Id*. The court rejected the district court's determination that it was appropriate to deny fees under the special circumstances exception because allowing any fees would result in a windfall to plaintiff. It stated:

> "[Section] 1988 is a product of balancing [Congress'] concern[ ] [with granting a windfall to plaintiffs against the need to attract competent counsel to prosecute civil rights cases] by only permitting reasonable fees. To require Defendants to pay reasonable attorney's fees relevant to the prosecution of the successful claim does not create a windfall, but fulfills the Congressional purpose of § 1988(b)."
> *Thomas*, 410 F.3d at 648.

13

For these reasons, even if plaintiffs' requested fees are disproportionate to their recovery, a question the court considers *infra* in assessing the reasonableness of the fee request, the fact that plaintiffs recovered $200,000 in actual damages for pain and suffering – $165,000 more than the plaintiff in *Thomas* – makes their recovery substantive, rather than merely technical or *de minimis*. Jiles identifies no reason other than proportionality why the court should decline to award fees altogether. Accordingly, the court concludes that plaintiffs are entitled to recover reasonable attorneys' fees under § 1988.

**D.      Whether the Court Should Award the Amount of Fees Requested by Plaintiffs**

Plaintiffs request that the court award fees of $932,321.[28] The first step in determining a reasonable fee award under § 1988 is to calculate the "lodestar" amount. *Morales*, 96 F.3d at 364. This is done by multiplying the total number of hours reasonably expended on the matter by a reasonable hourly rate. See *Hiram C. v. Manteca Unified Sch. Dist.*, No. CV S 03-2568 WBS KJM, 2004 WL 4999156, *1 (E.D. Cal. Nov. 5, 2004) (citing *Noyes v. Grossmont Union High Sch.*, 331 F.Supp.2d 1233, 1248 (S.D. Cal. 2004), in turn citing *Hensley*, 461 U.S. at 433)*; Neisz v. Portland Public Sch. Dist.*, 684 F.Supp. 1530, 1534 (D. Or. 1988) (citing *Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987)); see also, e.g., *I.B. v. N.Y. City Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003) (per curiam); *Jason D.W. ex rel. Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 208 (5th Cir. 1998); *Phelan v. Bell*, 8 F.3d 369, 374 (6th Cir. 1993). The lodestar "presumptively provides an accurate measure of reasonable attorney's fees." See *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994); *Clark v. City of Los Angeles*, 803 F.2d 987, 990 (9th Cir. 1986).

**1.      Whether Counsel's Requested Rates Are Reasonable**

"The hourly rate for successful civil rights attorneys is to be calculated by considering certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel, and fee awards in similar cases." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008). Prosecuting an

---

[28]Motion at 18.

14

excessive force case against a police officer that involves the use of deadly force requires skilled advocacy, especially where, as here, the outcome of the case is not obvious. Plaintiffs' counsel, moreover, litigated the case on a contingency fee basis.[29] These factors weigh in favor of finding that counsel's requested rates are reasonable.

To assist the court in calculating the lodestar, the plaintiffs must submit "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984). The relevant community is that in which the district court sits. See *Schwartz v. Sec'y of Health and Human Serv.*, 73 F.3d 895, 906 (9th Cir. 1995). Declarations from local attorneys who practice in the same area of law regarding the prevailing market rate in the relevant community suffice to establish a reasonable hourly rate. See *Camacho*, 523 F.3d at 980 ("As we have noted, '[a]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate,'" citing *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)); *Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998) (stating that it is true "that declarations of the prevailing market rate in the relevant community are sufficient to establish a reasonable hourly rate"); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996) (noting that declarations from attorneys in the community can provide adequate proof of the reasonableness of counsel's rates). See also *Earthquake Sound Corp. v. Bumper Industries*, 352 F.3d 1210, 1215 (9th Cir. 2003) (discussing the affidavit of "an attorney practicing in the same region as Earthquake's attorneys," which opined that "Earthquake's attorney rates were reasonable and customary").

Courts can also use survey data to evaluate the reasonableness of attorneys' rates. See *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 852 (8th Cir. 2002) ("The parties presented two surveys of hourly rates, one reporting fees received by seven Twin Cities class action firms and the other

---

[29]Motion, Exh. 2 (Declaration of Peter Schlueter in Support of Motion for Attorneys' Fees ("P. Schlueter Decl."), ¶ 6).

15

reporting fees received by sixty-two firms doing a variety of work around the state. The court set individual hourly rates at the median of the class action survey and near the upper limit of the statewide survey, also taking into account the number of years an attorney had been admitted to practice"); *American Petroleum Inst. v. United States EPA*, 72 F.3d 907, 912 (D.C. Cir. 1996) ("Petitioners have provided support for the reasonableness of their rates through affidavits and a survey of rates and we hold that these rates are reasonable"); *Martin v. University of South Alabama*, 911 F.2d 604, 607 (11th Cir. 1990) ("Based on the testimony and survey produced by plaintiffs the reasonable non-contingent hourly rate for civil rights lawyers in the relevant market (Alabama) was found to be \$135 to \$150 per hour for senior counsel and \$105 to \$115 per hour for junior counsel").

Plaintiffs request fees for work performed by attorneys Dale K. Galipo, Kaveh Navab, Adrienne Quarry, John C. Fattahi, Hilary Rau, Peter Schlueter, and Jon Schlueter. They ask that the court calculate the lodestar using the following rates: \$800 for Galipo, \$550 for both Peter and Jon Schlueter, \$425 for Fattahi, \$350 for Quarry, and \$300 for Navab and Rau.[30] As support for this request, counsel proffer declarations that recite their own, and their co-counsel's, skills as civil rights attorneys. They cite rates courts have awarded for their services in prior civil rights cases. They also submit the declarations of several prominent civil rights attorneys practicing in Los Angeles – John Burton, Paul Hoffman, Thomas E. Beck, and Danilo Becerra – who state that Galipo's and Quarry's requested rates are reasonable.[31]

---

[30]See Motion, Exhs. 1 (Declaration of Dale K. Galipo in Support of Motion for Attorneys' Fees ("Galipo Decl."), ¶ 7), 2 (P. Schlueter Decl., ¶ 1), 3 (Declaration of Jon Schlueter in Support of Motion for Attorneys' Fees ("J. Schlueter Decl."), ¶ 2), 4 (Declaration of Kaveh Navab in Support of Motion for Attorneys' Fees ("Navab Decl."), ¶ 6), 5 (Declaration of John C. Fattahi in Support of Motion for Attorneys' Fees ("Fattahi Decl."), ¶ 4), 6 (Declaration of Adrienne Quarry in Support of Motion for Attorneys' Fees ("Quarry Decl."), ¶ 2), 7 (Declaration of Hilary L. Rau in Support of Motion for Attorneys' Fees ("Rau Decl."), ¶ 4).

[31]See Motion, Exhs. 8 (Declaration of John Burton in Support of Plaintiffs' Motion for Attorneys' Fees ("Burton Decl.")), 9 (Declaration of Paul L. Hoffman in Support of Plaintiffs' Motion for Attorneys' Fees ("Hoffman Decl.")), 10 (Declaration of Thomas E. Beck in Support of Plaintiffs' Motion for Attorneys' Fees ("Beck Decl.")), 11 (Declaration of Danilo Becerra in

Jiles objects to each of the requested rates, arguing, *inter alia*, that his attorneys billed no more than $180 per hour for their work on the case; he notes that three of his attorneys are

---

Support of Plaintiffs' Motion for Attorneys' Fees ("Becerra Decl.")), 12 (Second Declaration of Paul L. Hoffman in Support of Plaintiffs' Motion for Attorneys' Fees ("2nd Hoffman Decl.")). Counsel also rely on the results of a survey published in the Los Angeles Daily Journal. (Galipo Decl., Exh. B (Chart in Los Angeles Daily Journal: Average Law Firm Billing Rates).) Jiles objects to the court's consideration of the survey as inadmissible hearsay. (Opposition at 13.) "Surveys are admissible, if relevant, either as nonhearsay or through a hearsay exception." *Prudential Insurance Co. of America v. Gibraltar Financial Corp. of California*, 694 F.2d 1150, 1156 (9th Cir. 1982). Courts frequently find that survey evidence is admissible under the "catch-all" exception to the hearsay rule. See FED.R.EVID. 807 (stating that hearsay not specifically covered by another hearsay exception is not excluded where "(1) [it] has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice"); see also *Keith v. Volpe*, 618 F.Supp. 1132, 1161 (C.D. Cal. 1985) (admitting survey evidence of number of households to be displaced by freeway construction and the racial make-up of their occupants under Rule 803(24), the precursor to Rule 807). Plaintiffs do not respond to Jiles' objection; the court construes their silence as a concession that the survey is inadmissible, and excludes the survey for that reason. Jiles has also proffered a survey overview. This document does not focus on attorneys in Los Angeles or the Central District; it also does not report rates by area of practice, with the exception that it isolates the highest- and lowest-rate practice specialties (entertainment law and insurance defense, respectively). Jiles has not shown that he could not adduce evidence that is more probative of the billing rates of plaintiff's civil rights attorneys in the Central District than the survey overview. Consequently, the court concludes that it too is inadmissible. The court notes, moreover, that Jiles has inaccurately represented the findings of the survey overview, in that he asserts that it concludes billing rates went down from 2011 to 2012. (See Opposition at 13 n. 1 ("[A]s noted in the survey attached to the Hassenberg declaration filed concurrently herewith, due to the economic decline, law firm billing rates have *decreased* over the past few years"(emphasis original)).) In fact, the survey overview clearly states that "[t]he average equity partner billing rate *increased* by 3.4% to $514 in 2012 from $497 in 2011. . . . Associate billing rates (average for all class years and all firm sizes) *increased* 3% to $337 from the 2011 rate of $328." (Opposition, Exh. 1 (Declaration of Barry Hassenberg in Opposition to Motion for Attorneys' Fees ("Hassenberg Decl."), ¶ 3 (citing www.rbz.com/wp-content/uploads/2012/11/2012LawFirmSurvey-Roberts1.pdf).) Instead, it appears from the document that those conducting the survey concluded that overall attorney *compensation* went down because the number of hours billed fell. (See *id.* (noting that while billing rates for partners increased by 3.4%, the average billable hours worked decreased by 5.75%).) Therefore, even if the court were to consider Jiles' evidence, it would not support his position.

17

partners who have been practicing law in California since 1976, 1985, and 1991.[32] It is reversible error, however, for the court to "rel[y] on the rates paid by [a] City to private attorneys for defending excessive force cases . . . [because such attorneys] are not in the same legal market as private plaintiff's attorneys who litigate civil rights cases. In addition, attorneys hired by a government entity to defend excessive force cases are not acting as 'private' attorneys at all." *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996). The court considers the balance of Jiles' objections to counsels' rates below.

### a. Dale Galipo

Galipo is a 1984 graduate of UCLA Law School. As support for his requested hourly rate of $800, Galipo states that he has extensive experience successfully prosecuting civil rights actions involving police misconduct resulting in serious injury or death. Galipo has tried more than 200 civil cases to verdict, winning the majority, and has recovered "numerous seven figure verdicts" for his clients.[33] Hoffman, the former Legal Director of the ACLU of Southern California and partner at the well-known civil rights law firm Schonbrun, DeSimone Seplow Harris & Hoffman, LLP, says of Galipo:

> "There is no other attorney in our community who has had the level of success in police misconduct litigation in terms of large verdicts than Mr. Galipo has. From my communications with other civil rights attorneys in the last few years it is clear that Mr. Galipo is looked upon as the leading trial lawyer for the kinds of cases he tries. There are few, if any, lawyers in Southern California with a better reputation in this area or with greater skill or experience in this very demanding area of civil rights practice. I think Mr. Galipo would be the first lawyer almost any other civil rights lawyer would recommend to handle complicated deadly force police case."[34]

---

[32]Opposition at 2, Exh. 1 (Hassenberg Decl., ¶ 4).

[33]Galipo Decl., ¶ 9.

[34]Hoffman Decl., ¶¶ 4-5.

Hoffman states that $800 per hour "is an hourly rate at the high end of rates for civil rights lawyers but Mr. Galipo's track record on civil rights trials has placed him in this select company."[35] Burton, another civil rights attorney, who has more than 34 years of experience and specializes in police misconduct actions in Los Angeles states that, in his opinion, $800 per hour "is appropriate and necessary to attract attorneys of Mr. Galipo's quality to challenging and risky civil-rights cases."[36] Burton reports that he "recently resolved a fee petition with the County of Los Angeles based on a claimed rate of $725 per hour."[37] Beck, who was associate counsel in Rodney King's civil lawsuit and has prosecuted a number of other high-profile cases in the Los Angeles area, agrees that $800 per hour "is well within the range of reasonable market rates for attorneys with [Galipo's] skills, accomplishments, experience, and reputation," and that is "consistent with the rates that are currently being billed by equally talented and experienced defense attorneys in metropolitan Los Angeles."[38] Becerra, who has been practicing law for 39 years and who focuses on civil rights police misconduct cases, similarly agrees.[39]

Courts in the Central District have awarded Galipo rates ranging from $500 in 2006 to $800 in 2014. He was awarded $800 per hour last month in *R.S. v. City of Long Beach*, SACV 11-536 AG (RNBx) (C.D. Cal. Jan. 31, 2014);[40] $675 in March 2013 in *Contreras v. City of Los*

---

[35]*Id.*, ¶ 6.

[36]Burton Decl., ¶ 12.

[37]*Id.*, ¶ 10.

[38]Beck Decl., ¶ 4.

[39]Becerra Decl., ¶¶ 2, 4.

[40]Jiles argues in his *ex parte* application that the court should not consider the court's award of $800 per hour to Galipo in *R.S.* because Galipo did not submit the case in a timely fashion. Specifically, he asserts that "there is simply no reason why th[is] [information] could not have been included with Declarations filed concurrently with the moving papers." *R.S.*, however, was decided on January 31, 2014, the day Jiles filed opposition to plaintiffs' motion for attorneys' fees, and more than two months after plaintiffs filed their motion. It was therefore impossible to submit the evidence prior to that date. Filing notice of the case ten days after it was decided, on February 10, 2014, in support of plaintiffs' reply, was reasonable. Other than arguing that Galipo's citation

19

*Angeles*, No. 2:11–cv–1480–SVW–SH, 2013 WL 1296763 (C.D. Cal. Mar. 28, 2013); $700 per hour in September 2012 in *P.C. v. City of Los Angeles*, No. CV 07-6495 PLA (C.D. Cal. Sept. 14, 2012); $500 per hour in August 2007 in *Ingram v. City of San Bernardino*, No. EDCV 05-925-VAP (SGLx), 2007 WL 5030225 (C.D. Cal. Aug. 27, 2007); and $500 per hour in July 2006 in *Adams v. City of Rialto*, Nos. EDCV 04–155–VAP (SGLx), EDCV 04–1032 VAP, 2006 WL 7090890 (C.D. Cal. July 20, 2006).

Jiles contends that Galipo's requested rate is unreasonable, citing the fact that some courts have awarded him fees at lower rates.[41] Giles suggests that the court reduce Galipo's rate to $525, in line with a Northern District opinion awarding Galipo that amount in 2012.[42] As noted, however, it is the current prevailing rate for the district in which the case is litigated that determines the reasonableness of an attorney's hourly rate. Jiles does not explain why more recent Central District decisions finding significantly more than $525 per hour reasonable for Galipo are less accurate representations of the prevailing rate in this district than a 2012 Northern District case. The more recent Central District cases indicate an upward trend over the years in the rates courts have found reasonable for someone of Galipo's experience, at least in part because Galipo has acquired more experience with the passage of time. Jiles also does not address the supporting declarations plaintiffs have submitted. Given Jiles' failure to dispute the accuracy of the statements in the declarations, and his failure to proffer declarations showing that a lower rate is more reasonable, the court accepts plaintiffs' supporting declarations as persuasive evidence of the prevailing rate in Los Angeles for prominent civil rights attorneys who specialize in police misconduct cases. As noted, Hoffman believes a rate of $800 per hour is at the high end of the

of *R.S.* was untimely, Jiles offers no other reason why the court should not consider the decision; he merely reiterates that Galipo's request for $800 per hour is unreasonable. (Application, Exh. B ([Proposed] Objection to the Reply Declaration of Dale K. Galipo) at 2-3.) Accordingly, the court finds it appropriate to consider *R.S.* in determining a reasonable hourly rate for Galipo's time.

[41]Opposition at 12-14.

[42]*Id*. at 14.

20

Case 5:16-cv-01120-AB-SP   Document 226-1   Filed 11/15/18   Page 76 of 117   Page
ID #:4614
Case 2:10-cv-09384-MMM-OP   Document 273   Filed 03/10/14   Page 21 of 43   Page ID #:3805

range for such attorneys, while Burton states that he recently settled a fee petition with the County of Los Angeles in which he claimed a rate of $725 per hour. All of the attorneys who have submitted declarations agree that, in Los Angeles, $800 is reasonable for someone with Galipo's experience prosecuting civil rights claims involving the use of deadly force.[43]   On these facts, given that the most recent rates Galipo has been awarded in this district range from $625 to $800, and given its own evaluation of Galipo's experience and skill as a trial attorney and its knowledge of the prevailing market rate for plaintiff's civil rights lawyers, the court concludes that a reasonable rate for attorneys in Galipo's field with his experience is $800 per hour.

### b.    Adrienne Quarry

Quarry is a 2005 graduate of Notre Dame Law School.   She worked at Schonbrun DeSimone from 2005 to 2010, and then began to work with Galipo.   In a recent state court case, *Jochimsen v. County of Los Angeles*, Los Angeles Superior Court Case No. BC386266, she was awarded $325 per hour for work performed in 2008 and 2009.   Hoffman has submitted a second

---

[43]At the hearing, Jiles' attorney argued that the court should not consider the declarations, or give them particular weight, because they are self-serving.   The Ninth Circuit, however, has expressly approved the consideration of such declarations.   In *Camacho*, the court noted that "[a]ffidavits of the plaintiffs' attorney[s] *and other attorneys regarding prevailing fees in the community*, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate."   523 F.3d at 980 (emphasis added).   The court noted that the party opposing the fee application "has a burden of rebuttal that requires submission of *evidence* to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits."   *Id*. (emphasis added).   Jiles' argument that the declarations are self-serving, without more, is insufficient to rebut plaintiffs' showing that Galipo's rates are reasonable.   This includes the declarations of plaintiffs' attorneys he has submitted.   As Galipo noted at the hearing, Jiles did not submit evidence, such as an expert report opining that the reasonable market rate in the community for civil rights attorneys with Galipo's experience is lower than $800 an hour.   While other plaintiffs' attorneys may submit declarations for self-serving reasons, there is no evidence that this occurred here.   The court notes, moreover, that the declarations are submitted under penalty of perjury, a fact it presumes the declarants took into account before agreeing to provide their sworn statements here.   Based on its own knowledge of the prevailing market rates in the Central District, the court does not believe that a fee of $800 per hour for someone of Galipo's experience is excessive, such that it would indicate collusion between Galipo and the declarants supporting his request.   Consequently, the court will consider the declarations, which support its conclusion that $800 per hour is a reasonable rate for Galipo in this case.

declaration in support of Quarry's fee request, in which he states that he has known Quarry since she externed for him while still a law student in 2003, and that he had the opportunity to supervise her work for more than four years at Schonbrune DeSimone.[44] He believes that $350 per hour "is below the market rate for attorneys of comparable skill and experience in civil rights cases in this community."[45]

Jiles argues that Quarry's requested rate is unreasonable because no court has ever valued her services at $350 per hour. He does not dispute Hoffman's statements, however, including his opinion that $350 per hour is below the market rate for civil rights attorneys like Quarry who have nine years of experience. Nor does he proffer evidence rebutting it. The court notes, moreover, that the $325 per hour that Quarry received in *Jochimsen* was for work performed several years prior to her work on this case. Accordingly, the court concludes that Quarry's requested rate of $350 per hour is reasonable.

### c. Peter Schlueter, Jon Schlueter, Kaveh Navab, John Fattahi, and Hilary Rau

Peter Schlueter is a 1991 honors graduate of Western State University College of Law. After law school, he worked as a prosecutor for four years. Since 1999, he has focused on criminal defense and civil rights litigation.[46] Prior to law school, Peter Schlueter was a journalist and photojournalist. Jon Schlueter is a 1982 graduate of UCLA law school. After law school, he became a prosecutor and tried more than 60 criminal cases to a jury before leaving to start his own civil rights firm in 1999 with his brother, Peter Schlueter. Jon Schlueter has argued before the California Supreme Court, the Ninth Circuit Court of Appeals, and the Fourth Appellate District of the California Court of Appeal. As noted, both Peter and Jon Schlueter request that the court value their time at $550 per hour. In 2010, a court in the Central District awarded Peter

---

[44] 2nd Hoffman Decl., ¶¶ 4-5.

[45] *Id.*, ¶ 3.

[46] P. Schlueter Decl., ¶¶ 1-5.

22

Schlueter $300 per hour and Jon Schlueter $350 per hour for work performed between 2005 to 2007.[47] *McCown v. City of Fontana*, 711 F.Supp.2d 1067 (C.D. Cal. 2010).

Fattahi is a 2006 graduate of UCLA School of Law and former clerk to the Honorable Virginia Phillips. Following his clerkship, Fattahi accepted a position at Quinn Emanuel Urquhart & Sullivan, LLP, where he worked as an associate until 2009. At that point, he joined Galipo's office, where he focused almost exclusively on plaintiffs' civil rights litigation. Fattahi left Galipo's office in 2011 to start a solo practice, where he focuses exclusively on police civil rights litigation. Fattahi requests that the court use an hourly rate of $425 in awarding fees for his time. In *Contreras*, he was awarded fees using a rate of $350 per hour, see 2013 WL 1296763 at *3; in *P.C.*, the court awarded him fees based on a rate of $320 per hour.

Navab is a 2010 graduate of the Vermont Law School. During law school, he worked one summer at the Law Offices of Carol A. Sobel. After law school, he joined Otten & Joyce, LLP, which he left in 2012 to accept a position in Galipo's office. Rau is a 2010 graduate of UCLA Law School. During law school, Rau was the editor of the UCLA Journal of Environmental Law and Policy. She worked at Galipo's office until July 2012, when she left to accept a position at The Feldman Law Firm, APC, where she has a plaintiffs' employment and civil rights practice. Navab and Rau request that the court use an hourly rate of $300 to value their time. In *Contreras*, the court awarded Rau $285 per hour. 2013 WL 1296763 at *3.

---

[47]Jiles argues that the court should not consider the information that the *McCown* court awarded the Schlueters hourly rates based on work performed between 2005 to 2007 because it is irrelevant and should have been submitted in plaintiffs' moving papers. (Application, Exh. E ([Proposed] Objection to the Reply Declaration of Peter Schlueter at 2-3).) As noted, because the court has given Jiles an opportunity to respond to the information, the fact that it was not included in Peter Schlueter's original declaration does not prevent the court from considering it. The fact that the amount awarded in *McCown* was for work performed in 2005-2007 is clearly relevant because it suggests that a reasonable rate for the two some years later would be higher because they had more experience by the time they worked on this case. Accordingly, the court believes it appropriate to consider the fact that the work for which the Schlueters received fees in *McGown* was performed between 2005 to 2007.

23

Other than declarations by each of these attorneys concerning their experience and the reasonableness of each other's rates, plaintiffs have adduced no other admissible[48] evidence supporting the reasonableness of plaintiffs' fee request for these attorneys. They have therefore failed to satisfy their burden of showing that the requested rates are reasonable. When a fee applicant fails to establish the reasonableness of the requested rates, the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community. See, e.g., *Plan Administrator v. Kienast*, No. 2:06-cv-1529, 2008 WL 1981637, *4 (W.D. Pa. May 2, 2008) ("If a party fails to meet its burden to demonstrate a prima facie case that the requested rates were the prevailing rates in the community, 'the district court must exercise its discretion in fixing a reasonable hourly rate,'" quoting *Washington v. Philadelphia Court of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir. 1996)); *Moreno v. Empire City Subway Co.*, No. CV 05-7768 (LMM) (HBP), 2008 WL 793605, *7 (S.D.N.Y. Mar. 26, 2008) (where the fee applicant "has submitted no evidence of the prevailing market rate for attorneys of like skill litigating cases similar to plaintiff's . . . it is within [the court's] discretion to determine the reasonable hourly rate at which plaintiff[']s counsel should be compensated based on [the court's] familiarity with plaintiff's case and the prevailing rates in the [relevant community]"); *Shephard v. Dorsa*, No. CV 95-8748 ER (JGx), 1998 WL 1799018, *2 (C.D. Cal. July 2, 1998) (determining a reasonable hourly rate based on "(1) the Court's own experience in considering the prevailing market rates in Los Angeles, (2) other fee awards in the relevant market, and (3) ALTMAN WEIL, PENSA, SURVEY OF LAW FIRM ECONOMICS (1996)" in a case where the fee applicant failed to establish the reasonableness of the lawyer's hourly rate).

Based on its experience and understanding of prevailing market rates in Los Angeles for civil rights attorneys with experience comparable to the Schlueters, and its belief that the work the Schlueters performed in this case did not require the skill of attorneys with as much experience

---

[48]As noted, plaintiffs submitted a survey stating that the average associate billed $516 per hour in 2011, and $550 per hour in 2012. The court has sustained Jiles' objection to the survey, and will thus not consider it.

24

as they had,[49] the court concludes that $450 per hour is a reasonable rate for their time.  It concludes that a reasonable rate for Fattahi is $400 per hour, and that Navab's and Rau's requested rate of $300 per hour is reasonable as well.[50]

### d. Conclusion Regarding Counsels' Requested Rates

For the reasons, the court finds the following rates reasonable and will use them in calculating fees in this case: Dale Galipo – $800 per hour; Peter and Jon Schlueter – $450 per hour; John C. Fattahi – $400; Adrienne Quarry – $350; and Kaveh Navab and Hilary Rau – $300.

### 2. Whether the Hours Billed Are Reasonable

A court may award attorneys' fees only for the number of hours it concludes were reasonably expended on the litigation. *Hensley*, 461 U.S. at 434 ("[Counsel] should make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary"). "[T]he fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of th[e] hours worked. . . .'" *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992)); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("[C]ounsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended"); *Pac. W. Cable Co. v. City of Sacramento*, 693 F.Supp. 865, 870 (E.D. Cal. 1988) ("The cases do not indicate that every minute of an attorney's time must be documented; they do, however, require that there be adequate description of how the time was

---

[49]As discussed *infra*, the Schlueters were largely involved in the discovery aspects of the case; they took many of the depositions and searched for possible witnesses and evidence plaintiffs could introduce at trial.  While these activities were important, they did not require attorneys with the level of skill and experience the Schlueters have.  For that reason, the court concludes that $550 is too high to constitute a reasonable rate for their work in this case.

[50]Jiles' counsel argued at the hearing that Navab and Rau have too little experience to make a $300 per hour reasonable.  The court disagrees. Market rate is based not just on experience but also on skill.  In the court's experience, civil rights attorneys who are recent law graduates with prestigious backgrounds frequently bill at rates in the $300 per hour range.

spent, whether it be on research or some other aspect of the litigation. . .").   Although a fee applicant "is not required to record in great detail how each minute of [his] time was expended . . . [he must] list[ ] [the] hours and identify[ ] the general subject matter of [the] time expenditures." *Gucci Am., Inc. v. Pieta*, No. CV 04-9626 ABC (Mcx), 2006 WL 4725707, *2 (C.D. Cal. July 17, 2006) (quotation omitted).

In calculating the lodestar, courts typically exclude time spent on clerical or ministerial tasks because such tasks are properly considered part of an attorney's overhead and are reflected in his or her hourly rate. See *Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them").   In determining whether the number of hours requested is reasonable, a court must be mindful "that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees.  The payoff is too uncertain, as to both the result and the amount of the fee.  It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning.  By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at 1112.

In support of their motion for fees, each attorney has submitted time records detailing the work they performed on the case.  Collectively, plaintiffs' counsel billed 1,500.65 hours working on this matter, or about 7.8 hours per week over the four years the case was pending.  The attorney breakdown of hours is as follows: Galipo – 649.6 hours; Peter Schlueter – 470.65 hours; Quarry – 270.8 hours; Jon Schlueter – 39.3 hours; and Fattahi – 16.2 hours.[51]  Jiles contends that having seven attorneys work on the matter and bill this number of hours was unreasonable.[52]  He asserts that the case did not involve a large number of filings, as there was a single motion to dismiss, which plaintiffs did not oppose; a discovery motion; a "standard" number of motions *in*

---

[51]Motion at 18.

[52]Opposition at 10.

*limine*; and a motion for judgment as a matter of law.[53] Additionally, although the case was tried twice, Jiles contends that the trials were not particularly difficult because they involved first two and then a single cause of action.[54]

Jiles also argues that many of the hours billed are excessive and duplicative. "The court may reduce the number of hours awarded because the lawyer performed unnecessarily duplicative work." *Moreno*, 534 F.3d at 1112; see also *Campon v. City of Blue Springs, Missouri*, 289 F.3d 546, 553 (8th Cir. 2002) (reducing the number of hours and stating that, "[i]n our view, it should not take four experienced, highly paid attorneys 480 hours to prepare one summary judgment motion and to prepare for and conduct a four-day trial when all pretrial discovery had been completed"). Jiles cites several aspects of plaintiffs' billing in this regard. He notes that three attorneys billed 41.9 hours for preparation of the attorneys' fees motion, despite the fact that it is "almost identical" to motions Galipo has filed in other cases. He asserts this is evidence of duplicative billing.[55] Jiles also argues that Navab claims to have spent a total of 37.6 hours on the fee motion in this case and a similar motion in *R.S.* during the same week: he asserts the hours were either unnecessary, given the similarity of the motions, or that Navab double-billed for time spent on each motion.[56] He also takes issue with Peter Schlueter's time entries for 625 telephone calls, primarily to Galipo and Quarry. He notes that most of the entries are for .1 hours – or 6 minutes – and Galipo and Quarry did not bill for the calls. From these facts, he deduces that the calls were likely situations in which Schlueter called Galipo and left a voicemail. He contends

---

[53]*Id.*

[54]*Id.*

[55]*Id.*

[56]*Id.* at 11.

27

this time should not be compensated.[57] Jiles asks generally that the court reduce Peter Schlueter's hours by 50% because of these phone calls and his vague billing entries.[58]

Next, Jiles focuses on hours billed for tasks related to trial. Galipo billed 134 hours on trial preparation for the first trial and 225.5 hours in preparation for the second trial. Jiles argues that this number of hours was unreasonable because there was only one claim at issue in the second trial and that claim had already been tried.[59] He also asserts that Galipo billed for 40 hours of preparation for the Rule 50(b) hearing, and that was unreasonable[60] Additionally, he notes that Galipo billed 31.5 hours for time spent at trial, while Navab billed 18 hours and Peter Schlueter billed 27.1 hours. Jiles contends that Navab's and Schlueter's time was unnecessary because only Galipo tried the case.[61]

Finally, Jiles contends that plaintiffs' counsel block billed and that their time entries are too vague to permit a thorough analysis of the reasonableness of the hours. For this reason, he asserts, the number of hours should be reduced.[62] The court considers these arguments *seriatim* below.

### a. Whether Counsel Engaged in Block Billing

The court has discretion to reduce the number of hours requested where attorneys' block billing makes it difficult easily to identify the hours reasonably expended. See *Neil v. Commissioner of Social Sec.*, 495 Fed. Appx. 845, 847 (9th Cir. Nov. 9, 2012) (Unpub. Disp.) (holding that it was not an abuse of discretion for the district court to reduce a fee request by ten

---

[57]*Id*. at 17.

[58]*Id*. at 18.

[59]*Id*. at 16.

[60]*Id*. at 17.

[61]*Id*.

[62]*Id*. at 15-16.

28

percent to account for block billing, and citing *Hensley*, 461 U.S. at 437, and *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007)).

The court agrees with Jiles that Galipo block-billed hours he denoted "trial preparation." His time records indicate that "trial preparation includes[ ] review of Depositions, Reports, Disclosures, Pretrial Documents, Expert Reports, Preparation of outline for opening, direct and cross examination, and closing."[63] Absent a breakdown of how much time Galipo spent reviewing documents and how much time he spent preparing outlines of his opening statement, direct and cross examination, and closing argument, however, the court is unable to say that it was reasonable to spend 134 hours – or a little more than three forty-hour workweeks – preparing for the first trial, and 225.5 hours – or approximately five-and-a-half forty-hour workweeks – preparing for the second trial. For this reason, the court reduces Galipo's trial hours by 20% from 359.5 to 287.6 hours.

The court, however, does not agree with Jiles that Peter Schlueter, or any of the other attorneys, engaged in block billing. Much of Peter Schlueter's time is detailed in his time records. For example, his entry on April 23, 2010 states "Discussion re progress of investigation with T Thompson. Discussion of discovery needs and the finding of bullets. Discussion re posey."[64] Although there are perhaps an equal number of entries that state only "Review" or "Gen[eral] rev[iew] of file and progress," Schlueter does not seek compensation for many of these entries.[65] Although Navab described the work he did for 18 hours only as "trial," he submitted a declaration stating that the time was spent preparing and coordinating witnesses and organizing documentary evidence to be presented at trial.[66] This description is sufficiently detailed that the court can determine whether the time spent was reasonable. Other counsel have likewise submitted time

---

[63]Galipo Decl., Exh. A (Time Records) at 5.

[64]P. Schlueter Decl., Exh. A (Time Records).

[65]See e.g., *id.*, Exh. A (Time Records at 2/8/2011 and 2/15/2011).

[66]Reply, Exh. 3 (Reply Declaration of Kaveh Navab in Support of Motion for Attorneys' Fees ("Navab Reply Decl."), ¶ 4).

records that are adequate for purposes of determining whether the time spent was reasonable. Accordingly, the court declines to reduce the balance of the hours on the basis that time was block-billed.

### 3. Whether Counsel's Time Entries Show That They Performed Excessive, Duplicative, and/or Unnecessary Work

While the court agrees with Jiles that having seven attorneys work on this case simultaneously would be excessive, it is clear from counsels' time records that they were not all working on the case at the same time. Where several counsel were working on the case at the same time, moreover, they split their duties so that they did not perform overlapping work. This manner of staffing reduces the likelihood that time entries are duplicative or reflect unnecessary work. Galipo was lead trial counsel. Peter Schlueter acted as "the bridge between the clients" and Galipo. Peter Schlueter was also primarily responsible for conducting an investigation; he visited the shooting site, tracked down and questioned witnesses, and conducted depositions.[67] Jon Schlueter assisted his brother with investigation and depositions.[68] Quarry was the primary associate assigned to the case in Galipo's office from September 2010 to August 2012. She coordinated discovery efforts and trial strategy with Peter Schlueter and Galipo, reviewed the motion to dismiss and conducted much of plaintiffs' written discovery.[69] Rau worked on the case from April 2011 to July 2012, primarily drafting opposition to motions *in limine* and assisting Galipo with trial preparation.[70] Navab took over responsibility for the day-to-day management of the case beginning in November 2013.[71] He was responsible for drafting the exhibit and

---

[67]Reply, Exh. 4 (Reply Declaration of Peter Schlueter in Support of Motion for Attorneys' Fees ("P. Schlueter Reply Decl."), ¶¶ 6-7).

[68]J. Schlueter Decl., Exh. A (Time Records).

[69]Quarry Decl., Exh. B (Time Records).

[70]Rau Decl., Exh. A (Time Records).

[71]Galipo Decl., ¶ 18.

witness lists, the verdict form, and the motion for attorneys' fees.[72]  He also assisted with trial, preparing and coordinating witnesses and organizing documentary evidence for presentation at trial.[73]  Galipo brought Fattahi in to oppose Jiles' Rule 50 motion at the end of trial.[74]

While having different associates handle different portions of the case likely increased the amount of time the attorneys billed reviewing documents to familiarize themselves with the case, there was little Galipo could do to prevent such duplication, given that several of his associates joined and left his office during the course of this litigation.  In all likelihood, having certain work performed by associates billing at lower rates reduced total fees below what they would have been had Galipo or one of the Schlueters undertaken to propound or response to written discovery, or organize exhibits and coordinate with witnesses.  The court does believe, however, that there was some inefficiency created by the fact that Peter Schlueter served as a conduit for Galipo's communications with plaintiffs.  While the court understands the circumstances that led to this layered approach to communication, that does not mean that defendant should be required to pay higher fees as a result of it.

For example, the court believes that the number of calls Peter Schlueter made to Galipo's office was excessive.  Jiles contends that the court should infer from the length and number of the calls, as well as from the fact that they are not mentioned in Galipo's billing records, that Peter Schlueter billed for time he spent leaving voicemails for Galipo that took less than 6 minutes to record.[75]  Peter Schlueter counters that he can corroborate the calls with telephone bills, and that the calls reflect conversations, not messages.  He asserts they were necessary because counsel did not work in the same office; he also asserts that counsel had to communicate and strategize more frequently than might otherwise have been the case because evidence in defendant's possession

---

[72]Navab Decl., Exh. A (Time Records).

[73]*Id.*; Reply, Exh. 3 (Navab Reply Decl., ¶ 4).

[74]Fattahi Decl., ¶ 5.

[75]Opposition at 17.

31

went missing and plaintiffs had to track down most of the evidence they ultimately offered at trial.[76] The court simply cannot find that as many as seven telephone calls a day was reasonable even if the case required an abnormal amount of independent investigation. Peter Schlueter billed for 581 calls to Galipo's office between November 24, 2010 and June 26, 2013.[77] 510 of these calls lasted just six minutes. The court finds this amount of communication, which amounts to 71.9 hours, excessive, given that many, if not most, of these telephone calls were likely necessitated by the layered approach counsel took to communication with the clients. It therefore reduces the hours billed by Peter Schlueter for telephone calls to co-counsel by 80% to 14.38 hours.

As noted, Jiles next contends that the number of hours Galipo spent preparing for trial was excessive. The court has already reduced Galipo's trial preparation hours by 20%, to 287.6 hours, because he block-billed his time. Consequently, the court must examine whether it was reasonable for Galipo to spend 107 hours preparing for the first trial and 180.4 hours preparing for the second trial. The court concludes it was reasonable to spend 107 hours preparing for use of deadly force case. The evidence in the case was conflicting; eyewitnesses saw different things and it was undoubtedly necessary to compare the various versions of events witnesses recounted, look for patterns and inconsistencies, try to construct a coherent theory of what transpired, and determine how best to elicit testimony in a way that would be most helpful in proving that theory. The questions the jury resolved were fact-intensive – whether Don Richard's hand was in his pocket at the time Jiles shot him, whether Don Richard was facing Jiles or had turned away from him at the time Jiles fired the third and fourth shots, and the amount of pain and suffering Don Richard suffered before he died as a result of the gunshot wounds.[78] For these reasons, the court finds that 107 hours was a reasonable amount of time to expend preparing for trial, and declines to reduce it.

---

[76]P. Schlueter Reply Decl., ¶ 6.

[77]Schlueter Decl., Exh. A (Time Records).

[78]See JMOL Order at 3, 16.

32

As respects preparation for the second trial, Galipo states that he spent more time preparing for the second trial because he had to change his theory of the case in order to prevail. The court observed that during the second trial, Galipo focused less on whether Don Richard's hand was in his pocket before, during and after he was shot, and more on the fact that Jiles shot Don Richard four times, including twice when the jury found that Don Richard had turned away from him. Coupled with the fact that Galipo had to review all of the documents and evidence in the case as well as transcripts of the first trial, this added to the amount of time reasonably expended preparing for the second trial.[79] The Ninth Circuit has noted that "[w]hen a case goes on for many years, a lot of legal work product will grow stale. . . . A lawyer [ ] needs to get up to speed with the research previously performed. All this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time." *Moreno*, 534 F.3d at 1112 (emphasis original). As with legal research, attorneys litigating a case over the course of several years must refresh their recollection of the facts. It was reasonable for Galipo to spend additional hours reviewing the evidence and transcripts of the first trial in preparation for the second trial, and to spend additional time reformulating his theory of the case. For these reasons, the court does not agree with Jiles that Galipo's trial preparation hours should be reduced further.

Next, as respects the 27.1 hours Peter Schlueter recorded for attending the first trial and the 18 hours Navab recorded for attending the second trial, the court disagrees with Jiles that it was unreasonable for plaintiffs to be represented by two attorneys at trial. The record establishes that Peter Schlueter was intimately familiar with the evidence, the witnesses, and the clients. Counsel state that Peter Schlueter "spent time with the family during the first trial, and aided in the coordination of witnesses in both trials," although he did not bill for his presence at the second trial.[80] Navab helped Galipo prepare and coordinate witnesses, and organized documentary

---

[79]Reply at 9.

[80]*Id*. at 10.

33

evidence to be presented at the second trial.[81] This was substantive work and the hours Navab billed are reasonable. See *Fleming v. Kemper National Services, Inc.*, 373 F.Supp.2d 1000, 1009 (N.D. Cal. 2005) ("[G]iven the importance of the [settlement] conference, it was necessary for a senior attorney to attend, and it was also important that the more junior attorney who actually drafted the settlement conference statement be available at the conference to answer questions about the facts of the case and the supporting evidence. Although the senior attorney could have drafted the statement himself, it would not have been cost-effective, as his billing rate is more than twice as high as that of the more junior attorney who actually drafted the statement"). Indeed, Jiles himself was represented by two attorneys throughout both trials. As for Peter Schlueter, it was reasonable for him to attend the first trial to the extent he performed substantive work that contributed to presentation of the case to the jury. As the court has noted earlier, while it understands the circumstances that resulted in Peter Schleuter having primary contact with the plaintiffs, it does not believe that this circumstance, which resulted in two attorneys doing work that could have been done by one, necessitates that defendant pay both attorneys' full fee. Comparing Peter Schlueter's time for the first trial with Navab's time for the second trial, and recognizing that Schlueter assisted with the coordination of witnesses in addition to serving as liaison to plaintiffs, the court reduces the number of hours he is entitled to recover for the first trial by 9.1 hours, for a total of 18 hours.

Finally, the court believes that the 41.9 hours spent drafting the motion for attorneys' fees was reasonable. Although Jiles contends the motion is almost identical to those Galipo has filed in other cases, Jiles has not submitted the other motions for the court's review. Even if Galipo

---

[81]Navab Supp. Decl., ¶ 4. Jiles argues that the court should not consider this information because it is "irrelevant, hyperbolic, and otherwise unsupported with evidence." (Application, Exh. D ([Proposed] Objection to the Reply Declaration of Kaveh Navab at 2).) The information is clearly relevant because it assists the court in determining whether 18 hours was a reasonable number of hours to bill by describing the tasks Navab performed during those hours. Navab's statement, moreover, is not hyperbolic, and there is no need for Navab to submit evidence in addition to a declaration under penalty of perjury. The court accordingly deems it appropriate to consider this information.

uses standard language in the motions to describe the principles governing awards of attorneys' fees, and even if the biographical information concerning the attorneys who worked on the file and the fees they have been awarded in other cases is in large measure duplicative across motions, drafting this motion necessitated coordination with eleven attorneys and the crafting of case-specific arguments. There is no evidence, moreover, that Navab billed excessively for his work on the motion or double-billed for drafting the same portions of this motion as another he worked on during the same week. This is pure speculation on Jiles' part.

The court has reviewed the detailed time records submitted by counsel in support of the motion for attorneys' fees in this case. The factual issues were difficult and, although the parties litigated only one motion to dismiss, there were 15 motions *in limine* and one *ex parte* application to exclude expert testimony, as well as several follow-up offers of proof and sur-replies allowed by the court at the hearing on the motions, twenty-four depositions, a wealth of evidence that plaintiffs apparently discovered only through lengthy independent investigation, and two trials. Under these circumstances, the court finds the balance of counsels' requested hours reasonable.

### a.    Calculation of the Lodestar Figure

For the reasons stated, the court calculates counsels' reasonable lodestar at:

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Dale Galipo | $800.00 | 580.7 | $464,560.00 |
| Peter Schlueter | $450.00 | 404.03 | $181,813.50 |
| Jon Schlueter | $450.00 | 58.1 | $26,145.00 |
| John Fattahi | $400.00 | 16.2 | $9,480.00 |
| Adrienne Quarry | $350.00 | 270.8 | $94,780.00 |
| Kaveh Navab | $300.00 | 62.2 | $18,660.00 |
| Hilary Rau | $300.00 | 39.3 | $11,790.00 |
| Total: | | 1,451.15 | $807,228.50[82] |

[82]This number includes requested additional fees for preparation of the motion for attorneys' fees, reply, and attendance at the hearing, which the court calculated by multiplying the number of hours counsel reasonably spent on these tasks by the hourly rates the court has approved, *supra*. See *Clark*, 803 F.2d at 992 ("We, like every other court that has considered

### 4.      Whether the Court Should Adjust the Award

"A 'strong presumption' exists that the lodestar figure represents a 'reasonable fee,' and therefore, it should only be enhanced or reduced in 'rare and exceptional cases.'" *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n. 4 (9th Cir. 2000) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)); accord *Clark*, 803 F.2d at 990-91; see also *Hiram C.*, 2004 WL 4999156 at *1 ("There is a strong presumption that the lodestar amount is reasonable," citing *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994)). Nevertheless, after calculating the "lodestar" amount, the court must determine whether it should be adjusted, considering the factors identified in *Kerr v. Screen Guild Extra, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975): (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  See *Hiram C.*, 2004 WL 4999156 at *1; see also *Jason D.W.*, 158 F.3d at 209.

---

the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable).  Galipo estimates he will spent three hours preparing for and attending the hearing on the motion (Galipo Supp. Decl., ¶ 10).  Fattahi has billed an additional 7.5 hours drafting a reply to Jiles' opposition (Fatahi Supp. Decl., ¶ 5), and Navab spent an additional 8.1 hours on the reply as well (Navab Supp. Decl., ¶ 6).  The court incorporated these hours into the lodestar, which had the effect of increasing the fee award by $7,830.  Jiles objects to the court's consideration of these hours in his *ex parte* application.  Beyond asserting that the information was not included in the plaintiffs' moving papers, however, he simply repeats his objection that counsels' fees are unreasonable and inadequately supported.  (See Application, Exhs. B ([Proposed] Objection to the Reply Declaration of Dale K. Galipo at 3-4); C ([Proposed] Objection to the Reply Declaration of John C. Fattahi at 2-4); D ([Proposed] Objection to the Reply Declaration of Kaveh Navab at 3-4).  The court has considered Jiles' objections, but finds the hours reported reasonable and adequately supported by declarations under penalty of perjury.

36

Many of these factors, however, are subsumed in the initial lodestar calculation, see *Hensley*, 461 U.S. at 434 n. 9, and should not be double-counted, see, e.g., *Fisher*, 214 F.3d at 1119; *Clark*, 803 F.2d at 990-91. Moreover, some factors deserve more weight than others. The Supreme Court has held that "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Farrar*, 506 U.S. at 114 (quoting *Hensley*, 461 U.S. at 436); see also *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 790 (1989) (noting that "the degree of [the party's] success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee"). This factor is particularly important when the parties seeking fees is deemed to have "prevailed" on only some of their claims. See *Hensley*, 461 U.S. at 434. Stated differently, a reduced fee is appropriate if the relief, "however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 440.

Consistent with this precedent, the Ninth Circuit has recently observed that "*Hensley*'s test does not require apportionment 'mechanically' on the basis of success or failure on *enumerated issues*." *Crawford v. San Dieguito Union Sch. Dist.*, 202 Fed. Appx. 185, 186 (9th Cir. Sept. 15, 2006) (Unpub. Disp.) (emphasis added); see also *Hensley*, 461 U.S. at 435 n. 11 ("We agree with the District Court's rejection of a mathematical approach comparing the total number of issues in the case with those actually prevailed upon. Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors" (internal quotation marks and record citation omitted)); *Aguirre v. Los Angeles Unified Sch. Dist.*, 461 F.3d 1114, 1121, 1122 )(9th Cir. 2006) (Pregerson, J., concurring) ("[T]he district court is not required to calculate a fee award by looking solely to the number of successful claims. That is, nothing in *Hensley* suggests that Aguirre is entitled to only 14.8% or 4/27 of the fee requested because she prevailed on only four of twenty seven claims. This is true because some claims may seek dramatic or more substantial relief, while others seek minor relief; the fee award must be calculated with careful consideration of the degree of success the prevailing party obtained"); *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998) ("[W]hen a plaintiff achieves the principal goal

of [his] lawsuit, lack of success on some of [his] interrelated claims may not be used as a basis for reducing the plaintiff's fee award").

Rather, courts must consider two issues in evaluating a party's degree of success. *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003). The first step is to determine whether the prevailing party lost on claims that were unrelated to the claims on which it succeeded, since fees should not be awarded for hours spent on claims that were entirely distinct, unrelated, and unsuccessful. *Id.* Plaintiffs did not lose on unrelated claims. Although the first jury found they had not proven that Jiles interfered with their due process right to a familial relationship with their father, this claim was inextricably intertwined with plaintiffs' claim that Jiles used excessive force resulting in their father's death. Plaintiffs' state law claims, which the court dismissed without analysis after plaintiffs filed a notice of non-opposition to defendants' motion to dismiss, were also inextricably intertwined with the excessive force claim. Finally, plaintiffs did not lose the balance of their federal claims or their claims against other defendants, as they voluntarily dismissed these claims during the course of litigation. Neither the court nor the jury had an opportunity to pass on the merits of those claims, and the court notes that plaintiffs dismiss claims or defendants for a host of strategic reasons, and not simply because they have concluded the claims are not viable. Even if plaintiffs had lost on these aspects of their case, moreover, the remaining §§ 1983 and 1985 claims arose from Jiles' shooting of Don Richard and were inextricably intertwined with the excessive force claim as well.

Next, the court must consider whether the prevailing party "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* As the Supreme Court has held, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," which "encompass[es] all hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. "The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988. It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees. [The Supreme Court has] reject[ed] the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *City of*

*Riverside v. Rivera*, 477 U.S. 561, 574 (1986). As the Ninth Circuit has noted, "*Rivera* tells us that there is no absolute requirement that attorneys' fees in civil rights cases be proportionate to the damages awarded. Although the damage amount may be relevant, the correct standard is one of compensation for time reasonably expended." *Thorne v. City of El Segundo*, 802 F.2d 1131, 1143-44 (9th Cir. 1986).

Jiles argues that plaintiffs' requested fee of $953,750.60 is disproportionate to the $200,000 verdict in their favor.[83] The court, of course, has calculated a lower lodestar of $807,228.50, making the differential between the verdict and the fee amount smaller.[84] The $200,000 recovery, moreover, is not insignificant. The jury found that $200,000 was sufficient to compensate plaintiffs, as Don Richard's successors in interest, for his actual damages. The court believes this was an excellent result, most particularly because the damages were limited to Don Richard's pain and suffering prior to death. Although the jury did not award punitive damages, this is because it could not reach a unanimous conclusion as to whether Jiles' conduct was malicious, oppressive, or in reckless disregard for Don Richard's rights.

As noted, moreover, plaintiffs' measure of success is not based solely on the amount of their recovery. The jury's verdict validates plaintiffs' belief that Jiles' conduct was unconstitutional, provides Don Richard's family a measure of closure they would not otherwise have received, and provides guidance to Jiles and the San Bernardino Police Department about the limits of appropriate uses of deadly force, which benefits society at large. Finally, as the court has noted, the eyewitness accounts of what transpired were conflicting; the reaction of the first jury, which hung on the excessive force count, necessitated reconsideration of plaintiffs' theory of the case, and reassessment of the evidence in light of the change in theory. Under the circumstances, the court believes $200,000 was an excellent recovery. For all of these reasons, the court cannot accept Jiles' argument that fees should be reduced to $289,409.80 because they

---

[83]Opposition at 8.

[84]At the hearing, Jiles' lawyer reiterated his argument that the differential between fees of $800,000 or more and plaintiffs' recovery was too large.

are disproportionate to plaintiffs' recovery.[85]  See, e.g., *Rivera*, 477 U.S. at 576 (affirming a $245,000 fee award in a case where plaintiff recovered $33,000); *Jones v. County of Sacramento*, No. CIV S–09–1025 DAD, 2011 WL 3584332, *17 (E.D. Cal. Aug. 12, 2011) (awarding $273,622.50 in attorneys' fees in a § 1983 excessive force claim where plaintiffs recovered $31,000 in compensatory and no punitive damages, declining to reduce award on the basis that the fees were disproportionate to the recovery, and stating "[t]he court is entirely unpersuaded by defendants proposed proportionality ratio [that because plaintiff recovered only 2% of what he asked the jury to award, he should be entitled to only 2% of the requested lodestar], which is blatantly inconsistent with Congress' purpose in enacting § 1988"); *Wheeler v. Coss*, No. 3:06–cv–00717–RAM, 2010 WL 2628667, *9 (D. Nev. June 28, 2010) (awarding fees of $264,158.86 in a § 1983 unlawful arrest action where plaintiff obtained a $50,000 settlement, stating that the recovery represented an "excellent result[ ]," and noting that the case "conferred a meaningful public benefit" because it "sen[t] a message to the City of Reno and its police department about the need to undertake proper investigation before placing a person under arrest"); *Oberfelder v. City of Petaluma*, No. C–98–1470 MHP, 2002 WL 472308, *4 (N.D. Cal. Jan.29, 2002) (awarding $940,593 in fees where plaintiff recovered $100,000 at trial, declining to reduce award as disproportionate, and noting that "plaintiff received excellent results from counsel's work").  The court therefore awards counsel reasonable attorneys' fees of $807,228.50.

### E.    Whether the Court Should Award Counsel their Requested Costs

Plaintiffs also request $21,429.60 in costs.[86]  Rule 54(d)(1) provides that costs "should be allowed to the prevailing party."  FED.R.CIV.PROC. 54(d)(1).  Plaintiffs have submitted a detailed breakdown of their request for $14,104.60 in costs, together with photocopies of receipts and checks that support their application to the clerk to tax costs.[87]  Although plaintiffs apparently seek

---

[85]*Id*. at 18.  Although Jiles suggests this alternate amount, he does not explain how he arrived at this valuation.

[86]Motion at 20.

[87]Application to Clerk to Tax Costs, Docket No. 256 (Nov. 13, 2013).

to have the court award the amounts included in their taxable costs, their request for taxable costs will be heard by the Clerk's designee in accordance with Local Rule 54-2.2, not by the court in this motion. Accordingly, to the extent plaintiffs ask that the court award taxable costs of $14,104.60, the court denies the motion.

The remainder of the costs plaintiffs seek – $7,325.00 – non-taxable expert witness fees. Specifically, plaintiffs seek $6,500 that was paid to Roger Clark, their police practices expert, and $825 that was paid to Vina Spiehler, a forensic toxicologist.[88] Plaintiffs have not submitted declarations by counsel or other supporting evidence demonstrating that they expended these amounts, and the court declines to provide them time to do so because the expert witness fees are not recoverable.

"It is well established that attorney's fees under 42 U.S.C. § 1988 include reasonable out-of-pocket litigation expenses that would normally be charged to a fee paying client, even if the court cannot tax these expenses as 'costs' under 28 U.S.C. § 1920." *Trustees of Construction Industry and Laborers Health and Welfare Trust v. Redland Insurance Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006). Expert witness fees, however, are not recoverable as costs under § 1988. In *West Virginia University Hospital Inc. v. Casey*, 499 U.S. 83, 102 (1991), the Supreme Court concluded that 42 U.S.C. § 1988 does not authorize the shifting of expert fees in civil rights cases to the losing party. As a result, prevailing parties cannot recover more than the witness fees authorized by § 1920 for experts who testified; they can recover nothing for the services of experts in a non-testimonial capacity. *Gates*, 987 F.2d at 1407 (" In *Casey* the Court held that § 1988 does not convey authority to shift expert fees in civil rights litigation to the losing party and that when experts appear at trial they are eligible for the fee provided by 28 U.S.C. §§ 1920 and 1821, but that the prevailing party may not be awarded more than this amount for expert witnesses' trial testimony and is not entitled to anything for services rendered by experts in a nontestimonial capacity").

---

[88]Motion at 20.

41

After the Supreme Court's decision in *Casey*, Congress amended § 1988 to provide for the recovery of expert fees in cases brought to enforce a provision of 42 U.S.C. § 1981 or 1981a. See 42 U.S.C. § 1988(c) ("In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee"); *Landgraf v. USI Film Products*, 511 U.S. 244, 251 (1994) (noting, in the context of a § 1981 case, that Congress amended § 1988 to "respond[ ] to [*Casey*], by providing that an award of attorney's fees may include expert fees"). Congress did not amend § 1988 to allow courts to award expert fees in all cases covered by § 1988(b), however. The amendment was limited only to cases arising under §§ 1981 or 1981a. In other types of cases, *Casey* is binding, and precludes awarding plaintiffs the expert fees they seek. See *Jones*, 2011 WL 3584332 at *19 ("[A] plaintiff may not recover expert witness fees pursuant to § 1988"); *Mitchell Engineering v. City and County of San Francisco*, No. C 08–04022 SI, 2011 WL 1431511, *8 (N.D. Cal. Apr. 14, 2011) ("The City points out, and . . . counsel concede, that plaintiff may not recover expert fees pursuant to Section 1988"); *Ruff v. County of Kings*, 700 F.Supp.2d 1225, 1243 (E.D. Cal. 2010) (noting that the Supreme Court has held that § 1988 does not allow for the recovery of expert witness fees and that subsequent Congressional action did not change this for purposes of § 1983 litigation); *Agster v. Maricopa County*, 486 F.Supp.2d 1005, 1019 (D. Ariz. 2007) (because Congress did not amend § 1988 to permit reimbursement of expert fees in § 1983 cases, the *Casey* decision controls in such cases). As it appears that the entirety of the non-taxable costs plaintiffs seek to have the court award are expert witness fees, the court denies plaintiffs' request to award costs.

## III. CONCLUSION

For the reasons stated, the court awards counsel reasonable attorneys' fees in the amount of $807,228.50. It denies counsels' request for costs. Counsels' request for taxable costs will

be heard by the Clerk's designee. The court declines to award expert witness fees as non-taxable costs.

DATED: March 10, 2014

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

43

**Richard Vasquez**

| | |
|---|---|
| **From:** | cacd_ecfmail@cacd.uscourts.gov |
| **Sent:** | Monday, March 10, 2014 2:28 PM |
| **To:** | ecfnef@cacd.uscourts.gov |
| **Subject:** | Activity in Case 2:10-cv-09384-MMM-OP Donald Sanchez et al v. County of San Bernardino et al Order on Application for Attorney Fees |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA

## Notice of Electronic Filing

The following transaction was entered on 3/10/2014 at 2:28 PM PDT and filed on 3/10/2014
**Case Name:**       Donald Sanchez et al v. County of San Bernardino et al
**Case Number:**     2:10-cv-09384-MMM-OP
**Filer:**
**WARNING: CASE CLOSED on 10/30/2013**
**Document Number:** 275

**Docket Text:**
**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS[259] by Judge Margaret M. Morrow: The court awards counsel reasonable attorneys' fees in the amount of $807,228.50. It denies counsels' request for costs. Counsels' request for taxable costs will be heard by the Clerk's designee. The court declines to award expert witness fees as non-taxable costs. (ah)**

**2:10-cv-09384-MMM-OP Notice has been electronically mailed to:**

Gregory Ryan       hassenberg@lbbslaw.com, gryan@lbbslaw.com, fox@lbbslaw.com, domingez@lbbslaw.com

Barry Hassenberg       hassenberg@lbbslaw.com, gryan@lbbslaw.com, pprice@lbbslaw.com, djohnson@lbbslaw.com

Jon R Schlueter       schltrlegal@aol.com, peterinla@aol.com, schlueterlawoffice@yahoo.com

Dana Alden Fox       lydia.dominguez@lewisbrisbois.com, maritza.estrada@lewisbrisbois.com, dana.fox@lewisbrisbois.com

Peter B Schlueter       peterinla@aol.com

1

Dale K Galipo    tseabaugh@galipolaw.com, knavab@galipolaw.com, lcostanza@galipolaw.com, dkg.courtmail@yahoo.com, rvasquez@galipolaw.com, rvalentine@galipolaw.com, mpartow@galipolaw.com, dalekgalipo@yahoo.com, evalenzuela@galipolaw.com

**2:10-cv-09384-MMM-OP Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**

# Exhibit E

Case 5:16-cv-01128-AB-SP    Document 226-1    Filed 11/15/18    Page 102 of 117   Page
Case 8:11-cv-00536-AG-RNB    Document 221    Filed 01/31/14    Page 1 of 16    Page ID #:7075
ID #:4640

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: | |

**Proceedings:**     **[IN CHAMBERS] ORDER CONCERNING MOTIONS FOR ATTORNEY FEES AND APPLICATIONS FOR COSTS**

These consolidated cases arise from the fatal shooting of Douglas Zerby by Long Beach Police Department officers in December 2010. Douglas Zerby's mother, Pamela Amici ("Amici"); father, Mark Zerby ("Zerby"); and son, R.S. ("R.S."), through his guardian ad litem Stephanie Sentell (collectively, "Plaintiffs"), sued the City of Long Beach and others (together, "Defendants"), alleging that the shooting violated Douglas Zerby's civil rights. The jury found for Plaintiffs and awarded a total of $6.5 million in damages.

Plaintiffs now bring two motions for attorney fees under 28 U.S.C. Section 1988. Counsel for R.S. and Amici request $952,942.50 ("R.S. & Amici Fee Motion," Dkt. No. 194), and counsel for Zerby request $1,295,670 ("Zerby Fee Motion," Dkt. No. 196), though Defendants calculate the request at $1,325,000 (Bruning Decl. in Support of Opposition to Zerby Fee Motion, Dkt. No. 210, at fn. 1). Plaintiffs also bring applications to tax costs. ("R.S. & Amici Cost Application," Dkt. No. 1945; "Zerby Cost Application," Dkt. No. 204.) As described in this Order, the Court GRANTS in part each fee motion, GRANTS the R.S. & Amici Cost Application, and GRANTS in part the Zerby Cost Application.

## BACKGROUND

Case 5:16-cv-01128-AB-SP   Document 226-1   Filed 11/15/18   Page 103 of 117   Page
Case 8:11-cv-00536-AG-RNB   Document 221   Filed 01/31/14   Page 2 of 16   Page ID #:7076
ID #:4641

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

Douglas Zerby was shot and killed without warning by two police officers who mistook the water hose nozzle he was handling for a gun. After the shooting, officers discovered the object was not a gun, but rather a pistol-grip water hose nozzle, not attached to a hose.

R.S., Amici, and Zerby sued. R.S. and Amici hired one law firm, and Zerby hired another. Each of those law firms associated with another law firm. The over 2 years of litigation that followed included various discovery disputes, a motion for summary judgment, and a jury trial. Plaintiffs won. The jury awarded damages of $1 million to Amici, $2 million to Zerby, and $3.5 million to R.S.

## PRELIMINARY MATTERS

Before handling the substance of this Motion, the Court must address "Plaintiff Mark Zerby's Objections and Motion to Strike All or Portions of the Declaration of Robert Bruning in Support of Defendants' Opposition to Motion for Attorneys' Fees (Doc #210)." ("Objections," Dkt. No. 216.) Zerby objects that Bruning's opinions are legal conclusions, are inadmissible under Federal Rules of Evidence 402 and 403, lack foundation, and are derived from a computer software program that doesn't meet the *Daubert* standard.

Zerby's main objection appears to be that Bruning is not qualified as an expert under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Rule 702 provides that a witness qualified as an expert by knowledge, skill, experience, training, or education may offer opinion testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The burden of establishing the admissibility of expert testimony falls on the party seeking its admission. *See DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1146-47 (N.D. Cal. 2003) (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)).

Zerby argues that Bruning does not have the knowledge, skill, experience, training, or education necessary to be qualified as an expert in this case because Bruning does not

Case 5:16-cv-01128-AB-SP    Document 226-1    Filed 11/15/18    Page 104 of 117   Page
ID #:7077
Case 8:11-cv-00536-AG-RNB    Document 221    Filed 01/31/14    Page 3 of 16   Page ID #:4642

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

have experience litigating police misconduct, excessive force, or wrongful death cases. (Objection at 2-3, 5.) But even if that is true, Bruning is still qualified as an expert here. Bruning has been an attorney for decades in California and litigated many kinds of cases. (Bruning Decl. 1 ¶ 3.) For twenty years, he has represented hundreds of clients in fee review and analysis and provided expert opinion in these areas. (*Id.*) The Court isn't persuaded that more specifically tailored experience is required to opine on the issues here.

In fact, Bruning opines very little based on his experience. Instead, he opines based on the knowledge he obtained through legal research concerning fee awards granted by central district judges, and his scrutiny of the declarations supporting the fee motions. Bruning has enough knowledge, skill, experience, training, or education to opine based on these sources under Rule 702. To the extent Bruning offers opinions on matters where a civil rights attorney would be more knowledgeable, that goes to weight, not admissibility here. Thus objections to Bruning's qualifications as an expert are OVERRULED.

To the extent Zerby objects that Bruning's opinions lack foundation because they rely on inapplicable caselaw, those objections are better taken up as argument. The Court considers the arguments made in Plaintiffs' replies concerning whether cases Defendants cite from non civil rights contingency contexts, including *Kochenderfer* and *Welch*, apply. (*See, e.g.*, Zerby Reply at 10; R.S. & Amici Reply, Dkt. No. 214, at 7.)

As to the computer software program, Bruning's opinions do not appear to be based on that program. The computer program may have helped Bruning target specific billing entries, but his opinions in this area appear to be based on the attorneys' time entries, not on the computer program's output. This objection is OVERRULED.

Any remaining objections are OVERRULED and the motion to strike is DENIED.

**LEGAL STANDARD**

Plaintiffs seek attorney fees under 42 U.S.C. Section 1988. That statute provides that in

Case 5:16-cv-01128-AB-SP   Document 226-1   Filed 11/15/18   Page 105 of 117   Page
ID #:7078
Case 8:11-cv-00536-AG-RNB   Document 221   Filed 01/31/14   Page 4 of 16   Page ID #:4643

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

cases brought under 42 U.S.C. Section 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

Courts follow a two-step analysis to determine what fee award is reasonable under Section 1988. First, courts calculate a starting point—the "lodestar"—by multiplying the hours reasonably spent on the case by a reasonable hourly rate. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000); *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Second, courts decide whether to award more or less than the lodestar based on what are called the *Kerr* factors. *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976); *Fischer*, 214 F.3d at 1119.

Determining a reasonable hourly rate and reasonable hours spent can involve considerable number crunching. Indeed, sometimes "[t]he net result of fee-setting jurisprudence . . . is that the district courts must engage in an equitable inquiry of varying methodology while making a pretense of mathematical precision." *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. County of Albany*, 522 F.3d 182, 189 (2d Cir. 2007) (O'Connor, J., sitting by designation, joining the opinion) (citation omitted).

But "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011). Thus "trial courts need not, and indeed should not, become green-eyeshade accountants." *Id*. Rather, they "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id*.

### ANALYSIS

There is no dispute that Plaintiffs were the prevailing party in this case. The only issue is how much their attorneys should receive in fees. Thus the Court first discusses the lodestar calculation and then considers the additional *Kerr* factors.

### 1.    LODESTAR

Case 5:16-cv-01128-AB-SP   Document 226-1   Filed 11/15/18   Page 106 of 117   Page
Case 8:11-cv-00536-AG-RNB   Document 221   Filed 01/31/14   Page 5 of 16   Page ID #:7079
ID #:4644

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|----------|------------------------|------|------------------|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

The parties dispute both the reasonable hourly rate of Plaintiffs' attorneys and the reasonable hours spent. But before discussing either, it is helpful to remember why attorney fees are awarded under Section 1988 in the first place.

"The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (internal quotation marks omitted). As this Court has previously found, civil rights attorneys serve a vitally important public interest. By "present[ing] cases of people harmed by excessive governmental power," they help the judicial branch protect the fundamental balances of power struck by the United States Constitution. *McCown v. City of Fontana*, 711 F. Supp. 2d 1067, 1071 (C.D. Cal. 2010) *aff'd*, 464 F. App'x 577 (9th Cir. 2011).

Thus attorney fees under this Section serve, among other functions, to (1) incentivize attorneys to file potentially valid claims against the government, thus ensuring those who violate civil rights do not go unpunished; (2) give access to justice to those who may otherwise not get it for lack of resources; and (3) reward attorneys who take the risks associated with filing cases where they may not get paid. But Courts "must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases, and avoiding a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (internal citations omitted).

It seems that the incentive in these types of cases leads directly to windfalls. Attorneys represent to courts that their rate is high, get someone else (generally an attorney in their field who may also seek a similar rate in the future) to endorse that rate, and hope the court will grant something near it. Since they don't actually have to charge the rate to anyone, it doesn't matter if the rate is so high that no one would pay it. And then, once a court awards a high rate, the attorney (and the attorney in the field who endorsed the rate) can use that as justification for requesting an even higher rate in the next case. *See Kochenderfer v. Reliance Standard Life Ins. Co.*, 06-CV-620 JLS (NLS), 2010 WL 1912867 (S.D. Cal. Apr. 21, 2010) (describing declarations supporting the attorney fee motions as "self-serving and self-perpetuating").

Take attorney Beck, for example. Around September 2011, Beck told the Court that his

Case 5:16-cv-01128-AB-SP    Document 226-1    Filed 11/15/18    Page 107 of 117    Page
Case 8:11-cv-00536-AG-RNB    Document 221    Filed 01/31/14    Page 6 of 16    Page ID #:7080
ID #:4645

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

hourly rate was $400. This Court found that Beck had not sufficiently justified the $400 rate, and found that a $275 hourly rate was appropriate. Now, barely more than 3 years later, and for some time that directly overlaps with the time involved in the September 2011 case, Beck's claimed hourly rate has nearly *doubled* to $750. What explains this rise? Beck is more experienced now, but not much more so, especially at the start of this case. And Beck was the second attorney in both cases, so that doesn't help. It shouldn't take $350 more dollars an hour, or $475 more than this Court previously found reasonable, to attract qualified counsel to this kind of case only three years later.

The Court must strive to be true to the original purposes of Section 1988 fees while it conducts the lodestar analysis.

### 1.1    Reasonable Hourly Rate

"The hourly rate for successful civil rights attorneys is to be calculated by considering certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008). In other contingency contexts, the Ninth Circuit has said that reasonable hourly rates may be "established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (ERISA) (citing *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992) *opinion vacated in part on other grounds on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993) (employment discrimination).

The Court finds that Plaintiffs have not carried their burden to justify many claimed hourly rates here for reasons including the following: (1) the evidence concerning the average rate of Los Angeles attorneys is not very helpful; (2) the declarations supporting the claimed rates are also not very helpful; and (3) some claimed rates do not reflect prevailing rates for the type of work attorneys actually performed on this case.

#### 1.1.1   *Plaintiffs' Evidence Concerning Average Los Angeles Rates*

Case 5:16-cv-01128-AB-SP   Document 226-1   Filed 11/15/18   Page 108 of 117   Page
Case 8:11-cv-00536-AG-RNB   Document 221   Filed 01/31/14   Page 7 of 16   Page ID #:7081
ID #:4646

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

Plaintiffs' counsel point to surveys and news reports that say the average hourly rate of an attorney in the Los Angeles area is $800. (*See, e.g.*, Galipo Decl., Dkt. No. 194-1, Exhibit B.) This, they say, justifies an award in that range for their lead attorneys.

But this information, even if true, is not very helpful to a Court charged with "compensat[ing] counsel at the prevailing rate in the community *for similar work*; no more, no less." *Moreno*, 534 F.3d at 1111 (emphasis added). The rates in the cited materials include enormous, worldwide law firms with very wealthy clients, that litigate complex issues with hundreds of millions at stake. These firms generally don't do civil rights cases. And they certainly don't generally do contingency cases, where though there is great risk, there may also be great reward. Thus the rates charged by these firms don't necessarily reflect the prevailing rate in the community for similar work under *Moreno*. *See DuBose v. Cnty. of Los Angeles*, CV 09-7832 CAS AJW, 2012 WL 2135293, at *3n.8 (C.D. Cal. June 11, 2012) (noting that courts should not necessarily apply the same rates to attorneys seeking fees for civil rights claims as attorneys seeking fees for other claims).

Similarly, Fattahi justifies his claimed billing rate of $425 per hour in part by telling the Court that he billed $365 per hour when he worked at Quinn Emmanuel. (Decl. Of John Fattahi, Dkt. No. 194-4, ¶ 4.) But Quinn Emmanuel and Plaintiffs' attorneys' firms do not do similar work. Fattahi's billing rate at Quinn Emmanuel does not reflect the prevailing rate in Los Angeles for civil rights work.

Thus this information is not very helpful in determining reasonable rates.

### 1.1.2   *Declarations Supporting the Claimed Rates*

"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). But declarations from other attorneys "do not conclusively establish the prevailing market

Case 5:16-cv-01128-AB-SP   Document 226-1   Filed 11/15/18   Page 109 of 117   Page
Case 8:11-cv-00536-AG-RNB   Document 221-1   Filed 01/31/14   Page 8 of 16   Page ID #:7082
ID #:4647

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|----------|-----------------------|------|------------------|
| Title    | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

The declarations from attorneys supporting the rates requested do not conclusively establish the appropriate rates here because, as stated, they are "self-serving and self-perpetuating." *Kochenderfer*, 2010 WL 1912867. They come from people who state they know the attorney, say wonderful things about the attorney, and then say the attorney is worth what the attorney is asking for. (*See, e.g.*, Decl. Of Paul L. Hoffman, Dkt. Nos. 194-6; Decl. Of Danilo Becerra, Dkt. No. 194-9; Decl. Of John Burton, Dkt. No. 194-10 (all supporting Galipo's application).) These declarations help the Court somewhat, but they are not the most helpful evidence before it.

And they are even less helpful when they come from co-counsel in the same case. (*See, e.g.,* Decl. of Dale K. Galipo, Dkt. No. 202 (supporting Beck's application); Decl. of Thomas E. Beck., Dkt. No. 194-8 (supporting Galipo's application); Decl. of Robert M. Bruning in Support of Defendants' Opposition to Zerby Fee Motion ("Bruning Decl 1," Dkt. No. 210) ¶ 17; Decl. of Robert M. Bruning in Support of Defendants' Opposition to R.S. & Amici Fee Motion ("Bruning Decl. 2," Dkt. No. 211) ¶ 19.)

### 1.1.3   *Actual Work Performed*

In deciding reasonable hourly rates, the Court also considers the type of work attorneys actually performed in this case. For example, although Dizon is an attorney, much of the work she did on this case could have been performed by a paralegal. She spent a lot of time "centraliz[ing] communications and coordinat[ing] all plaintiffs' counsel," (Dizon Decl., Dkt. No. 199-1 ¶ 11) and organizing trial documents (*id.* ¶ 17).

Plaintiffs argue Dizon's rate should not be reduced, citing *Moreno*. They argue that having Dizon, an attorney, do this work "saved time because her involvement allowed her direct knowledge of all of the facts relating to the case and did not require Mr. Mardirossian or Mr. Beck to spend significant time to supervise, review, re-write or re-do her work." (Zerby Reply, Dkt. No. 215, at 4.) But the reasoning in *Moreno* is not directly on point here. The *Moreno* court reasoned that having the senior attorney do document review was not a basis for decreasing fees because it saved both a junior associate's time

Case 5:16-cv-01128-AB-SP   Document 226-1   Filed 11/15/18   Page 110 of 117   Page
ID #:7083
Case 8:11-cv-00536-AG-RNB   Document 221   Filed 01/31/14   Page 9 of 16   Page ID #:4648

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

reviewing documents and also a partner's time supervising. *Moreno*, 534 F.3d at 1115.

But document review is very different from centralizing communications and organizing trial documents. Time may be saved by having a senior partner do document review. But there is no time saved by an experienced attorney coordinating schedules or organizing documents. Indeed, it seems like Zerby came around to this position in the end. *See* Zerby Reply at 8 (stating that Zerby "does not object to a reduction of [Dizon's] requested hourly rate for" the hours spent on tasks that could have been delegated to a paralegal).

Thus in setting Dizon's hourly rate, the Court considers factors including the degree of legal work she did, the Court's observations during trial, and the Court's overall sense of the case.

### 1.1.4 *Summary and Conclusion*

The Court finds that Plaintiffs' counsel have not sufficiently justified many claimed hourly rates, and that the hourly rates in the following chart are reasonable. These conclusions are based on the previous discussion, the declarations submitted supporting and opposing each hourly rate, the skill counsel showed in prosecuting this case, the fact that the fee was contingent, windfall considerations, the evidence both parties submitted of the hourly rates awarded by other courts in similar cases, the evidence counsel submitted of rates they have been awarded in previous cases, and other considerations.

| Attorney | Claimed Hourly Rate | Reasonable Hourly Rate |
|---|---|---|
| Dale Galipo | $800 | $800 |
| Kaveh Navab | $300 | $275 |
| Adrienne Quarry | $350 | $300 |
| John C. Fattahi | $425 | $350 |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|----------|----------------------|------|------------------|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

| | | |
|---|---|---|
| Brian Claypool | $500 | $300 |
| Garo Mardirossian | $800 (though written as $850 in some places) | $550 |
| Thomas Beck | $750 | $300 |
| Rowena Dizon | $450 | $275 |

## 1.2    Reasonable Hours Spent

The Court next considers the number of hours spent on this case. To calculate how many hours to compensate, courts consider whether, in light of the circumstances, the time could reasonably have been billed to a private client. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). But "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at 1111.

The Court finds the number of hours spent on this litigation should be reduced for hours spent on (1) duplicated efforts; (2) media contact; and for (3) vague entries, among other things.

### 1.2.1   *Duplication*

Many attorneys worked on this case. The Court recognizes each plaintiff's right to retain counsel, but does find that some work was duplicated by these two sets of attorneys. For example, they filed "frequently overlapping" yet separate oppositions to Defendants' motion for summary judgment (Dkt. Nos. 61, 62), which the Court ordered them to consolidate (Dkt. No. 70).

Case 5:16-cv-01128-AB-SP   Document 226-1   Filed 11/15/18   Page 142 of 117   Page
Case 8:21-cv-00536-AG-RNB   Document 221   Filed 01/31/14   Page 11 of 16   Page ID #:2085
ID #:4650

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

Hours spent attending depositions, hearings, and trial should also be decreased under the circumstances here. For example, Claypool billed almost 130 hours just for attending trial in this case. (Claypool Time Entries, Dkt. No. 194-5; *see* Bruning Decl. 2 ¶ 55.) But he didn't examine any witnesses or otherwise speak at trial. He also billed for attending depositions, mediations, and hearings, where he did not participate. (*See id.*) The Court is mindful that at times it is necessary and prudent to take more than one attorney to these events. But awarding full fees for each person who attends is not always appropriate. Even Claypool seems to think that the important role he played in this case was the "investigation . . . in terms of locating witnesses and analyzing crucial evidence," not on later matters like motions or trial. (Decl. Of Brian Claypool, Dkt. No. 194-4, ¶ 11; *see also* Claypool Time Entries, Dkt. No. 194-5, between December 2010 and April 2012.) The Court finds that it is appropriate here to decrease the hours Claypool billed for attending matters related to this case. This says nothing of the questionable accuracy of Claypool's entries. (*See* Bruning Decl. 2 ¶ 44).

The Court similarly considers the hours billed for other attorneys who attended trial matters but did not participate substantially, understanding also that those attorneys may have had more to offer than direct participation in trial. (*See, e.g.*, Bruning Decl. 1 ¶ 45 (concerning Beck); Zerby Reply at 7 (stating that Beck sat at counsel table because of his experience with section 1983 jury trials).)

Along these lines, hours should be reduced for the extra communication required by the number of attorneys staffing this case. (*See* Bruning Decl. 1 ¶ 49.) Dizon alone billed 176 hours related to centralizing communication. (Dizon Decl. ¶ 11 and related time entries.) And on top of Dizon's centralization efforts, all of the attorneys on this case billed many hours communicating with the other attorneys. The Court finds that under the circumstances here, it is not appropriate to award fees for all of the communication hours billed.

The Court finds that a general 10% haircut under *Moreno* is warranted here. *See Moreno*, 534 F.3d at 1112. That haircut addresses the Court's general duplication concerns described here. The Court also finds that a modest additional decrease in hours for attorneys including Dizon, Beck, and Claypool for the reasons described is appropriate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

### 1.2.2  *Media Contact*

This case was heavily publicized. But media contact is an activity "that attorneys generally do at their own expense." *Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995). The Court decreases reasonable hours spent accordingly. (*See* Claypool's Time Entries, Dkt. No. 194-5, at 12/15/10; 12/23/10; Mardirossian's Time Entries, Dkt. No. 197-1, at 3/14/11; 8/4/11; 11/3/11; 11/4/11; 1/15/12.)

Relatedly, hours spent related to the preparation of a YouTube video concerning this case are not appropriate under the circumstances here. (*See* Mardirossian's Time Entries at 1/15/12; 1/16/12; 6/22/12; 12/21/12; 1/5/12.) This video created problems during the case, and is the type of self promotion fit for performing at the attorney's own expense.

### 1.2.3  *Vague Entries*

When time entries are vague, it is difficult and sometimes impossible to tell whether the time was reasonably spent. The Court decreases hours spent accordingly. (*See* Bruning Decl. 1 ¶ 55; Exh. O, Dkt. No. 210-15 (citing entries of "legal research"); Bruning Decl. 2 ¶ 53; Exh. N, Dkt. No. 211-14 (citing entries including "review initial documents").)

### 1.2.4  *Summary and Conclusion*

Based on reasons including those just described, the Court finds that Plaintiffs' counsel have not sufficiently justified the claimed hours spent. The Court finds that the hours spent in the following chart are reasonable.

| Attorney | Claimed Hours Spent | Appropriate Deductions | Reasonable Hours Spent |
|---|---|---|---|
| Dale Galipo | 748.4 | 75 | 673.4 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | | Date | January 31, 2014 |
|---|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | | |

| | | | |
|---|---|---|---|
| Kaveh Navab | 136.65 | 25 | 111.65 |
| Adrienne Quarry | 92.4 | 13 | 79.4 |
| John C. Fattahi | 3.5 | 0.7 | 2.5 |
| Brian Claypool | 558.8 | 175 | 383.8 |
| Garo Mardirossian | 591.45 | 115 | 476.45 |
| Thomas Beck | 301.05 | 55 | 246.05 |
| Rowena Dizon | 1326.05 | 260 | 1066.05 |

Thus, the lodestar calculation is as follows:

| Attorney | Reasonable Hourly Rate | Reasonable Hours | Total |
|---|---|---|---|
| Dale Galipo | $800 | 673.4 | $538,720 |
| Kaveh Navab | $275 | 111.65 | $30,703.75 |
| Adrienne Quarry | $300 | 79.4 | $23,820 |
| John C. Fattahi | $350 | 2.5 | $875 |
| Brian Claypool | $300 | 383.8 | $105,545 |
| Garo Mardirossian | $550 | 476.45 | $262,048 |
| Thomas Beck | $300 | 246.05 | $73,815 |
| Rowena Dizon | $275 | 1066.05 | $293,164 |
| **Total Lodestar** | | | **$1,338,285** |

But, of course, the lodestar is only the first step in the attorney fee determination. The Court now turns to the additional factors.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

## 2.    DEPARTURE FROM THE LODESTAR

As stated, the Court must consider the *Kerr* factors in deciding whether to depart from the lodestar. The *Kerr* factors not already included in the lodestar calculation are: (1) time limitations imposed by the client or the circumstances, (2) the amount involved and the results obtained, (3) the experience, reputation, and ability of the attorneys, (4) the "undesirability" of the case, (5) the nature and length of the professional relationship with the client, and (6) awards in similar cases. *Kerr*, 526 F.2d 67 (listing the twelve factors); *see also Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996) (finding that five of the factors have been subsumed in the lodestar calculation); *see also Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993) (stating that a sixth factor is irrelevant in evaluating attorney's fees).

Concerning factor (2), courts assess whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434. The Ninth Circuit has held that "attorney's fees awarded under 42 U.S.C. § 1988 must be adjusted downward where the plaintiff has obtained limited success on his pleaded claims, and the result does not confer a meaningful public benefit." *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2008).

In light of this, the Court wrote the following in its April 18, 2013 Order:

> Considering the factors to award fees under 28 U.S.C. § 1988, the Court wonders whether a principal theory presented by the Plaintiffs is that the officers, after an inadvertent gunshot, lied about being fearful of Douglas Zerby possessing a gun, as perhaps reflected in the following statement from closing argument:
>
> > [Y]ou've got to think for yourselves, for a moment, could this be as the Plaintiffs had suggested that this [was] an inadvertent shot, a contagious fired [shot] that killed an innocent man? And then the officers sort of said, we'd better figure out what happened here. . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

> We can't say this was accidental or inadvertent. That looked like a gun, didn't it fellas? I think it is. I thought it was a gun. As a matter of fact, he was pointing that gun, wasn't he? Yeah, yeah, he was pointing. . . . So is it likely, is it possible, that these officers realized their mistake, their dire mistake, and got back there and thought about how to best justify their actions?

Rough Trial Transcript of April 2, 2013.

(Order Re Post-Trial Motions, Dkt. No. 164, at 1-2.)

Counsel did not address this in their papers, so confusion remains. If this really reflected the public benefit Plaintiffs sought to advance, they didn't succeed. The Court finds it appropriate to not award fees for the 16 hours Mardirossian billed for "[t]rial prep for closing," and for the roughly 2 hours of closing argument itself. Thus the Court decreases the fees awarded to Mardirossian by 18 hours at $550 per hour, or $9,900.

The Court finds that none of the other *Kerr* factors warrant departure from the lodestar here. Further, the Court is confident, under all the circumstances that the Court became very familiar with over the course of this case and through trial, that Plaintiffs' counsel's final compensation for the work done on this case will incentivize plaintiffs attorneys to take Section 1983 cases in the future.

**3. COSTS**

Now to costs. R.S. and Amici request $8,803.51 in costs. (R.S. & Amici Cost Application.) Defendants do not object. The costs requested appear to be reasonable. The Court GRANTS R.S. and Amici's Cost Application.

Zerby requests $131,198.14 in costs. (Zerby Cost Application.) Defendants object to 3 entries: $5,625 for an animation, $82,000 for creating a scale model diorama, and $18,000 for digital trial technicians. (Defendants' Objection to Zerby Cost Application, Dkt. No.

Case 5:16-cv-01128-AB-SP   Document 226-1   Filed 11/15/18   Page 147 of 117   Page
ID #:5090
Case 8:21-cv-00536-AG-RNB   Document 221   Filed 01/31/14   Page 16 of 16   Page ID #:4655

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 11-536 AG (RNBx) | Date | January 31, 2014 |
|---|---|---|---|
| Title | R.S., et al. v. CITY OF LONG BEACH, et al. | | |

209.)

As the Court stated at the hearing, while some demonstratives in this trial were flashy, at times they did not seem to be employed to their full effectiveness. The Court thus finds that awarding $4,000 for the animation is appropriate. As to the model, counsel for Defendants said at the hearing that he did not object to the Court awarding costs for the scale model.  The Court awards the full costs for the model.

Thus the Court GRANTS in part Zerby's request for costs in the amount of $129,573.14.

### DISPOSITION

The Court GRANTS in part R.S. and Amici's Fee Motion and Zerby's Fee Motion, and awards $1,328,385. The Court GRANTS in full R.S. and Amici's Cost Application, which requests $8,803.51 in costs.  The Court GRANTS in part Zerby's Fee Request, and awards $129,573.14 in costs.

|  | : | 0 |
|---|---|---|

Initials of Preparer          lmb