**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA  91367
Tel: (818) 347-3333, Fax: (818) 347-4118

**LAW OFFICE OF JAMES S. TERRELL**
James S. Terrell, Esq. (SBN: 170409)
Email: jim@talktoterrell.com
15411 Anacapa Road
Victorville, CA 92392
Tel: (760) 951-5850, Fax: (760) 952-1085

**LAW OFFICE OF SHARON J. BRUNNER**
Sharon J. Brunner, Esq. (SBN: 229931)
Email: sharonjbrunner@yahoo.com
14393 Park Avenue, Suite 100
Victorville, CA 92392
Tel: (760) 243-9997, Fax: (760) 843-8155

**LAW OFFICE OF JOHN FATTAHI**
John Fattahi, Esq. (SBN 247625)
jfattahi@gmail.com
21250 Hawthorne Boulevard, Suite 70
Torrance, CA 90503
Tel: (424) 999-5579; Fax: (424) 675-2279

Attorneys for *Plaintiff* DOMINIC ARCHIBALD

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC ARCHIBALD AND NATHANAEL PICKETT I, AS INDIVIDUALS AND AS SUCCESSORS IN INTEREST TO NATHANAEL H. PICKETT II, DECEASED. | Case No. 5:16-cv-01128 –AB-SPx |
| | *Honorable André Birotte Jr.* |
| Plaintiffs, | **DECLARATION OF DALE K. GALIPO IN SUPPORT OF PLAINTIFF DOMINC ARCHIBALD'S OPPOSITION TO MOTION FOR TAXATION OF COSTS AND ATTORNEY FEES BY ERNEST L. JARRETT** |
| vs. | |
| COUNTY OF SAN BERNARDINO, KYLE HAYDEN WOODS, WILLIAM KELSEY, and DOES 2-10, INCLUSIVE. | |
| Defendants. | |

-1-                                                   5:16-cv-01128 –AB-SPx

## DECLARATION OF DALE K. GALIPO

I, Dominic Archibald, declare as follows:

1.    I am an attorney licensed to practice law in the United States District Court for the Central District of California and before all courts in the state of California.  I am the lead trial counsel for Plaintiff Dominic Archibald in this instant action.  I make this declaration in support of Plaintiff Dominic Archibald's Opposition to Motion for Taxation of Costs and Attorney Fees by Ernest L. Jarrett. I have personal knowledge of the facts contained herein and could testify competently thereto if called.

2.    On September 18, 2016, I met with Dominic Archibald at my office in Woodland Hills, California, to discuss my possible representation of Ms. Archibald in the civil rights and wrongful death lawsuit of her son, Nathanael Pickett, II. At that time, Ms. Archibald informed me that she had terminated her attorney-client relationship with Mr. Jarrett and was looking for a new lawyer.

3.    On October 12, 2016, a letter signed by Ms. Archibald, Ms. Brunner, Mr. Terrell, and me was sent to Mr. Jarrett notifying Mr. Jarrett that his involvement in the lawsuit for the death of Nathanael Pickett, II had been terminated. The letter also stated that this was not new information to Mr. Jarrett as he had already been informed by Ms. Archibald of her decisions to terminate the attorney-client relationship. The letter requested that Mr. Jarrett forward Ms. Archibald's case file to my office within fifteen days of the letter. Attached hereto as "**Exhibit E**" is a true and correct copy of the October 12, 2016 letter.

4.    On November 18, 2016, I officially came into this case.

5.    On or around November 25, 2016, my office received the case file for this action from Mr. Jarrett. Attached hereto as "**Exhibit F**" is a true and correct copy of the letter from Mr. Jarrett that accompanied the case file.

-2-                                      5:16-cv-01128 –AB-SPx

6.      I never met or spoke with Mr. Jarrett until around the time he attended the trial proceedings. To my knowledge, neither Ms. Archibald nor the other attorneys on this case requested or invited Mr. Jarrett to attend the trial proceedings.

8.      On March 29, 2018, after the trial had concluded, I received a letter from Mr. Jarrett dated March 28, 2018, in which he asserted that he should be entitled to a percentage of the total amount in attorney fees rather than fees based on *quantum meruit*. Attached hereto as "**Exhibit G**" is a true and correct copy of the March 28, 2018 letter.

8.      On April 8, 2018, I sent a letter to Mr. Jarret explaining that as a discharged attorney, Mr. Jarrett would at best, only be entitled to recover his reasonable attorney's fees and costs incurred in his former representation of Ms. Archibald. Attached hereto as "**Exhibit H**" is a true and correct copy of the April 8, 2018 letter.

9. On April 12, 2018, I received a letter from Mr. Jarret dated April 11, 2018, in which he asserted that he was never "unequivocally discharged as Ms. Archibald's lawyer." He further stated that the prior billing statement he sent Ms. Archibald were for services rendered in connection with the efforts to bring about a criminal prosecution and that the contingency fee agreement he had with Ms. Archibald did not cover the fees for those services. Attached hereto as "**Exhibit I**" is a true and correct copy of the April 11, 2018 letter.

10. Since the April 11, 2018 letter, I have had several telephone conversations with Mr. Jarrett in an attempt to resolve Mr. Jarrett's claim for fees and costs. During our negotiations, my office continued to review all documents and correspondence pertaining to Mr. Jarrett's former representation of Ms. Archibald. Upon review of the contingency fee agreement between Mr. Jarrett and Ms. Archibald, my office discovered that the contingency fee agreement failed to

comply with California law and is therefore voidable at Ms. Archibald's option. My office communicated this discovery to Ms. Archibald.

11.     This action has now been settled, inclusive of all attorneys' fees and costs. The parties included language in the settlement agreement that this Court shall retain jurisdiction to resolve any disputes regarding any liens or attorney fees.

12.     Ms. Archibald and I would like to resolve this lien matter as soon as possible. This is the reason we are requesting the Court make a determination regarding when Mr. Jarrett was terminated and to make a determination as to the reasonable value of his attorney fees. I believe the Court can make this determination based on the Statement of Attorney Fees Mr. Jarrett submitted concurrently with his Motion for Taxation of Costs and Attorney Fees.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this 1st day of February, 2019, in El Monte, California.


_____/s/ Dale K. Galipo_____

Dale K. Galipo

DECLARATION IN SUPPORT OF PLAINTIFF ARCHIBALD'S OPPOSITION TO MOTION FOR TAXATION OF COSTS AND ATTORNEY FEES

# EXHIBIT E

Dale K. Galipo, Esq
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 317-3333
Facsimile: (760) 818-317-1118

James S. Terrell, Esq.
15411 Anacapa Road
Victorville, CA 92392
Telephone: (760) 561-2690
Facsimile: (760) 952-1085

Sharon J. Brunner, Esq.
14393 Park Avenue, Suite 100
Victorville, CA 92392
Telephone: (760) 243-9997
Facsimile: (909) 544-6171

Sent via email to: clilaw@yahoo.com

October 12, 2016

Dear Mr. Jarrett:

This letter is both to thank you for all of your efforts expended on Ms. Archibald's case and to notify you your involvement as lead attorney in this case has been terminated effective immediately. We do not believe this is new information to you, as you were informed last month of the decision to terminate the attorney/client relationship by Ms. Archibald. This information was also relayed to you by Mr. Terrell a few days ago; however, in order to avoid further confusion, we are notifying you in writing as well.

Ms. Archibald has elected to retain the services of Dale Galipo. Esq., Civil Rights Attorney, and for Mr. Galipo to join the existing attorneys, James S. Terrell, Esq. and Sharon J. Brunner, Esq. on this case. This decision was not reached hastily and without due consideration as to the needs of the case and client.

Please send a copy of the legal file to Mr. Galipo's office located at 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367 within fifteen (15) days of this letter. In the event you have any questions or concerns regarding the contents of this letter, please contact any one of the three (3) attorneys.

We are grateful for your past involvement and respect your ongoing, tireless endeavors in Civil Rights and wish you the best in your personal and professional future.

Sincerely,

Dominic Archibald

Dale K. Galipo, Esq.
Civil Rights Attorney

James S. Terrell, Esq.
Attorney at Law

Sharon J. Brunner, Esq.
Attorney at Law

# EXHIBIT F

**Law Offices**
## ERNEST L. JARRETT, P.C.
65 Cadillac Square Suite 2100
Detroit, Michigan 48226-2859

(313) 964-2002
Facsimile (313) 965-8474

Ernest L. Jarrett
Russell L. Jarrett *(1926-2007)*

Mr. Dale K. Galipo, Esq
21800 Burbank Boulevard,
Suite 310
Woodland, CA 91367

Re: Archibald v. County of San Bernadino, et al

Dear Mr. Galipo,

As instructed by Ms. Dominic Archibald, I am forwarding a copy of my file in the above referenced case.

Excluded from what is forwarded herewith are the following:

1. A zip drive of the El Rancho surveillance video. Copies of same were previously given to Mr. Terrell;

2. Handwritten draft of the complaint which was eventually filed with modification by Terrell;

3. Handwritten notes which I'm sure will make no sense to you.

4. Numerous email for which no hard copies-presently exist. Most email are between myself and Ms. Archibald or myself and Mr. Terrell. Some are between myself and individuals in the media or media organizations. I believe there are three to five email between myself and Mr. Colvin about scheduling of a conference call.

Should you wish to have copies of the email, please advise.

Very truly yours,

Ernest L. Jarrett

1

# EXHIBIT G

**Law Offices**
**ERNEST L. JARRETT, P.C.**
65 Cadillac Square Suite 2100
Detroit, Michigan 48226-2859

(313) 964-2002
Facsimile (313) 965-8474

Ernest L. Jarrett
Russell L. Jarrett *(1926-2007)*

March 28, 2018

Mr. Dale K. Galipo, Esq
dalekgalipo@yahoo.com
21800 Burbank Boulevard,
Suite 310
Woodland, CA 91367

        Re: Archibald v. County of San Bernadino, et al
           USDC no. 5:16-01128

Mr. Galipo,

    It was a pleasure meeting and talking to you during the trial of the above referenced case.

    It has now been nearly two weeks since my return to Detroit, and I must confess that I am somewhat apprehensive that I neither have an agreement with respect to payment of attorney fees to me, nor have I taken steps to protect my interests in same. While it is my impression that you are an honorable and reasonable man, those qualities alone do not insure that we will reach agreement.

    I have already discussed with you my reasons for believing that I am entitled to some portion, by percentage, of the attorney fees, rather than fees based upon quantum meruit.

    As I said during our conversation, I believe that I am entitled to a portion of the total amount in attorney fees payable in the case based upon an agreeable percentage of total fees payable. The work which I performed contributed by some measure to the successful outcome in the case. While it may not be possible to quantify or apportion the contributions of the various attorneys of record with mathematical precision, certainly it is possible to reach a fair division of attorney fees so long as all concerned are dedicated to being fair and reasonable. I remain

1

hopeful, if not optimistic, that we will reach such an agreement.

Though you have heretofore not seen fit to answer my inquiry as to your fee sharing arrangement(s) with Jim Terrell and Sharon Bruner, I do believe that it is an important measuring stick for me to try to find an appropriate fee-sharing slot for myself.

Admittedly, some degree of emotion intrudes when I think of their expectation of fees in this matter. Indisputably, they are only in a position to claim any fees at all, because I selected them to assist me. Yet, neither of them had the decency to so much as to speak to me during the nearly two week period I was there. That's shameful and disgusting! Sharon Bruner diligently avoided making any eye-contact with me at all, while the one time Jim Terrell accidentally did so, his uncomfortable reaction, in which he apparently attempted to retract having made eye-contact would have been amusing, had it not been so revealing as to his character. I am six feet tall, and more than 240 pounds. For each of them to pretend as if they did not see me, was as insulting, as it was unforgivable. They each owe me a huge amount of gratitude for putting them in a position to ride your coat tails, to be able to claim a portion of attorney fees. I am burdened by some degree of emotion in my opposition to two attorneys that I selected and hired, but who can't so much as speak to me, walking away with a greater share of attorney fees from the case than me. But rest assured that I would never allow pettiness on my part to obscure my vision in the search for a fair allocation of fees. There are many more rational reasons, than the emotional ones, for the position I take regarding my share of fees in comparison to theirs.

I am confident that my participation in the case had a greater impact substantively, and contributed more to the successful outcome, than any independent acts, ideas or undertakings by Jim and/or Sharon.

Moreover, I would be surprised if I did not devote more time to Ms. Archibald's representation than they did. In this regard, I am not counting occasions such as their mere attendance at depositions or court proceedings in which they were little more than spectators. I also discount any activity in which they only executed a predetermined directive, as opposed to actually formulating a plan and undertaking a task, while exercising independent legal judgment. Although you did say that Jim and Sharon did "some" things throughout the pendency of the case, I am mindful of how you struggled to actually recall any of those things, other than to say that they were helpful in maintaining a good rapport with Ms. Archibald. While clearly, that was important, equally clear is that it did not require the skill of Clarence Darrow to do so.

2

I would appreciate it if you would inform me of your fee sharing arrangements with Jim and Sharon so that I can objectively propose where I believe I fit in.

At this writing, I am uncertain where things stand between you and the defendants. I do see that you have requested additional time to submit a judgment to the court. Have you reached, or are you near reaching an agreement to settle the case? If not, do you anticipate any post-trial motions? While I would think that there is very little risk of losing a Motion for JNOV or New Trial, I don't know what the judge might do with a motion for remittitur. Do you have any thoughts in this regard?

I sincerely hope that we can reach an agreement with respect to determining my share of attorney fees. I do not believe it necessary to await the outcome of your negotiations with the defendants, or to otherwise reach finality in the case for us to be able to reach such an agreement. Just as your fees, and presumably those for Jim and Sharon will computed based upon pre-determined formulae, so too, do I believe we should be able to reach an agreement for me.

If, however, we are unable to agree, I prefer knowing that fact sooner, rather than later, so that I can take those steps necessary to protect my interests. Accordingly, I hope to hear from you in the near future.

If a settlement of the case is not reached and you submit a petition for statutory fees, kindly advise and I will contribute to your submission.

As I recall, you expected to start another trial shortly after the conclusion of the Archibald case. So while I'm sure you are busy, nevertheless, I'd appreciate hearing from you at your earliest opportunity.

Very truly yours,

Ernest L. Jarrett

3

# EXHIBIT H



LAW    OFFICES    OF

# DALE  K. GALIPO

21800 BURBANK BOULEVARD, SUITE 310
WOODLAND HILLS, CALIFORNIA 91367
TELEPHONE (818) 347-3333 | FACSIMILE (818) 347-4118 | dalekgalipo@yahoo.com

April 9, 2018

**VIA FACSIMILE, EMAIL AND U.S. MAIL**
(Facsimile (313) 965-8474; Email: eljlaw@yahoo.com)

Mr. Ernest L. Jarrett
Law Offices of Ernest L. Jarrett, P.C.
65 Cadillac Square Suite 2100
Detroit, Michigan 48226-2859

> Re:  *Dominic Archibald v. County of San Bernardino, et al.*
> Case No. 5:16-cv-01128 AB (SPx)

Dear Mr. Jarrett:

I am writing in response to your March 28, 2018 letter regarding the above-referenced matter. In reviewing documentation related to your representation of Ms. Archibald, it appears clear that the attorney-client relationship with Ms. Archibald was terminated on or before October 12, 2016. A letter dated October 12, 2016 signed by Ms. Archibald and sent to your office specifically terminated your representation and references a communication that precedes the letter informing you of the termination of the attorney-client relationship. This is consistent with your filing a Notice of Attorney Lien on December 1, 2016 and sending Ms. Archibald a billing statement for attorney fees and costs in December of 2016.

Under California law, an attorney whose services are terminated by the client is at most entitled to recover *quantum meruit* for the attorney fees and costs incurred

Mr. Ernest L. Jarrett
April 9, 2018
Page 2

during representation of the client. I am assuming that is the amount you billed Ms. Archibald for in December of 2016. Given the above, I respectfully do not agree with your contention that you are somehow entitled to a portion of the contingency attorney fees.

I expect judgment in the matter will be entered by the court in the next week or so and we will have fourteen days from entry of judgment to file a motion for statutory attorney fees. I invite you to submit an itemization of hours worked on the case along with your hourly fee you will be requesting and a description of the work performed at your earliest convenience. I am willing to assist you in having your attorney hours submitted to the court in connection with the fee application if you would like. I am also expecting a host of post-trial motions and an appeal and expect it will be some time before any settlement is reached. Of course, I am also willing to discuss the above with you over the phone.

Sincerely yours,

Dale K. Galipo

# EXHIBIT I

**Law Offices**
**ERNEST L. JARRETT, P.C.**
65 Cadillac Square Suite 2100
Detroit, Michigan 48226-2859

(313) 964-2002
Facsimile (313) 965-8474

Ernest L. Jarrett
Russell L. Jarrett *(1926-2007)*

April 11, 2018

                                                    **SENT VIA**
                                            **EMAIL, FAX and U.S. MAIL**

Mr. Dale K. Galipo, Esq
dalekgalipo@yahoo.com
21800 Burbank Boulevard,
Suite 310
Woodland, CA 91367

          Re:  Archibald v. County of San Bernadino, et al
               USDC no. 5:16-01128

Mr. Galipo,

        I am in receipt of your letter dated April 9, 2018. I am responding to your letter while
away from my office, and therefore I do not have the benefit of my file to review. Consequently,
at this writing, I am unable to retrieve the letter I received from Ms. Archibald to see if it is the
same letter you referenced in your letter. Perhaps you will be so kind as to forward a copy of
yours so that I can compare it to mine when I return to my office. In the only letter I ever
received from Ms. Archibald, she did not terminate my services as you state. Moreover, I was
never substituted out of the case, I did not withdraw, and no order of the court relieving me as an
attorney of record has ever been entered. Subject to my review of the letter you referenced, I
submit that I was not unequivocally discharged as Ms. Archibald's lawyer.

        Though I am presently unable to refer to the specific language of the only letter I have
ever received from Ms. Archibald regarding my representation, I am able to unequivocally state
that you are mistaken with respect the billing statement forwarded to her on December 1, 2016.
That statement does not reflect the amount billed for services rendered in connection with the
civil suit as you suggest.

When Ms. Archibald originally retained me, she expressly stated that she was disinterested in filing a civil suit, and that she wanted my assistance only in connection with her efforts to have Kyle Woods and William Kelsey criminally prosecuted. While I frequently urged that she reconsider that position, and I repeatedly advise her that seeking a criminal prosecution and filing a civil suit were not mutually exclusive undertakings, she did not relent in her stated disinterest in a civil case until March 15, 2016, at which time she signed my contingent fee agreement. Even then, however, she only authorized me to preserve the option of filing a civil suit by filing the administrative claim forms with the County of San Bernardino, and other governmental entities, which were required in order to preserve state law claims against them. Ms. Archibald did not decide to go forward with a civil action, and therefore did not authorize me to file suit until my visit to California during the week of May 14, 2016. By that time, I had been working for Ms. Archibald for nearly three months, having started sometime in February, 2016.

Because my first undertakings for her were limited to assisting her in her efforts to bring about a criminal prosecution, she understood that she was responsible for paying me on an hourly basis, and advancing all of my out of pocket costs (though she never actually did so). When she finally allowed me to file the civil action I did not insist upon payment for those collateral services at that time under the belief that those fees would be paid at a later time, one way or the other.

When I was informed that my role in the lawsuit was to be redefined, on December 1, 2016 I wrote a to Ms. Archibald and I unambiguously stated that although fees for my services in connection with the civil suit were contingent upon the outcome of the suit, and would not be determined until that case was concluded, that the contingent fee agreement **did not** cover fees for my services in assisting her in attempting to bring about a criminal prosecution. I also sought reimbursement of my out of pocket expenses regardless of which undertaking they were incurred in, as her obligation to reimburse my costs was not contingent or dependent upon the outcome of the civil case.

I have asked my secretary to forward a copy of my December 1, 2016 letter herewith for your perusal. It will more clearly reflect the distinction I have always made between fees and costs payable to me for services in connection with assisting in efforts to bring about a criminal prosecution and fees payable in connection with the civil case.

2

I am deeply disappointed by the position you have taken in connection with this matter. I had hoped there would be enough common ground to allow for us to reach an amicable agreement. At least now, I know that I must act to protect my interests.

I remain available to discuss this matter further, if there is any reason to think that the apparently wide gap which separates us can be bridged.

Very truly yours,

Ernest L. Jarrett (85)

3

**ATTACHMENT**

**Law Offices**
## ERNEST L. JARRETT, P.C.
65 Cadillac Square Suite 2100
Detroit, Michigan 48226-2859

(313) 964-2002
Facsimile (313) 965-8474

Ernest L. Jarrett
Russell L. Jarrett *(1926-2007)*

December 1, 2016                                    **SENT VIA EMAIL &**
                                                   **U.S. MAIL**

Ms. Dominic Archibald
19821 NW 2nd Avenue #153
Miami, FL 33169

Re:  Lien for Attorney Fees & Billing Statement

Dear Ms. Archibald,.

Enclosed herewith please find the Notice of Lien which I filed today in the United States
District Court. The lien relates to attorney fees and costs to which I am entitled if the civil
lawsuit now pending in the court is resolved by judgment in your favor or a negotiated
settlement.

I am also enclosing herewith my billing statement for fees and costs for services provided
in your efforts to have Kyle Woods and his companion prosecuted for his criminal conduct
which preceded and resulted in your son's death.

As you, no doubt will recall, I simultaneously served as your lawyer in connection with
the civil action which is currently pending, as well as your efforts to have Kyle Woods and his
companion prosecuted for their criminal conduct which resulted in your son's death. Pursuant to
the contingent fee agreement you entered into with me, I look to any recovery you may obtain in
the civil action as the fund from which my fees for services I performed in connection with that
case will come. The amount to which I am entitled will be determined at that time. If you do not
recover in your lawsuit, then you will not be obligated to me for attorney fees. The notice of lien
relates to fees to which I will become entitled in the event of a recovery in that suit.

The lien does not, however, cover your obligation to compensate me for my services
which were provided exclusively in connection with your efforts to secure a criminal prosecution

1

of Woods and his companion. As the services I provided for these purposes were not in furtherance of the lawsuit, I cannot look to any recovery you may obtain in that suit as the fund for payment for those services. Furthermore, unlike fees for my work on the civil suit, fees for my services which assisted you in your efforts to cause a criminal prosecution are not contingent or dependent in any way on the outcome of the civil case. Accordingly, I am billing you separately for my time in these undertakings, and request your payment for these services forthwith.

Most of the things I did were clearly intended to accomplish one objective or the other. However, in some instances, some of my efforts simultaneously served both objectives. I have attempted to include only those items which served your efforts to secure a prosecution in my billing statement. Those matters which served only the lawsuit, or which served both objectives are not included in the billing statement.

Although I have attempted to bill you for attorney fees incurred exclusively in connection with your quest for a criminal prosecution, I have not similarly attempted to separate cost items. Under the contingent fee agreement you entered with me, only attorney fees were contingent or dependent on the outcome of the lawsuit. By contrast, you are obligated to reimburse me for any costs or expenses I incurred on your behalf, or while undertaking my representation of you regardless of the outcome of the suit. Since you are obligated to reimburse me for my out of pocket expenditure of money in connection with the suit regardless of the outcome of that suit, I am not limited to looking to the fund created by your recovery in the suit and there is no reason that I should not be reimbursed forthwith. Therefore, all reimburseable costs should be paid by you at this time, regardless of whether they were incurred in connection with the lawsuit, your efforts to secure a prosecution or both. Unlike attorney fees, there is no reason to defer any cost item to the final disposition of your suit.

The total amount due is $31,222.46. Please make your check payable to Ernest L. Jarrett, P.C.

Should you have any questions, please feel free to call me.

Very truly yours,

Ernest L. Jarrett

2